ORIGINAL

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
AUG 1 9 2003
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GROT INCORPORATED, Plaintiff, vs. THE UNITED STATES OF AMERICA, Defendant. | Cause No. 03-1951C (Judge ______________) |

COMPLAINT

COMES NOW Grot Incorporated ("Grot"), Plaintiff, and pursuant to the Contract Disputes Act of 1978 files this its Complaint against the United States of America being aggrieved by a final decision of a contracting officer wrongfully terminating Grot for default under a contract between Grot and the United States of America acting by and through the Veterans Administration, the United States of America being hereinafter referred to as the "VA ", and in support thereof would show as follows, to-wit:

1. This is an appeal from a final decision of a contracting officer dated August 7, 2003 wrongfully terminating a contract for default; accordingly, this Court has jurisdiction over this cause pursuant to 41 U.S.C. § 609.

2. Grot is a corporation organized and existing under the laws of the State of Kentucky whose principal place of business and mailing address is 324 Henry Street, Lexington, Kentucky 40508.

3. On February 1, 2002, GSA awarded to Grot contract number V549P-609-2 (the "Contract") for performance of the work generally described as Campus-Wide Fire Alarm, Project No. 099-108 at the Sam Rayburn Memorial Veterans Center, East Ninth and Lipscomb Streets, Bonham, Texas (the "Project"); the Contract provided that the Project was to be completed within 270 days following receipt of the Notice to Proceed. A copy of the Solicitation, Offer, and Award, without attachments, is attached hereto as Exhibit "1".

4. The Notice to Proceed was received by Grot on February 1, 2002 with work to begin within 10 days thereby making the original Contract completion date for the Project November 10, 2002. A copy of the Notice to Proceed is attached hereto as Exhibit "2".

5. By letter from the contracting officer, John Mraz ("Mraz"), of November 4, 2002 the VA acknowledged that Grot was entitled to an extension in the Contract completion time but did not establish a completion date for the Project and, instead requested that Grot provide an anticipated completion date for the Contract; the Contract completion time was subsequently extended unilaterally by Mraz until June 23,2003. A copy of Mraz's November 4, 2002 letter is attached as Exhibit "3".

6. Throughout the course of construction of the Project, Grot sent letters and e-mails to Mraz and other VA personnel requesting information which was necessary for construction of the Project as well as attempting to provide an anticipated completion date; the VA failed to timely respond and in some instances did not respond thereby interfering with Grot's ability to timely complete construction of the Project..

7. By Mraz's e-mail of July 23, 2002 (sic), the VA issued its "Show Cause Letter" to Grot in which the VA stated that Grot had 10 days after receipt of the Show Cause

Letter to provide a schedule to complete the Contract. A copy of Mraz's e-mail of July 23, 2002 (sic) is attached hereto as Exhibit "4".

8. By e-mail of July 31, 2003 Grot responded and fully addressed all of the issues raised in the Show Cause Letter and further provided to the VA a completion date of October 3, 2003 assuming that the VA provided answers to outstanding questions by August 11, 2002. A copy of Grot 's letter of July 31, 2003 is attached hereto as Exhibit "5".

9. Without further comment or challenge to Grot 's July 31, 2003 response and without addressing the issues raised in the letter or providing answers to questions contained in either Grot's response letter or other letters previously provided by Grot, by Mraz's letter of August 7, 2003, the VA wrongfully terminated the Contract for default; the alleged basis of the default was that Mraz had determined that Grot:

a) had failed to provide adequate fire alarm protection for Buildings 1, 2, 3, 24 and 29 as directed in Mraz's letter of July, 17, 2003; and

b) had failed to perform in compliance with the technical requirements of the contract; and

c) had failed to complete the Contract by the extended completion date of June 23, 2003; and

d) had failed in Grot's letter of July 31, 2003 to "Show Cause" to the Mraz's "Show Cause Notification Letter of July 23, 2003.

A copy of VA's Termination for Default letter of August 7, 2003 is attached hereto as Exhibit "6".

10. The VA's action in issuing the Termination for Default was in bad faith,

arbitrary, capricious and unreasonable conduct, in that the decision to terminate Grot did not take into account, among other things, that Grot had fully responded to the items contained in the Show Cause Letter, that the VA had not addressed questions critical to the timing of completion of the Project presented by Grot both before and in response to the Show Cause Letter, that the VA was in breach of the Contract by failing to make timely payment to Grot or to include interest pursuant to Section 01001, General Conditions ¶1.23(a)(4) in payments not made in the times provided by the contract, that the decision by Mraz to terminate was made without any evaluation of the status of the Project and or the response by Grot and was based solely on the recommendations of the Contracting Officer's Technical Representatives, thus constituting a breach of the VA's duties not to hinder, delay or interfere with Grot 's performance of the Contract and to cooperate in good faith with Grot in the performance of the Contract.

11. Mraz's actions in terminating Grot 's contract was further in bad faith, arbitrary, capricious and unreasonable conduct, all in breach of VA's duties not to hinder, delay or interfere with Grot 's performance of the Contract and to cooperate in good faith with Grot in the performance of the Contract in that Mraz terminated the Contract without giving consideration to, among other things, the following:

(a) Mraz failed to consider that Grot had been delayed in the completion of the Project as a result of delays solely attributable to the VA including the VA's refusal to answer questions regarding construction of the Project; and

(b) Mraz had not performed any evaluation of the status of

construction so as to determine the ability of Grot to complete the Project; and

(c) Mraz failed to consider or evaluate the impact of Grot 's requests for information to clarify the plans and specifications and the impact that the responses to those requests had on Grot 's ability to timely complete the Project; and

(d) Mraz failed to consider or evaluate the impact of delays associated with the differing site conditions in the discovery of water in manholes that caused burns and rashes to Grot's workers or the continuing request by Grot for information regarding the water encountered in the manholes; and

(e) Mraz failed to consider or evaluate the time and cost in procuring a completion contractor for the Project; and

(f) Mraz failed to consider or evaluate the delays associated with extra work performed by Grot as a result of differing site conditions encountered by Grot which increased Grot 's cost of performance of the Contract and delayed completion of the Project; and

(g) Mraz failed to consider or evaluate the delays associated with extra work performed by Grot as a result of design defects encountered by Grot, including but not limited to, the requirement that Grot redesign the Project in its entirety which increased Grot 's cost of performance of the Contract and delayed completion of the Project.

12. The VA's bad faith, arbitrary, capricious and unreasonable conduct and

abusive action in terminating the Contract for default entitles Grot to all remedies afforded under the Contract and to all remedies afforded at law for the VA's breaches of the Contract, including loss profits on this and other work.

13. By e-mail from Grot dated August 12, 2003, Grot protested the wrongful termination and requested that the default termination be rescinded for, among other reasons, that Mraz had not considered the failure of the VA to provide answers to Grot's questions, that the Show Cause Letter was deficient as to certain of the grounds for which Grot was terminated, that the Show Cause Letter was deficient as to the requirement to provide Grot with specific instances where its work was not in accordance with the plans and specifications and that Grot had provided the VA with a proposed completion date dependant upon the VA providing answers to Grot's questions. A copy of Grot 's e-mail of August 12, 2003 is attached hereto as Exhibit "7".

14. At the time of the default termination, Grot was not in default in that any and all delays Grot experienced in completing the Contract were caused by design defects, differing site conditions and/or government caused delays and/or unforeseen causes beyond Grot 's control and without fault of Grot; the design defects, differing site conditions and/or government caused delays and/or unforeseen causes prevented Grot from completing the Contract within the time frame originally anticipated and entitled Grot to an increase in the Contract price and an increase in the Contract time beyond the date of the wrongful termination.

WHEREFORE, PREMISES CONSIDERED, Grot Incorporated prays that this honorable Court enter judgement against the United States of America as follows:

(a) entry of judgement reversing the Contracting Officer's Final Decision

dated August 7, 2003, and declaring that the termination of the Contract was wrongful, an abuse of discretion and in bad faith, and awarding to Grot (1) all cost incurred by Grot for the work performed on the Project as outlined herein which has not been paid by the VA in an amount of not less than $308,054.03, (2) all termination cost to which it is entitled, (3) all profits lost by Grot due to the wrongful termination, (4) any and all subcontractor settlement cost and (5) all legal and accounting cost and expenses incurred by Grot as a result of the wrongful termination; and

(b) interest on Grot 's damages from the dates due until paid at the rate set by the Secretary of the Treasury or at the highest rate allowed by law; and

(c) reasonable expenses and attorney's fees per 5 U.S.C. §504 in an amount to be shown at a trial of this cause; and

(d) all cost incurred herein; and

(e) such other relief as this Court may deem just and proper.

Respectfully submitted,

GROT INCORPORATED

Andrew J. Kilpatrick, Jr.
Id#656
Gore, Kilpatrick, Purdie, Metz &
Adcock, PLLC
Post Office Drawer 2900
Ridgeland, Ms. 39158-2900
Tele: 601.957.1595
Fax: 601.899.9171
MS. Bar# 3763

DATED: August 18, 2003

Counsel for Plaintiff

| **SOLICITATION, OFFER, AND AWARD** *(Construction, Alteration, or Repair)* | 1. SOLICITATION NO. IFB 549-23-02 | 2. TYPE OF SOLICITATION X ADVERTISED *(IFB)* | 3. DATE ISSUED 12/06/01 | PAGE OF PAGES 1 of 80 |
|---|---|---|---|---|

IMPORTANT — The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST | 6. PROJECT NO. |
|---|---|---|
| V549P-609-2 | | NRM 99-115 |

| 7. ISSUED BY CODE | ADDRESS OFFER TO |
|---|---|
| JOHN MRAZ Contracting Officer (90C)<br>Department of Veterans Affairs<br>VA North Texas Health Care System<br>4500 S. Lancaster Road, Bldg. 8<br>Dallas, Texas 75216 | same as block # 7 |

| 9. FOR INFORMATION CALL: | A. NAME | B. TELEPHONE NO. *(Include area code) (NO COLLECT CALLS)* |
|---|---|---|
| | John Mrazl | (214) 857-0021 |

**SOLICITATION**

NOTE: In advertised solicitations "offer and offeror" mean "bid" and "bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date):*

**Project # B01-114, Replace Fire Alarm System, Sam Rayburn Memorial Veterans Center, Bonham, TX**

The contractor shall furnish all labor, tools, equipment, materials and supervision to replace the "Fire Alarm System" at the Sam Rayburn Memorial Veterans Center, 12012 E. Ninth Street, Bonham, TX in accordance with the contract drawings and specifications. The project shall involve general construction, demolition, alterations, grading, electrical and mechanical work. Contract work shall be performed in compliance with the most up-to-date industry standards and codes as required by the city, county, state and Federal Government. The period of performance is 270 days.

In section 01010 General Requirements, page 01010-1, Section 1.2 Statement of Bid Item(s), B, C & D have been deleted. There are no "alternate bids" for this project.

This solicitation, IFB 549-23-02, replaces Solicitation IFB 549-64-01, which was cancelled due to changes in the contract requirements.

In Lieu of STANDARD FORM 1442 (Automated)

EXHIBIT "1"

11. The Contractor shall begin performance within 10 calendar days and complete it within 270 calendar days after receiving ☐ award, ☒ notice to proceed. This performance period is ☒ mandatory, ☐ negotiable. (See ______________.)

12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS?
*(If "YES," indicate within how many calendar days after award in Item 12B.)*

☒ YES ☐ NO -- Performance and Payment Bond

12B. CALENDAR DAYS
10

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 1 copy to perform the work required are due at the place specified in item 8 by **1:30 PM** local time on January 4, 2002

B. . If this is an advertised solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

C. An offer guarantee is X☐ required.

D. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

E. Offers providing less than 60 calendar days for Government acceptance after the date offers are due will be considered nonrespon-sive an

**OFFER** *(Must be fully completed by offeror)*

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*

GROT, INC.
P. O. BOX 54353
LEXINGTON, KY 40555-4353

Duns # 154514590

CODE FACILITY CODE

15. TELEPHONE NO. *(Include area code)*
859-254-3848

16. REMITTANCE ADDRESS *(Include only if different than Item 14)*

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government within 60 calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS ▶ 934,310.00
Nine Hundred Thirty-four Thousand Three Hundred Ten Dollars and zero cents

18. The offeror agrees (a) to carry out this offer if the Government accepts it by signing Item 31B within the time specified in Item 13D, and (b) to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS
*(The offeror acknowledges receipt of amendments to the solicitation — give number and date of each)*

| AMENDMENT NO. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*
Jerry N. Grot, President

20B. SIGNATURE
[signature]

20C. OFFER DATE
1-8-02

**AWARD** *(To be completed by Government)*

21 ITEMS ACCEPTED:

ALL ITEMS ACCEPTED

22. AMOUNT
$934,310.00

23. ACCOUNTING AND APPROPRIATION DATA

| | | |
|---|---|---|
| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* | ITEM | 25. NEGOTIATED PURSUANT TO ☐ 10 USC 2304(a) ( ) ☐ 41 USC 252(c) ( ) |
| 26. ADMINISTERED BY CODE | | 27. PAYMENT WILL BE MADE BY |

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

| | |
|---|---|
| ☐ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return __________ copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform work, requisitions identified on this form and any continuation sheets for the consideration slated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications or incorporated by reference in or attached to this contract. | ☐ 29. AWARD *(Contractor is not required to sign this document.)* You on this solicitation, is hereby accepted as to the items listed. This awar summates the contract, which consists of (a) the Government solicitatio your offer, and (b) this contract award. No further contractual docum necessary. |

| | | | |
|---|---|---|---|
| 30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)* Jerry M. Groot President | | 31A. NAME OF CONTRACTING OFFICER *(Type or print)* John Mraz | |
| 30B. SIGNATURE [signature] | 30C. DATE 2-1-02 | 31B. UNITED STATES OF AMERICA BY [signature] | 31C. AWARD DATE 1 Feb 02 |

**DEPARTMENT OF VETERANS AFFAIRS**
**NORTH TEXAS VETERANS HEALTH CARE SYSTEM**
**DALLAS VETERANS MEDICAL CANTER**
**4500 S. LANCASTER ROAD**
**DALLAS, TX 75216**

Date: February 1, 2002

# NOTICE TO PROCEED

Contract No. V549P-609-2, Project NRM 99-115-
Bonham Fire Alarm System, Rayburn Memorial
Veterans Center, Bonham, TX

You are hereby notified to proceed with Contract V549P-609-2 and install a Fire Alarm System at the Sam Rayburn Memorial Veterans Center, Bonham, TX.

Work shall begin within ten (10) calendar days after receipt of this "Notice to Proceed" and shall be completed within 270 days after receipt of this "Notice to Proceed". The contract completion date is November 10, 2002

John Mraz
Contracting Officer

## ACKNOWLEDGEMENT

Received and acknowledged by: ______________ 2-1-02
Signature Dated

President
Title

EXHIBIT
"2"

**DEPARTMENT OF VETERANS AFFAIRS**
**NORTH TEXAS VETERANS HEALTH CARE SYSTEM**
**DALLAS VETERANS MEDICAL CENTER**
**4500 S. LANCASTER ROAD**
**DALLAS, TX 75216**

Mr. Jerry Grot
Grot Incorporated
324 Henry Street
Lexington, KY 40508

November 4, 2002

RE: Contract Completion Date Extension

Dear Mr. Jerry Grot:

Your contract, V549C-599-1, to design and install a fire alarm system at the Sam Rayburn Memorial Veterans Center, Bonham, TX completion date is November 10, 2002. Since you will not be able to meet the November 10, 2002 completion date the VA will issue a modification extending the completion date. However, before I can issue the modification extending the contract I'll need from you a revised work schedule with a new anticipated contract completion date.

In granting a new completion date the VA does not relinquish its right to seek compensatory damages for any costs it incurs resulting from your inexcusable delay in meeting the original contract completion date, nor does it waiver its right to terminate for default should your fail to meet the new completion date.

You have seven days to reply. The current contract remains open and will be extended upon receipt of your reply.

Sincerely,

John Mraz
Contracting Officer

RECEIVED
NOV 12 2002

EXHIBIT
"3"

July 23, 2002

Mr. Jerry Grot
Grot Incorporated
688 Grot Drive
Lexington, KY 40508

SUBJ: Contract #V549C-609-2 Design/Install Fire Alarm-Bonham, TX

**SHOW CAUSE NOTICE**

Dear Mr. Grot:

Since you have failed to make progress and make repairs to the Fire Alarm System in Buildings 1, 2, 3, 24 and 29 at the Sam Rayburn Veterans Memorial Hospital, Bonham, TX as directed in our letter of July 17, 2003 and the above contract, the Government is considering terminating the contract under the provisions for default of this contract. On July 17, 2003 it was discovered by our Engineering Service that your company had disarmed the fire alarm system in Building 1 without notifying the VA as required by the above contract. On July 17, 2003, you were directed to correct the problem immediately and Mr. Jon Evans, Grot Project Manager, was contacted and a Fire Watch was initiated. On July 20, 2003 an inspection of all the above buildings was done by the VA Safety Manager and Engineering. It was determined that the work under this contract is approximately 59% complete and does not meet Contract Specification 13850, Paragraph 1.1, sub-paragraph B which states, "The fire alarm system shall comply with requirements of NFPA 101." The contract was awarded on 2-1-02 with a completion date of 11-10-02. On 11-2-02 a time extension to 6-23-03 was granted. To date these problem have still not been corrected and accordingly, you are given the opportunity to present in writing, any facts bearing on the question to:

John Mraz, (90c)
VANTHCS
4500 S. Lancaster Road
Dallas, TX 75216

EXHIBIT
"4"

within10 days after receipt of this notice to include a schedule to complete the above contract. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the Contractor and the Government and the liabilities that may be invoked if a decision is made to terminate for default.

Any assistance given to you on this contract or any acceptance by the Government of delinquent goods or services will be solely for the purpose of mitigating damages, and it is not the intention of the Government to condone any delinquency or to waive any rights the Government has under the contract.

John Mraz
Contracting Officer

Cc: Travelers Casualty & Surety Company of America

jerry@grotinc.com wrote:

Grot Inc.
324 Henry St
Lexington, KY 40508
859.254.3848
859.254.3847

July 31, 2003

Electronic Mail to John.Mraz@med.va.gov
& Regular Mail

John Mraz
Contracting Officer
Department of Veterans Affairs
Dallas Veterans Medical Center
4500 S. Lancaster Road
Dallas, TX. 75216

Re: Grot, Inc.
Contract No. V549P-609-2
Project No. B01-114
Replace Fire Alarm System

Subject: Show Cause Notice of July 23, 2003

Dear Mr. Mraz:

This will acknowledge receipt of your Show Cause Notice dated July 23, 2003. Please be advised that Grot takes specific exception to the issuance of this letter and presents the following "reasons" and not "excuses" that the project was not completed by the revised completion date.

First, with respect to the disarming of the fire alarm system in Building 1, it is incorrect to state that Grot did not comply with the contract documents. Jon Evan e-mailed Ricky Kirk advising of Grot's intent to disarm the system. Apparently, Mr. Kirk was out of the office and did not receive the e-mail prior to Grot performing this work. While Grot has acknowledged that the temporary pull stations were not present, Grot immediately responded to the issue, corrected the issue and at no time was anyone at danger of not having adequate fire protection. **At all times**, Building 1 was provided with fire protection in accordance with this contract.

Notwithstanding, Grot instituted a fire watch as required by your letter of

EXHIBIT
"5"

July 17th, which Grot believes to have been unnecessary under NFPA 7.6.1.8 and 7.6.1.9.

Your letter states that the work performed does not meet the requirements of "NFPA 101". However, your letter offers no explanation as to where this project is deficient as to NFPA 101. It is well settled that a cure notice must specify the progress failures in sufficient detail to enable a contractor to effectively utilize its opportunity to cure. It must be specific enough to enable the contractor to remedy the deficiencies. *Composite Laminates, Inc. v. U.S.*, 27 Fed.Cl. 310 (1992). For example, a cure letter that advised a contractor to submit "acceptable shop drawings" was held not to have described with any degree of specificity that which must be done to make the drawings acceptable. It was declared insufficient notice. *Insul-Glass, Inc.*, GSBCA 8223, 89-1BCA ¶ 21361. A cure notice which fails to set forth existing problems or current deficiencies that the contractor can correct is similarly deficient. *Brandywine Prosthetic-Orthotic Sbc., Ltd.*, VABCA 3441, 93-1BCA 22250.

To simply state that the work does not meet the specifications without more is insufficient under the above authority. Accordingly, Grot considers the Show Cause Notice to be deficient as to claims that Grot's performance does not meet the requirements of NFPA 101.

In addition, this finding is refuted by Siemens which has on more than one occasion certified that the project is being designed pursuant to NFPA 101. As you know, Siemens' designs were reviewed and approved by FRATTO Engineering. This letter is to specifically request a listing as to where the design does not comply with NFPA 101.

I remind you that in the last several months your office has issued notices to Grot citing paragraphs from NFPA 101 which are from the wrong edition. For example, with respect to the Building 29 redesign, you quoted sections out of the NFPA 101, **2000 edition**. The specifications require utilizing NFPA 101, 1997 edition. This is not the only case in which this has occurred. Another example is the VA's letter of July 17th in which Grot was advised that Building 29 had inadequate fire protection as per NFPA Chapters 4 and 18. However, as cited in the letter, Chapter 4 refers to "Classification of Occupancy and Hazard of Content" and Chapter 18 is applicable to "New Apartment Buildings". This was addressed to you in our letter of May 27th to which we have no response.

In a subsequent letter of July 20th, the VA refers to the same Chapter 18 again and also references 9.6.1 through 9.7.6.2. Neither 9.6.1 through 9.7.6.2. exist in the 1997 edition. Thus, in responding to our request for specifics as to where the work does not meet specification, please be certain to reference the correct edition of the NFPA.

As stated in your letter, this project was awarded on February 1, 2002 with an original completion date of November 10, 2002. Work was proceeding on the

project until on or about August 23rd when Mr. Kirk issued his letter determining that Grot was responsible for design of the entire system.

Grot protested that decision and still protests that decision and will seek the cost and expense incurred as a result of that decision.

Notwithstanding, following your letter of September 17th, Grot, in association with Siemens, began redesign of this project. I need not remind you that Mr. Kirk's determination was not made until almost seven (7) months after construction on this project had begun. Delays associated with the redesign of this project severely impacted the completion date and made completion by the original completion date impossible.

In addition, Grot has issued several letters requesting information and direction from your office without which Grot cannot proceed. For example, drawings for Buildings 3, 4, 5, 6, 7, 8, and 11 were received by the VA on November 12, 2002. By letter of December 13th, Grot was inquiring as to the status of the drawings. Further, Grot warned the VA that delay in approving the drawings would delay completion of the project. According to Mr. Kirk, the drawings were not timely reviewed because other VA personnel were busy with other issues at the VA facility in Dallas. Where the contract requires the VA to review and approve the contractor's drawings, the contractor is justified in delaying work covered by the drawings until the VA's approval is received. *T.C. Bateson & Co.*, ASBCA 4718, 58-2, BCA ¶1896. Additional requests for information were made in letters dated October 1, 2002, October 18, 2002, April 29, 2003 and May 27, 2003 and email dated January 22, 2003.

Where a contractor's requests or inquiries are prompted by ambiguous drawings or conflicting instructions, the obligation to provide a quick response is clear. *Clay Bernard Systems Int., LTD. v. United States*, 22 Cl.Ct. 804 (1991).

In the past few weeks, Grot has received verbal direction from VA representatives to add additional devices which are not shown on the approved drawings or, for that matter, the original plans and specifications. Grot has repeatedly requested that these directives be in writing. As Grot has provided a design that is pursuant to NFPA 101, Grot disputes the necessity of the additional devices. Further, Grot has advised your office that it does not believe that it has the authority to unilaterally change approved drawings. In response, VA representatives provided Grot with a copy of "FAR 52.236-21". The VA's reliance on this FAR is misplaced. This is a general FAR that ties the drawings and specifications together. It does not require the installation of devices which are not a part of the scope of work.

Further, and just as important, this FAR applies to **government provided drawings.** I remind you again, Grot has redesigned this project per your directive. The drawings being used for construction are by Siemens/Grot and

approved by FRATTO Engineering. There is no further discrepancy.

In addition, this FAR specifically provides for the directives to be in writing. It states in pertinent part as follows:

> "In case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination **in writing**. **Any adjustment by the Contractor without such a determination shall be at its own risk and expense.** The Contracting Officer shall furnish from time to time such detailed drawings and other information as considered necessary, unless otherwise provided". (Emphasis added).

Representatives of the VA have refused to provide written directive to install the disputed devices. This is not in compliance with FAR 52.236-21 and could be considered a breach of contract by the VA.

In an e-mail to my office of July 29th from Cojean Sprouse, she stated that the "approved drawings" were for "General Arrangement" only. In making that statement she relied upon a stamp placed on the drawings by Mr. Kirk. Mr. Kirk is the COTR and not the design engineer of this project. He is neither a NICET Level III technician nor a fire protection engineer. A closer review of the plans will reflect a stamp from FRATTO Engineering which says as follows:

> "Fabrication/installation may be undertaken. Approval does not authorize changes to the Contract Sum or Contract Time.

**Approval**

> **is for conformance with the design concept of the project and with the information given in the Contract Documents**, this Approval does not extend to accuracy of quantities or dimensions, designs by contract shop fabrication processes, field construction techniques and safety, or coordination of trades and their work." (Emphasis added).

This stamp verifies that the design provided by Grot meets the requirements of the contract documents. For the VA to now say that additional devices are necessary or that the drawings prepared by Grot do not meet the contract documents, is contrary to the determination made by the VA's expert. Again, these drawings are prepared by a NICET Level III technician and approved by the VA's engineers. None of the individuals giving direction on this

project to install additional devices or to change the approved drawings meet either of these qualifications.

Notwithstanding, Grot has proceeded in accordance with written direction from your office to install certain additional devices. It will continue to follow such written direction, albeit under protest, However, the VA cannot default Grot for installing a project in accordance with approved drawings simply because the VA wishes additional devices installed.

As of the preparation of this letter, testing is ongoing on the correction of the alleged deficiencies provided by Mr. Kirk on July 23rd. I am advised that your representatives have indicated to my project superintendent that they will "fail" the elevator recall test because there are no smoke detectors at the top of the elevator shaft. Neither the drawings provided by FRATTO nor Grot's redesign of this project reflect elevator shaft smoke detectors. These will be additional devices. Again, if the VA wishes those devices installed, a written directive should be issued. For the record, it is my understanding that the elevators recalled as required when tested. Again, you cannot default terminate a contract when construction is in accordance with approved drawings.

I am also advised that during the testing today, an issue arose as to tampers that were not shown on any of the drawings provided by Grot. In addition, there was a problem finding the Inspector's Test Valves to test flows. The VA's representatives indicated that they would fail Grot on the test even though we had no knowledge of these issues.

Incredulously, Mr. Kirk then produced a set of drawings which had this information; drawings that were never made available to Grot. The VA has had information which it knew was of benefit to Grot and never produced it except to use it to attempt to justify a test failure.

I do not need to remind you that this was exactly the type of information requested in Grot's letter of October 18, 2002 following the directive to redesign the project. In item 4 of that letter Grot requested "correct building mechanical drawings". In item 6, Grot requested "correct fire protection sprinkler drawings". The VA never provided the drawings it now relies on to test the system. In fact, the VA never even responded to the request.

It is long settled case law that If the government, VA, possesses material knowledge regarding the performance of a contract which it knows the contractor does not possess, it is under a duty to disclose its superior knowledge. *J.A. Jones Construction Co. v. United States*, 182 Ct. Cl. 615, 390 F.2d 886 (1968). It can not use that superior knowledge or fail to disclose that knowledge to ambush a contractor. In addition, superior knowledge means that the VA knows some critical facts not known or available to Grot, that Grot can not obtain these facts from sources outside of the VA and **the VA withholds the facts from the Grot**.

*Santa Fe Engineers, Inc.*, ASBCA No. 17,235 75-2, BCA ¶11,570. The failure to provide the drawings is inexcusable. To use the drawings now to try and discredit Grot's work borders on bad faith.

It is well established that the government warrants the adequacy of its plans and specifications to the extent that compliance with them will result in satisfactory performance. *American Line Builders, Inc. v. United States*, 26 Cl.Ct. 1155, 1193 (1992), *United States v. Spearin*, 248 U.S. 132 (1918). This implied warranty is not overcome by clauses requiring the contractor to inspect the site, to check plans and assume responsibility until work is completed. The contractor is not responsible for defects in the plans and specifications. *Sipco Services & Marine, Inc. v. United States*, 41 Fed.Cl. 196 (1998). Here, the plans were provided by the VA from the VA's design professional. Grot and every other bidder for the project relied on those plans. At no time did the VA indicate to anyone that they were not complete.

In this case, the specifications were drafted by the VA. That they are ambiguous is patently clear in that neither Grot nor the VA are in agreement as to the responsibility for the design of this project. As a result, the rule of *contra proferentum* will control. That is, the ambiguity will be construed against the party drafting the specification, the VA. Where the government has drafted the ambiguous specifications, a contractor is not required to exercise clairvoyance in determining its contractual responsibilities. *Corbetta Const. Co. v. United States*, 198 Ct.Cl. 712 (1972).

Further, the VA can not seek to avoid the warranty of specifications and drawings by including limiting language or special disclaimers. For example, the specifications, drawings or instructions may have been labeled "advisory", but it has been held that such language does not defeat the contractor's right to rely on the specifications. *Celesco Industries, Inc.*, ASBCA No. 18370, 76-1, BCA ¶ 11,766 at 56, 169; *Teledyne McCormick-Selph*, ASBCA No. 15664, 73-2 BCA ¶ 10,243 at 48,290. Thus, the COTR's reliance on the word "generic" in his determination that Grot was responsible for design will clearly fail and reliance on FAR 52-236-21 fails again if the FAR is the basis for a requirement of additional devices. Finally. Mrs. Sprouse's reliance Mr. Kirk's stamp likewise fails based upon this case law.

Similar findings have been made where specifications stated that the plans were for "information and use" in preparing bids and that the contractor was to insure that structural plans were "adequate for the intended purpose". The ASBCA held that the
contractor was still entitled to rely on the plans. *Bethlehem Steel Corp.*, ASBCA No. 13,341, 72-1 BCA ¶9,186. None of the provisions submitted to date is sufficient to shift the risk for the design of this project to Grot, yet, to avoid termination Grot provided the redesign.

Next, we are at a loss as to how the VA is determining that the project is only "59% complete". As of today, all buildings are on the network system

except Building 1 which has a temporary system in place. Further, with the exception of a few peripheral devices in each building, all devices required by the design are installed and the system is performing. Please provide the basis upon which the VA relies in making this determination.

Throughout the course of this project, the VA has been a minimum of sixty (60) days late in making payments to Grot. When payments were received, they did not contain prompt payment interest as required by the FARs. As of this response, Grot still has not been paid for its applications in April, May or June. While I acknowledge that it is a contractor's responsibility to provide adequate financing for contract performance, it is not the contractor's responsibility to fully finance the project. Failure to make required payments to the contractor has been held to constitute an excusable cause of delay. *Virginia Electronics Co., Inc.*, ASBCA 18,778, 77-1 BCA ¶12393, *United States Services Corp.*, ASBCA 8,291, 1963 BCA ¶3703. Further, excusable delay has been found where a contractor's financial incapacity is caused by acts or omissions of the government. *TCG Contracting Corp. v. United States*, 736 F2d 1512, 1515 (Fed. Cir. 1984), *Murdock Machine & Eng'g Co. v. United States*, 873 F2d 1410 (Fed. Cir. 1989).

Your letter threatens termination for default. Grot believes such a threat to be wholly unjustified. Notwithstanding the dispute over the design responsibilities, failure to make payment, the delays in responding to requests for information, the failure to respond to requests for information and the refusal to meet with Grot and its subcontractors, Grot has continued to try and complete this project. Grot has incurred a significant amount of cost and expense in trying to follow what Grot considers to be the VA's wrongful interpretation of its own plans and specifications. Grot is continuing to try and complete this project and as of this letter anticipates being complete by October 3rd using reasonable construction practices and assuming that there are no additional changes to the contract documents and Grot receives responses to its pending inquiries not later than August 11th. Under the circumstances, a default termination would do nothing but further delay and increase the VA's cost in completing this project.

Prior to any further directive being issued, Grot again requests a meeting with you, your COTR and anyone else that you believe appropriate. This meeting could fully address the outstanding questions and the schedule of performance in concluding this project. Grot has repeatedly requested this meeting and has repeatedly been denied this opportunity. At this juncture, Grot believes a meeting not to be just critical, but imperative. Please advise as to the VA's availability to meet on August 4th, 5th or 6th.

This will also reaffirm that my counsel will not be present in the meeting.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

GROT, INC.

Jerry Grot
President

August 7, 2003

North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Dallas, TX 75216

Mr. Jerry Grot
Grot, Incorporated
324 Henry Street
Lexington, KY 40508

**Termination for Default**

Subject: Contract V549P-609-2
Design/Install Fire Alarm System, Bonham, TX

Dear Mr. Jerry Grot:

You are hereby notified that your right to proceed with the work under Contract, V549P-609-2/ Design/Install Fire Alarm System Project for the Sam Rayburn Veterans Memorial Center, Bonham, TX awarded to Grot, Incorporated on February 1, 2002 is terminated. The effective date of the termination is August 8, 2003.

The decision to terminate your contract was made after I evaluated the history of Contract V549P-609-2 in its entirety, and is based on your failure to provide adequate fire alarm protection for Buildings 1, 2, 3, 24 and 29 at the Sam Rayburn Veterans Memorial Center, Bonham, TX as directed in my letter of July 17; 2003; your failure to perform in compliance with the technical requirements of the contract; your failure to complete the contract by the extended completion date of June 23, 2003; and your failure, in your letter of July 31, 2003, to "Show Cause" to my Show Cause Notification Letter of July 23, 2003.

Therefore, in accordance with FAR Clause 52.249-10 your right to proceed with the work that has been delayed is terminated. Your delays and your failure to meet your contractual obligations are inexcusable.

The Contracting Officer's final decision to terminate your contract makes your request for a meeting moot and is denied. Thus, you are hereby directed to "Stop Work", terminate subcontracts and make no further shipment of contract building materials. Moreover, the Government may purchase the supplies or services terminated against the contractor's account and the contractor will be held liable for any excess costs. Furthermore, the Government reserves all its rights and remedies provided by law under this contract, in addition to charging excess costs.

Ricky Kirk, the Contracting Officer's Technical Representative, will contact you a few days after the effective terminate date of August 8, 2003 to schedule a meeting to ascertain ownership so that you can remove contractor property and cleanup the work site.



EXHIBIT
"6"

The Contracting Officer has determined that your failure to perform is inexcusable and that the notice of termination constitutes that decision. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

The Department of Veterans Affairs Board of Contract Appeals (VABCA) is the authorized representative of the Secretary for hearing and determining such disputes. The rules of the VABCA are published in section 1.783, of Title 38, Code of Federal Regulations. The address of the Board is 810 Vermont Avenue, N.W., Washington, DC 20420.

John Mraz

JOHN MRAZ
CONTRACTING OFFICER

cc: Travelers Casualty & Surety Company of America

Grot, Incorporated
324 Henry Street
Lexington, Kentucky 40508
859-254-3848 Fax 859-254-3847

To: VA North Texas Health Care System
4500 S. Lancaster Road, Bldg. 8
Dallas, Texas 75216

Attn: John Mraz

Date: 8/12/2003

Doc No.: Corr-19
Project: Bonham Tx.-VA
2002.006

Subject: Notice of Termination for Default
Request to Rescind

Sam Rayburn Memorial
East Ninth
Bonham, Tx 75418

Dear John Mraz:

Grot, Inc. ("Grot") has considered your letter of August 7, 2003 terminating the above contract for what the VA considers to be Grot's default. After further review and consultation with our counsel we are still of the opinion that your letter does not meet the requirements of FAR clause 52.249-10 and the requirements for default termination as determined by United States Court of Federal Claims.

First, your Show Cause Notice of July 23rd only requires that Grot provide you with a schedule to complete the above contract. In Grot's response of July 31st, Grot pointed out various questions pending before your office which had to be answered before Grot could complete construction. As we stated in our response, we cannot provide you a "schedule" until we have answers to these questions. Notwithstanding, we did advise you that we anticipated the project being complete by October 3rd if we received answers to our questions by August 11th. **To date, we still do not have answers to those questions.**

In your July 23rd letter you insinuate that Grot has not met the requirements of NFPA 101. However, you do not provide Grot with any specific areas of its construction that are not in compliance. As stated in Grot's reply, a cure notice must provide a contractor with specific notice of the deficiency so that it may be corrected. **To date, you still have not provided Grot with any instance where its construction does not meet NFPA 101. The fact of the matter is you cannot do so or you would have addressed such deficiency more specifically.**

Your termination letter now states that Grot has failed to provide adequate fire alarm protection for buildings 1, 2, 3, 24 and 29. Again, you do not specify where Grot's fire alarm protection is inadequate in these buildings. If you review your Show Cause Notice you will find that you did not allege that the fire alarm protection was inadequate in these buildings. You simply state in the Show Cause Notice that Grot has failed to make progress and repairs. To the extent that the default termination is based upon "failure to provide adequate fire alarm protection" in the referenced buildings, you have not provided Grot an opportunity to cure any alleged deficiency.

Throughout the course of this project you or your COTRs have repeatedly referred to the wrong sections of the NFPA. Further, when questioned about the intent of such referrals, you have not replied. Your termination letter's reference to your " letter of July 17, 2003" is further evidence of your failure to pay attention to the questions raised by Grot during this project as that letter does not address the issues which you contend must be addressed. Grot's reply to the Show Cause Notice specifically addresses issues such as this. However, you do not address any of the comments in Grot's response; you simply terminate the contract. **Again, you do not address the issues because you have no contractual or legal basis to do so.**

EXHIBIT
"7"

Grot, Incorporated
324 Henry Street

Lexington Kentucky 40508
859-254-3848 859-254-3847

Your termination letter states that Grot has failed to "show cause" but you have not addressed a single issue of Grot's response. Throughout this process Grot has repeatedly requested the opportunity to meet with you, the COTRs and anyone else you felt necessary to discuss the issues involved in this contract. **You have never agreed to such a meeting, always finding some excuse that such a meeting is "moot".** We again request such a meeting.

In the light of your apparent failure to give consideration to Grot's response of July 31st, we are asking that the termination of this contract be rescinded. We are proceeding with preparing our appeal to the United States Court of Federal Claims and intend to file same by Monday, August 18th. Accordingly, unless we have heard from you by 12:00 Noon eastern daylight time Friday, August 15th, we will assume that you have no intention of rescinding the termination and will proceed to perfect our appeal.

I Remain,
Grot, Incorporated

Jerry Grot
President

cc: Andrew J. Kilpatrick, Gore, Kilpatrick, Purdy, Metz & Adcock
Mark S. Marino, Travelers Insurance