No. 03-1951C
(Judge Baskir)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GROT, INC.

Plaintiff,

v.

UNITED STATES

Defendant.

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, DC 20530
Telephone: (202) 353-7995
Facsimile: (202) 514-8624

November 2, 2005

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-19

A. Contract Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
B. Relevant Contract Provisions . . . . . . . . . . . . . . . . . . . 4-7
C. The Dispute Regarding Grot's Interpretation Of The Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-17
D. Relevant Deposition Testimony . . . . . . . . . . . . . . . . 17-18
E. Grot's Appeals Before The Veterans Affairs Board Of Contract Appeals . . . . . . . . . . . . . . . . . . . 18-19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-36

I. Partial Summary Judgment Is Appropriate . . . . . . . . . . 19-20

II. The Contract Required Grot To Design And Install A Comprehensive Fire Alarm System . . . . . . . . . . . . . . . . 21-36

A. The Plain Language Of The Contract Required Grot To Design, (i.e., Incorporate The Bid Drawings, Contract Specifications And Relevant Fire Safety Codes), And Install A Fire Alarm System . . . . . . . 23-30

B. Assuming For The Sake Of Argument That The Contract Was Ambiguous, The Ambiguity Was Patent, And Grot Failed To Discharge Its Obligation To Inquire Into The Patent Ambiguity . . 30-32

C. Assuming For The Sake Of Argument That The Contract Was Latently Ambiguous, Grot's Interpretation Of The Contract Provisions Is Unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

## CASES

American Science and Engineering, Inc. v. United States,
229 Ct. Cl. 663 F.2d 82 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Americans Disabled for Accessible Public Trans. v. Skywest Airlines, Inc.,
762 F. Supp. 320 (D. Utah 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Avedon Corp. v. United States,
15 Cl. Ct. 771, 777 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Bayou Land & Maritime Contractors, Inc. v. United States,
23 Cl. Ct. 764, 768 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Brutoco Engineering & Const. v. United States,
12 Cl. Ct. 104, 109, aff'd, 833 F.2d 1021 (Fed. Cir. 1987) . . . . . . . . . . . . 24

Bailey v. United States,
516 U.S. 137 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

P.R. Burke Corp. v. United States,
58 Fed. Cl. 549 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Celotex Corporation v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Community Heating & Plumbing Co., Inc. v. Kelso,
987 F.2d 1575 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Confederated Tribes of Colville Reservation,
964 F.2d 1102 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Elden v. United States,

223 Cl. Ct. 239, 617 F.2d 254 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Foley Company,
11 F.3d 1032 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 31

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

HPI/GSA-3C,
364 F.3d 1332 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Hercules, Inc. v. United States,
292 F.3d 1378 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Hills Materials Co. v. Rice,
982 F.2d 514 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Hol-Gar Mfg. Corp. v. United States,
351 F.2d 972 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Interstate General Government Contractors v. Stone,
980 F.2d 1433 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

J.B. Steel, Inc. v. United States,
810 F.2d 1139 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Jowett, Inc. v. United States,
234 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 34

Martin Lane Co. v. United States,
432 F.2d 1013 (Ct. Cl. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Neal & Co. v. United States,
945 F.2d 385 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Newsom v. United States,
676 F.2d 647, 230 Ct. Cl. 301 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 31

San Carlos Irrigation District and Drainage v. United States,
111 F.3d 1557 (Fed. Cir. 1997), aff'g 26 Cl. Ct. 229 (1992) . . . . . . . . . . 20

Solar Turbines, Inc. v. United States,
23 Cl. Ct. 142, 145 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,
484 U.S. 365 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## STATUTES AND REGULATIONS

48 C.F.R. § 52.236-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## COURT RULES

Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GROT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1951C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
UPON THE ISSUE OF WHETHER THE CONTRACT
REQUIRED GROT TO DESIGN AND INSTALL A FIRE ALARM SYSTEM

Pursuant to Rule 56(b), defendant respectfully requests that the Court grant partial summary judgment in its favor, because there is no issue as to any material fact with regard to plaintiff Grot, Inc.'s ("Grot's") claim that its delay in performing the contract at issue was caused by the Government's incorrect interpretation of the contract requirements, or what it terms "design defects," as requiring Grot to design and install a fire alarm system. The United States is, therefore, entitled to an order that conclusively establishes for the purpose of further proceedings in this case that the contract required Grot to design and install a fire alarm system. In support of this motion, defendant relies upon the pleadings, the consolidated statement of uncontroverted facts ("CSUF"), and the following memorandum of law and appendix ("App.").

# DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

I. Whether partial summary judgment is appropriate.

II. Whether the Government is entitled to partial summary judgment conclusively establishing for the purposes of further litigation in this case that the contract required Grot, Incorporated to design and install a comprehensive fire alarm system.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Grot challenges the Department of Veterans Affairs ("VA") August 7, 2003 termination of Grot's contract for default. Grot seeks to have the termination for default converted to termination for convenience. Grot alleges that the Government's incorrect interpretation of the contract requirements – specifically the Government's interpretation that the contract required Grot to design and install a fire alarm system, as opposed to simply requiring Grot to install a fire alarm system – caused Grot's delay in performing the contract.

## II. Statement Of The Facts

### A. Contract Award

On February 1, 2002, Grot was awarded a contract by the Department of Veterans Affairs ("VA") for the project generally described as Campus-Wide Fire Alarm, Project No. 099-108, at the Sam Rayburn Memorial Veterans Center in Bonham, Texas, for the amount of $943,310. Appendix ("App.") at 1. Prior to submitting its bid upon the contract, Grot did not inquire into the meaning of any of the now disputed terms and conditions stated in the specifications or drawings. App. at 39-40.

On February 1, 2002, Grot received the Notice to Proceed that established November 10, 2002, as the contract completion date, 270 calendar days later. App. at 2. Also on February 1, 2002, Grot entered into a subcontract with Siemens Cerberus Division ("Siemens"), to "supply submittals for equipment[,] submit drawing of system (wiring layout)[,] supply all devices as per drawings and specs[,] install panels and get all communicating with each other to be done by Siemens[,] install temporary fire alarm system in buildings needed[,] install devices and trim out (entire job)[,] install UPS system[, and] provide three year warranty." App. at 3-4.

B. Relevant Contract Provisions

Contract specification 13850, paragraph1.1.A, provides:

> This section of the specifications includes: the furnishing, installation, and connection of fire alarm equipment to form a complete multi-building analog addressable-device fire alarm and emergency notification system; testing and placing the new system into operation; training of the owner's personnel; and removal of the old system. The new system shall include, but not be limited to, alarm initiating devices, alarm notification appliances, control units, fire safety control devices and interfaces, annunciators, power supplies, remote alarm interfaces, and wiring as shown on the drawings and as specified. All devices and accessories necessary for a complete operating system shall be included even though each item is not specifically mentioned or described herein.

App. at 10, (emphasis added).

Contract specification 13850, paragraph 1.2.B, entitled "Scope,"

provides:

> A new fire alarm system shall be designed and installed in accordance with the specifications and drawings. Device location and wiring runs show on the drawings are for reference only unless specifically dimensioned. Actual locations shall be in accordance with [National Fire Protection Association ("NFPA)" Code] 72 and this specification.

App. at 11, (emphasis added).

Contract specification 13850, "Fire Alarm System," paragraph 1.1.B, "Description," provides in relevant part:

> The fire alarm system shall comply with requirements of NFPA 101 and NFPA 72. The system design, system layout, submittal documents preparation, and supervision of installation and testing shall be provided by a technician that is certified [National Institute for Certification in Engineering Technologies ("NICET")] level III or a registered fire protection engineer. The NICET certified technician shall be on site for the supervision and testing of the system. Equipment manufacturer factory engineers thoroughly familiar and knowledgeable with all equipment utilized, shall provide additional technical support at the site as required by the Contracting Officer or his authorized representative. Installers shall have a minimum of five years experience installing fire alarm systems.

App. at 10, (emphasis added).

Contract specification 01001, paragraph 1.1.D provides:

> In some instances it may have been impracticable to detail all items in specifications or on drawings because of variances in manufacturer's methods of achieving specified results. In such instances the contractor will be required to furnish all labor, materials, drawings, services and connections necessary to produce systems or equipment which are completely installed, functional, and ready for operation by facility personnel in accordance with their use.

App. at 12, (emphasis added).

Specifications, referring to the submission of shop drawings, provide that the "contractor shall be responsible for verifying all critical dimensions shown on the drawings provided by the VA," and that the contractor shall "provide locations of all devices, . . . appliances, panels, equipment, junction/terminal cabinets/boxes, risers, electrical power connections, individual circuits and raceway routing, system zoning; number, size, and type of raceways and conductors in each raceway; conduit fill calculations with cross section area percent fill for each type and size of conductor and raceway. . . ." Section 13850, ¶¶ 1.4.B.1 and 2, App. at 13.

Section 16050, "Basic Methods And Requirements (Electrical)," paragraph 1.2.A, "Minimum Requirements," explicitly states that references to NFPA codes are "minimum installation requirement standards," and paragraph 1.2.B, provides "[d]rawings and other specification sections shall govern in those instances where requirements are greater than those specified in the [NFPA] standards."[1] App. at 14.

Additionally, the contract incorporated FAR 52.236-27, which provides that "[a]nything mentioned in the specifications and not shown on

---

[1] Contract specification section 16050, though titled "Electrical," applies to section13850, which contains the specifications that govern the fire alarm system. Section 16050, ¶ 1.1.A.

the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between the drawings and specifications, the specifications shall govern." 48 C.F.R. § 52.236-21, App. at 9.

General note 5 on Drawing EF00 01 provides:

> These drawings are GENERIC with respect to any particular manufacturers equipment. Quantities of FATC and spacing dependent on devices may vary with the system equipment manufacturer.

App. at 16.

C. <u>The Dispute Regarding Grot's Interpretation Of The Contract</u>

On May 5, 2002, the VA met with Fratto Engineering, the company that provided the bid drawings, and Grot employees to discuss the project. In his minutes from the meeting, David Morrison, an engineer with Fratto, noted:

> Reminded Grot/Siemens that they are responsible for compliance with applicable codes. The drawings are for defining the scope of work. It seems that, with few exception, the submittals are the same as the project drawings.

App. at 20-21.

On June 24, 2002, the COTR, Rickey Kirk, sent an email to Grot's project manager, Clyde Bell, expressing some concerns about the project.

App. at 22. His first concern was that the project was not supervised by a Certified NICET Level III Technician or a Registered Fire Protection Engineer, as required by specification section 13850, paragraph 1.1.B. Secondly, he also expressed concern that Grot's submittals to date did not appear to meet the applicable codes as required by the specifications. Id. He specifically noted that "[a]ll plans Siemens has submitted have been virtually the same plans produced by Fratto [Engineering]." Id. Mr. Kirk further stated:

> We have approved with corrections what plans have been submitted. This approval is for general layout only and does not relieve Grot of the responsibility of assuring that all codes are met. If installation is made and it is found that device locations are not to code then what work that has been done will have to be redone at the contractors expense.

Id.

The COTR's stamp on all approved drawings contained the following language:

> Approved for general arrangement only. No responsibility assumed for quantities or dimensions. Contractor required to comply with contract document, plans, and specifications. Contractor is responsible for field verification of quantities and dimensions; fabrication process and techniques of construction; coordination of work with other trades and satisfactory performance of his work.

15, (emphasis added).

Fratto Engineering reviewed and stamped all drawings with the following language:

> Approval is only for conformance with the design concept of the project and with the information given in the Contract Documents; this approval does not extend to accuracy of quantities or dimensions, designs by contract shop fabrication processes, field construction techniques and safety, or coordination of trades and their work. . . Review/approval neither extends nor alters any contractual obligations of the Architect or Contractor. Review/approval is based on the assumption that the submittal was reviewed and coordinated as required by the general conditions and that the contractor assumes the responsibilities required therein. Checking of shop drawings shall not relieve contractor of responsibility for deviation from requirements of contract documents nor errors or omissions in shop drawings.

Id. (emphasis added).

In an email dated June 25, 2002, Grot's project manager responded to the COTR's June 24 email, stating:

> The fire protection system shall be installed as designed by Fratto Engineering, Inc. in accordance with the specifications. To provide a set of plans for the project that meets all codes is not a requirement of the contractual documents. It is the responsibility of the Engineering firm for the project to design a workable system which meets all applicable codes. . . . Grot, Inc. was not contracted with to design the

> project. The design was the responsibility of the Owner's engineers, Fratto, Engineering, Inc.

App. at 23-24, (emphasis added).

On July 2, 2002, Grot personnel and VA personnel met to discuss various issues concerning the project. App. at 25-27. The contracting officer's notes from that meeting indicate that the two groups discussed the role of the bid drawings and specifications. Id. The contracting officer cited to both FAR provision 52.236-27, "Site Visits," and 52.236-21, "Specifications and Drawings for Construction." Id.

At a meeting on July 22, 2002, the parties again discussed, without resolution, the issue of whether the contract required Grot to rely upon and adhere to the specifications and the NFPA codes or whether Grot could rely solely upon the bid drawings prepared for the VA by Fratto Engineering. App. at 28.

Consequently, the contracting officer issued a letter to Grot, dated August 23, 2002, directing it to comply with the COTR's findings, which set forth the VA's position that Grot was to design and install the fire alarm system based upon the drawings, specifications and relevant codes. App. at 28-29. The COTR stated:

> After careful review I, Ricky Kirk, the COTR have concluded that this is a design and installation project and that Grot Inc. must design and install a complete fire alarm system in accordance with contract plans and specifications as well as the NFPA Codes. Furthermore, I request that the contractor, Grot, Inc., resubmit all previous drawings. The resubmitted drawings shall include everything contained on the original drawings as well as any additional devices required by NFPA Codes that did not appear on the original submittals. In addition, the contractor shall provide all information and drawings requested in the specifications, paying particular attention to the requirements of spec. section 13850, paragraph 1.4, submittals.

App. at 29.

On September 5, 2002, Grot responded to the contracting officer's August 23, 2002 directive, again protesting the VA's determination that Grot had to redesign and resubmit its original shop drawings, so that they contained all of the items shown on the bid drawings, as well as those items required by the relevant fire safety codes, which were required by the specifications. App. at 30-31.

In its September 5, 2002 letter, Grot set forth its interpretation of the various contract provisions, coming to the conclusion that it was not required to design the fire alarm system. Id. Grot first alleged that the language contained in General Note 5 on bid drawing EF00.01 that the

drawings are “generic” was “only to assure that there is no misinterpretation that the drawings may dictate a sole source procurement.” App. at 30. Grot next alleged that specification section 01001, paragraph 1.1.D, which states that it may have been impractical to detail all items in the specifications, did not make the specifications “design specifications.” Id. Grot determined that the purpose of the shop drawings was to detail installation procedure for the devices shown on the bid drawings. Id. Grot alleged also that section 13850, paragraph 1.1.A, which states that the final fire alarm system not be limited to the items contained in the bid drawings and specifications, did not imply that Grot was responsible for design, but that Grot would provide all of the incidental equipment necessary to make the items listed in the specifications and drawings function. Id. Finally, Grot reasoned that if the contract required Grot to design the fire alarm system, then the VA would not have issued specifications for the fire alarm system and would not have referenced any fire alarm information on the bid drawings. App. at 30-31. Ultimately, Grot determined that it was never the intent of the specifications to require it to design any portion of the fire alarm system. App. at 31.

By letter/cure notice of September 17, 2002, the contracting officer responded to Grot's September 5, 2002 letter, again directing Grot, pursuant to contract specification section 13850, paragraphs 1.1.A and 1.2.B, to design and install a fire alarm system. App. at 32-33.

In a September 18, 2002 letter, Grot's president, Jerry Grot, stated that Grot would begin the "process of designing a cure to the deficiencies contained in the plans and specifications designed by the government's Consultant." App. at 34. Mr. Grot also stated in this letter that the "plans and specifications are, at best, ambiguous," and that Grot would stand by the position it articulated in its August 23, 2002 letter, that the VA's request that Grot incorporate the bid drawings, specifications and relevant codes to form a complete fire alarm system was outside of the scope of work for the contract. Id.

On September 18, 2002, the contracting officer responded to Mr. Grot's letter of the same date. App. at 35-36. The contracting officer cited FAR 52.236-21, stated that the contract was not ambiguous, and assuming it were ambiguous, it was a patent ambiguity about which Grot should have inquired prior to bidding. Id.

On September 25, 2002, Mr. Grot sent another letter to the contracting officer stating,

> There is no indication in the plans and specifications that we are to design the project. The "design" language relied upon by the VA to attempt to justify its position is generic and not a specific directive to design the project. Our consultant and we took the engineer's design and applied the products that were available to our consultant to meet the intent of the design.

App. at 37. Mr. Grot also, erroneously, stated that it was not until July 2002, that the VA questioned whether the drawings met the "VA interpretation of the specification." Id. Mr. Grot also informed the VA that "pursuant to NFPA 101 & 72 we can and shall remove devices that are shown on the VA drawings[.]" App. at 38. Mr. Grot made no mention of contract specification section 16050, "Basic Methods And Requirements (Electrical)," paragraph 1.2.A, "Minimum Requirements," which explicitly states that references to NFPA codes are "minimum installation requirement standards," and paragraph 1.2.B, which provides that "[d]rawings and other specification sections shall govern in those instances where requirements are greater than those specified in the [NFPA] standards."

In a November 4, 2002 letter, the contracting officer stated that he did not believe that Grot would meet the November 10, 2002 contract completion date and directed Grot to provide a revised work schedule with a new anticipated contract completion date. App. at 39. Additionally, the contracting officer clearly stated that in granting an extension, the VA was not relinquishing its right to seek compensatory damages for any costs it incurred resulting from Grot's inexcusable delay, nor was it relinquishing its right to terminate the contract for default should Grot fail to meet the new contract completion date. Id.

On March 18, 2003, over three months later, Grot submitted its revised schedule that indicated a completion date of June 23, 2003. App. at 40.

The contracting officer issued contract modification number three, which extended the contract completion date from November 10, 2002 to June 23, 2003. App. at 19.

On June 10, 2003, the COTR responded to an inquiry from the contracting officer as to whether the VA should terminate Grot for default. App. at 41-43. The COTR did not recommend termination as he believed it would further delay the project and add expense to the contract. App. at

41. He noted, however, that his main concern was Grot's continued failure to comply with the specifications and to submit redesign drawings. App. at 42-43.

The contracting officer, based upon the COTR's opinion, allowed Grot to continue beyond the June 23, 2003 contract completion date, but issued a show cause notice one month later. App. at 44-45.

In a July 31, 2003 letter from Jerry Grot to the contracting officer, which responded to the VA's issuance of the July 23, 2003 show cause notice, Grot again disputed the VA's determination that Grot was responsible for the design of the fire alarm system, and that Grot would seek the cost and expense allegedly incurred as a result of that decision. App. at 46-52.

The COTR provided his comments to the contracting officer on August 3, 2003. 53-58. On August 7, 2003, almost nine months past the original completion date, the contracting officer terminated the contract for default. App. at 59-60. On August 9, 2003, the contracting officer set forth his rationale for the termination in an internal memorandum. App. at 61. Among the reasons listed was "failure to perform in compliance with the technical requirements of the contract." Id.

On August 12, 2003, Grot responded to the termination for default and requested that the contracting officer rescind the termination by noon on Friday, August 15, 2003. App. at 62-63

Grot filed this lawsuit on August 19, 2003.

D. Relevant Deposition Testimony

During discovery, Scott McCauley, a fire and security operations manager for Siemens, which was Grot's subcontractor on this project, testified that Siemens initially submitted a cost proposal to Grot that included devices that were in addition to the devices shown on the bid drawings. App. at 64-78. Mr. McCauley testified that Grot rejected this proposal and requested that Siemens submit a cost proposal that was based only on the devices that were shown on the bid drawings. App. at 65-66. Mr. McCauley stated that Siemens originally provided a proposal that included devices in addition to the ones shown on the bid drawings because Siemens knew that the VA wanted devices that were not included on the bid drawings. App. at 67-68. Mr. McCauley testified that Siemens notified Grot that the VA did not want the contractor to simply install what was shown on the drawings. 69-70. Grot's response was that the contract was not a design project. App. at 66. Thus, Mr. McCauley testified, that

the first set of shop drawings that Grot accepted from Siemens was based solely upon the bid drawings. App. at 75.

Mr. McCauley also testified that after the VA instructed Grot to redraw and resubmit its shop drawings to incorporate the bid drawings, specifications and codes, Grot directed the Siemens to “value engineer” the project, meaning to design the project to meet the minimum code requirements. App. at 71-72. Mr. McCauley testified that when Siemens redesigned the shop drawings they only looked at the minimum requirements of the NFPA codes and not at the specifications. App. at 73.

Jerry Grot, President of Grot, Inc., also testified that when the VA directed Grot to redraw and resubmit their shop drawings, Grot directed Siemens to provide a design that met the minimum standards of NFPA 101 and 72. App. at 79.

E. Grot’s Appeals Before The Veterans Affairs Board Of Contracting Appeals

On March 31, 2005, Grot submitted to the contracting officer a "Request for Additional Compensation" on the contract at issue in this case. App. at 82. On June 29, 2005, the contracting officer issued a final decision upon Grot’s March 31 claims. App. at 86-89. On September 13, 2005, Grot appealed the contracting officer’s final decision to the VABCA.

See Grot, Inc. v. Dept. of Veterans' Affairs, VABCA Appeal Nos. 7438-7444. App. at 85. On October 14, 2005, the Government filed a motion to transfer Grot's VABCA appeals to this Court and consolidate them with this case. On October 28, 2005, the parties filed a joint stipulation agreeing to transfer Grot's VABCA appeals to this Court and requesting that the Court consolidate them with this case.

## ARGUMENT

### I. Partial Summary Judgment Is Appropriate

Pursuant to RCFC 56, summary judgment "shall be rendered forthwith " where it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Summary judgment is not "a disfavored procedural short cut, but rather ... an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Solar Turbines, Inc. v. United States, 23 Cl. Ct. 142, 145 (1991) (quoting Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1)). Summary judgment is a procedure "designed to protect the legitimate interest of all parties to a law suit by permitting the efficient

disposition of claims that lack a sufficient basis." Solar Turbines, 23 Cl. Ct. at 145-146.

The Federal Circuit and the Court of Claims have approved the use of "partial" summary judgment. See San Carlos Irrigation District and Drainage v. United States, 111 F.3d 1557 (Fed. Cir. 1997), aff'g 26 Cl. Ct. 229 (1992) (granting motion for summary judgment in part); Confederated Tribes of Colville Reservation, 964 F.2d 1102, 1109 (Fed. Cir. 1992) (addressing cross motions for partial summary judgment). If partial summary judgment were not permitted, then the parties and the Court would waste time and resources in a trial on immaterial theories. See Bayou Land & Maritime Contractors, Inc. v. United States, 23 Cl. Ct. 764, 768 (1991) ("[s]ummary judgment pursuant to [RCFC] 56 properly can intercede and prevent trial if the movant can demonstrate that trial would be useless"); Americans Disabled for Accessible Public Trans. v. Skywest Airlines, Inc., 762 F. Supp. 320, 323 (D. Utah 1991) ("the court concludes that allowing summary adjudications of portions of plaintiffs' claims would expedite the litigation process by ferreting out irrelevant claims."). To expedite the litigation, the Court should address, before trial, a claim based upon that theory of recovery that is flawed as a matter of law.

Here, partial summary adjudication is appropriate because our motion raises an issue of law – "[c]ontract interpretation is a matter of law ...." Neal & Co. v. United States, 945 F.2d 385, 390 (Fed. Cir. 1991) (citing Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985)). Thus, contract interpretation is suited to resolution by summary judgment. P.R. Burke Corp. v. United States, 58 Fed. Cl. 549, 554 (2003) (citations omitted). The Court's determination of the discrete issue of whether the contract required Grot to design, meaning to incorporate the bid drawings, contract specifications and relevant fire safety codes, and install a fire alarm system, will clarify many issues in this case, simplify matters for trial, and generally promote judicial efficiency.

## II. The Contract Required Grot To Design And Install A Comprehensive Fire Alarm System

In its First Amended Complaint, Grot alleges that the VA's termination of Grot's contract for default was arbitrary, capricious, in bad faith and constituted unreasonable conduct; that the VA breached its duties not to hinder, delay or interfere with Grot's performance of the contract and its duty to cooperate in good faith with Grot in the performance of the contract when the contracting officer: 1) failed to consider that Grot had been delayed in the completion of the project as a result of delays solely

attributable to the VA including the VA's refusal to answer questions regarding construction of the project; 2) failed to consider or evaluate the impact of Grot's requests for information to clarify the plans and specifications and the impact that the responses to those requests had upon Grot's ability to timely complete the project; and 3) failed to consider or evaluate the delays associated with extra work performed by Grot as a result of design defects encountered by Grot, including but not limited to, the requirement that Grot redesign the project in its entirety which increased Grot's cost of performance of the contract and delayed completion of the project. Pl's Amend. Compl. at ¶¶11(a), (c), (f) and (g).

Additionally, Grot alleges that it was not in default at the time of the VA's termination because any and all delays Grot experienced were due to, among other things, design defects. Id. at ¶14.

Further, before the VABCA Grot claims that it incurred extra costs due to the VA's interference with Grot's performance upon the project by directing Grot to completely redraw the plans for the project, defective plans and specifications, multiple directives to conform to erroneous interpretations of the plans and specifications by the contracting officer and

his technical representative and defective contract administration together with other actions or inactions by the VA. App. at 82.

What Grot terms "design defects" are a product of its unreasonable interpretation of the contract as only requiring it to install a fire alarm system. The plain language of the contract clearly required Grot to **design** and install a fire alarm system. Additionally, Grot was aware, prior to submitting any shop drawings to the VA, that its interpretation of the contract requirements differed greatly from that of the VA, yet it did not address the matter with the VA. As such, Grot cannot now rely upon its unreasonable interpretation of the contract requirements as an excuse for its delay in performing the contract.

A. The Plain Language Of The Contract Required Grot To Design, (i.e., Incorporate The Bid Drawings, Contract Specifications And Relevant Fire Safety Codes), And Install A Fire Alarm System

Contract interpretation begins with the language of the written agreement. NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing Foley Company, 11 F.3d 1032, 1034 (Fed. Cir. 1993)). It is axiomatic that where, as here, the provisions of a contract are phrased in clear and unambiguous language, "the words of those provisions must be given their plain and ordinary meaning by the court in

defining the rights and obligations of the parties . . . ." Elden v. United States, 223 Cl. Ct. 239, 617 F.2d 254, 260-261 (1980); accord Foley, 11 F.3d at 1034; Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991); American Science and Engineering, Inc. v. United States, 229 Ct. Cl 47, 57, 663 F.2d 82, 88 (1981). When interpreting the contract, the document must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts. NVT Technologies, 370 F.3d at 1159 (citing McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996)); accord Martin Lane Co. v. United States, 432 F.2d 1013, 1019 (Ct. Cl. 1970); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979 (Ct. Cl. 1965). "An interpretation which gives reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous." Hol-Gar Mfg. Corp., 351 F.2d at 979; see also NVT Technologies, 370 F.3d at 1159; Gould, Inc., 935 F.2d at 1274 (Fed. Cir. 1991); Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed. Cir. 1985); Brutoco Engineering & Const. v. United States, 12 Cl. Ct. 104, 109, aff'd, 833 F.2d 1021, 1023 (Fed. Cir. 1987).

Furthermore, a term that may seem ambiguous in isolation is often clarified by the remainder of the statute or contract. See Bailey v. United States, 516 U.S. 137, 146 (1995); United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988).

Here, the contract specification language clearly states throughout that Grot was responsible for designing and installing a fire alarm system that incorporated the bid drawings, the specifications, and the relevant fire safety codes. Nothing in the contract language indicated that Grot could, as it claimed throughout the duration of the contract, rely solely upon the bid drawings as blueprints and simply install a fire alarm system as it appeared upon the bid drawings provided by Fratto Engineering.

The provisions of contract specification section 13850, entitled "Fire Alarm System," clearly state that the contractor is to design and install a fire alarm system, that the bid drawings do not contain every device, nor are the device locations upon the bid drawings exact, and that the contractor must incorporate the contract documents, the specifications and relevant NFPA codes to form a complete fire alarm system.

Section 13850, paragraph 1.2.B expressly states that the contractor is to design and install a fire alarm system, that the bid drawings are for

reference only, unless otherwise indicated by specific dimensions, and that the actual device locations must comply with fire safety codes and the specifications. App. at 11. Paragraph 1.1.A expressly requires the contractor to create a comprehensive fire alarm system. App at 10. Paragraph 1.1.A explicitly states that the new system "shall include, but not be limited to," the items shown upon the drawings and listed in the specifications. Id. The language contained in these provisions can only be interpreted to mean that the contractor is to use the drawings and specifications as a guide in designing a fire alarm system.

Further, paragraph 1.1.B requires a specially qualified individual to design a system that adheres to relevant fire safety codes. App. at 10. The words "design" and "layout" in this paragraph, as well as the requirement of a certified NICET level III technician or registered fire protection engineer, clearly indicate that Grot was to do more than simply install a fire alarm system.

If the VA only needed to have the fire alarm system installed, it would not require a certified NICET level III technician or a registered fire protection engineer. The NICET certification program "was designed for engineering technicians working in the fire alarm industry who engage in a

combination of the following fire alarm systems activities: system layout (plan preparation), system equipment selection, system installation, system acceptance testing, system trouble-shooting, system servicing, and system sales." App. at 93. Fire protection engineering is the "application of science and engineering principles to protect people and their environment from destructive fire and includes: analysis of fire hazards; mitigation of fire damage by proper design, construction , arrangement, and use of buildings, materials, structures, industrial processes, and transportation systems; the design, installation and maintenance of fire detection and suppression and communication systems; and post/fire investigation and analysis." App. at 94. NICET level III technicians and registered fire engineers are not needed to simply install a fire alarm system.

Additionally, the differentiation in this paragraph between the NICET level III technician or engineer, who provides the system design and layout, from the installer, who simply installs the system, indicates that Grot was required to do more than simply install the system.

Several provisions clearly indicate that the bid drawings are not to be treated as blueprints. Contract specification 01001, paragraph 1.1.D, indicates that the contractor is responsible for providing the components

necessary to "produce systems or equipment." App. at 12. The contract specifications related to the submission of shop drawings indicate that the bid drawings were simply to be used as a guide, but that ultimately, the contractor would be responsible for informing the VA of the details of the fire alarm system in its final form. App. at 13. The VA also provided language on the actual bid and shop drawings that indicated that the contractor was to do more than simply treat the bid drawings as blueprints. The language on General Note 5 indicated that the bid drawings were not completed with a particular manufacturer's equipment in mind, and that also the bid drawings were to serve as a design concept or guideline. App. at 15. The COTR's stamp stated the drawings were for "general arrangement only" and required the contractor to "comply with contract document, plans, and specifications." App. at 16. Fratto Engineering's stamp stated that approval was "<u>only for conformance with the design concept of the project and with the information given in the Contract Documents</u>." App. at 17.

Again, this language indicates that the bid drawings are mere design concepts from which the contractor could work. The language also clarifies that the contractor must adhere to the design concept, <u>i.e.</u>, the bid

drawings, as well as the specifications. This only serves to support the fact that the bid drawings were not to be treated as blueprints. This language also informed Grot that it was responsible for providing and verifying the details of the fire alarm system, such as actual dimensions, device location, number of devices, and that it was responsible for verifying that it had indeed met the requirements of the bid drawings <u>and</u> specifications.

Thus, there can be no question that the plain language of the contract and even the language contained on the bid and shop drawing stamps required Grot to design, or incorporate the bid drawings, specifications and fire safety codes, and install a complete fire alarm system.

The United States Court of Appeals for the Federal Circuit has held that the courts "must construe the contract 'to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.'" <u>M.A. Mortenson Co. v. Brownlee</u>, 363 F.3d 1203, 1206 (Fed. Cir. 2004) (quoting <u>Hercules, Inc. v. United States</u>, 292 F.3d 1378, 1381 (Fed. Cir. 2002)). Here, the Government's interpretation of this contract as requiring Grot to <u>design</u> <u>and</u> <u>install</u> a fire alarm system, is the only interpretation that can

effectuate the purpose of the contract. The contract clearly required Grot to design and install the fire alarm system.

B. Assuming For The Sake Of Argument That The Contract Was Ambiguous, The Ambiguity Was Patent, And Grot Failed To Discharge Its Obligation To Inquire Into The Patent Ambiguity

We have demonstrated above that the contract was not ambiguous and that the plain language of the contract required Grot to design and install a complete fire alarm system. Assuming, only for the sake of argument, that this Court were to conclude that the contract provisions were ambiguous, that conclusion would also compel a determination that the contract was so patently ambiguous that Grot was obligated to inquire as to the requirements prior to bidding upon the contract. Accordingly, because Grot did not seek clarification of the requirements prior to submitting its bid, this Court would be required to find for the defendant upon this ground even if the Court found the contract to be ambiguous. See Interstate General Government Contractors v. Stone, 980 F.2d 1433, 1434 (Fed. Cir. 1992).

Generally, the terms of a contract will be construed against the drafter. Id. However, the patent ambiguity doctrine is an exception to this general rule. In the event of a patent ambiguity, the contractor must inquire

and seek clarification of the proper contract interpretation. Community Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993). That duty requires the contractor to inquire of the contracting officer the true meaning of the contract before submitting a bid. Interstate General, 980 F.2d at 1435 (quoting Newsom v. United States 676 F.2d 647, 649 230 Ct. Cl. 301 (1982)). “The existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor’s interpretation.” Interstate General, 980 F.2d at 1434-35 (quoting Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985)). As the courts have explained, this exception to the rule of contra proferentem serves the public interest because it:

> prevents contractors from taking advantage of the Government; it protects other bidders by ensuring that all bidders bid on the same specifications; an dit materially aids the administration of Government contracts by requiring that ambiguities be raised before the contract is bid on, thus avoiding costly litigation after the fact.

Newsom, 676 F.2d at 649.

A patent ambiguity may manifest itself as an "obvious omission, inconsistency or discrepancy of significance." Interstate General, 980 F.2d at 1435 (quoting Beacon Constr. Co. of Mass. v. United States, 314 F.2d

501, 504 (Ct. Cl. 1963)). Where such omissions or inconsistencies "were all disclosed on the face of the papers," they are patent, rather than latent. J.B. Steel, Inc. v. United States, 810 F.2d 1139, 1141 (Fed. Cir. 1987). The Court must look to what "a reasonable man would find patent and glaring" under the circumstances. Avedon Corp. v. United States, 15 Cl. Ct. 771, 777 (1988).

In the present case, there is no ambiguity. Grot cannot point to any part of the contract that states, or even suggests, that it could rely solely upon the bid drawings to simply install a fire alarm system. For the sake of argument, however, to whatever extent Grot could argue there is an ambiguity in this contract as to whether they were required to design and install or just install the fire alarm system, that ambiguity was clearly disclosed on the "face of the papers." Because Grot did not seek clarification from the contracting officer prior to bidding upon the contract, Grot has lost the opportunity to assert the reasonableness of its position now.

### C. Even If The Court Finds That The Contract Was Latently Ambiguous, Grot's Interpretation Of The Contract Provisions Is Unreasonable

When a contract term is susceptible to more than one reasonable interpretation, it is ambiguous. Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000). The general rule of contract interpretation is contra proferentem, which requires ambiguities in a document to be resolved against the drafter. HPI/GSA-3C, 364 F.3d 1327,1334 (Fed. Cir. 2004) (citing Hills Materials Co. v. Rice, 982 F.2d 514, 516 (Fed. Cir. 1992)). The patent ambiguity doctrine, discussed above, is the exception to this rule. Id. Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of contra proferentem applies. Id. Before a court may enforce the general rule of contra proferentem against the drafter of an ambiguity, however, the contractor's interpretation of that ambiguity must be reasonable. Id. (citing Hills Materials, 982 F.2d at 516) (emphasis added). Here, Grot's interpretation of the contract provisions as requiring it to merely install the fire alarm system, relying solely upon the bid drawings, is unreasonable.

First, the contract clearly uses the word "design" in two separate provisions. Section 13850, ¶¶ 1.1.B and 1.2.B, App. at 11, 14. Grot, or

any other party reading these provisions of the contract would have no reason to believe that the language meant anything other than what it plainly stated.

Second, as established above, the contract clearly stated that the contractor was to comply with the bid drawings, the specifications and the relevant NFPA codes. Nothing in the contract language even begins to suggest that Grot could rely solely upon the bid drawings.

In fact, the contract language expressly stated that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between the drawings and specifications, the specifications shall govern." FAR 52.236-21. "Given these circumstances, contract interpretation must begin with the specification." M.A. Mortenson, 363 F.3d at 1206 (finding that drawings did not dictate the requirements of the contract, where the contract contained the language of FAR 52.236-21). Here, the specification required Grot to incorporate the bid drawings, relevant NFPA codes and specification requirements to create a complete fire alarm system. Thus,

Grot's initial interpretation of the contract as only requiring it to copy the bid drawings makes no sense at all.

Grot's sincerity is questionable considering that after the VA directed Grot to redraw and resubmit all of its shop drawings to reflect the devices upon the bid drawings, as well as those required by the specifications and the NFPA codes, Grot instructed its subcontractor to "value engineer" the project by designing to meet only the minimum standards of the relevant NFPA codes. Grot did so, notwithstanding the fact that such a design was not in accordance with the contracting officer's directive, nor was it in accordance with the express contract provision contained in section 16050, paragraph 1.2.A, which states that references to NFPA codes are "minimum installation requirement standards," and paragraph 1.2.B, which provides that "Drawings and other specification sections shall govern in those instances where requirements are greater than those specified in the [NFPA] standards." App. at 14.

Ultimately, Grot's interpretation of the contract as requiring it to simply install a fire alarm system as shown upon the bid drawings is unreasonable. The contract contained the word "design" in two separate provisions. The contract incorporated FAR provision FAR 52.236-21,

which explicitly states that the specifications govern the contract. The contract language expressly required the contractor to incorporate the bid drawings, the specification requirements and NFPA codes. Finally, Grot's lackluster attempts to comply with the Government's directive once the VA had "clarified" the contract requirements for Grot cause further doubt that its interpretation was sincere or reasonable. Throughout the contract, Grot ignored the language of the contract and the directives from the contracting officer stating that Grot had to both design, meaning incorporate the bid drawings, specifications and fire codes, and install a fire alarm system. Consequently, the general rule of contra proferentem does not apply.

## CONCLUSION

For the reasons stated above, defendant respectfully requests the Court to grant defendant's motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Lindsay Williams
LINDSAY WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 353-7995
Fax: (202) 514-8624

November 2, 2005

Attorneys for Defendant