*The Clause below can be found on page 2-4 of Grot's Contract.*

**52.236-27 Site Visit (Construction).**
As prescribed in 36.523, insert a provision substantially the same as the following:
Site Visit (Construction) (Feb 1995)
(a) The clauses at 52.236-2, Differing Site Conditions, and 52.236-3, Site Investigations and Conditions Affecting the Work, will be included in any contract awarded as a result of this solicitation. ***Accordingly, offerors or quoters are urged and expected to inspect the site where the work will be performed.***
(b) Site visits may be arranged during normal duty hours by contacting:
Name: ______________________
Address: ______________________
______________________
Telephone: ______________________
(End of provision)

*The Clause below can be found on page 3-54 of Grot's Contract.*

**52.236-21 Specifications and Drawings for Construction.**
As prescribed in 36.521, insert the following clause:
Specifications and Drawings for Construction (Feb 1997)
(a) The Contractor shall keep on the work site a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. ***Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern.*** In case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without such a determination shall be at its own risk and expense. The Contracting Officer shall furnish from time to time such detailed drawings and other information as considered necessary, unless otherwise provided.
(b) Wherever in the specifications or upon the drawings the words "directed", "required", "ordered", "designated", "prescribed", or words of like import are used, it shall be understood that the "direction", "requirement", "order", "designation", or "prescription", of the Contracting Officer is intended and similarly the words "approved", "acceptable", "satisfactory", or words of like import shall mean "approved by," or "acceptable to", or "satisfactory to" the Contracting Officer, unless otherwise expressly stated.
(c) Where "as shown," as indicated", "as detailed", or words of similar import are used, it shall be understood that the reference is made to the drawings accompanying this contract unless stated otherwise. The word "provided" as used herein shall be understood to mean "provide complete in place," that is "furnished and installed".
(d) Shop drawings means drawings, submitted to the Government by the Contractor, subcontractor, or any lower tier subcontractor pursuant to a construction contract, showing in detail (1) the proposed fabrication and assembly of structural elements, and (2) the installation (*i.e.*, fit, and attachment details) of materials or equipment. It includes drawings, diagrams, layouts, schematics, descriptive literature, illustrations, schedules, performance and test data, and similar materials furnished by the contractor to explain in detail specific portions of the work required by the contract. The Government may duplicate, use, and disclose in any manner and for any purpose shop drawings delivered under this contract.

G- 001847

(e) If this contract requires shop drawings, the Contractor shall coordinate all such drawings, and review them for accuracy, completeness, and compliance with contract requirements and shall indicate its approval thereon as evidence of such coordination and review. Shop drawings submitted to the Contracting Officer without evidence of the Contractor's approval may be returned for resubmission. The Contracting Officer will indicate an approval or disapproval of the shop drawings and if not approved as submitted shall indicate the Government's reasons therefor. Any work done before such approval shall be at the Contractor's risk. Approval by the Contracting Officer shall not relieve the Contractor from responsibility for any errors or omissions in such drawings, nor from responsibility for complying with the requirements of this contract, except with respect to variations described and approved in accordance with (f) below.
(f) If shop drawings show variations from the contract requirements, the Contractor shall describe such variations in writing, separate from the drawings, at the time of submission. If the Contracting Officer approves any such variation, the Contracting Officer shall issue an appropriate contract modification, except that, if the variation is minor or does not involve a change in price or in time of performance, a modification need not be issued.
(g) The Contractor shall submit to the Contracting Officer for approval four copies (unless otherwise indicated) of all shop drawings as called for under the various headings of these specifications. Three sets (unless otherwise indicated) of all shop drawings, will be retained by the Contracting Officer and one set will be returned to the Contractor.

(End of clause)

*Alternate I (Apr 1984)*. When record shop drawings are required and reproducible shop drawings are needed, add the following sentences to paragraph (g) of the basic clause:
Upon completing the work under this contract, the Contractor shall furnish a complete set of all shop drawings as finally approved. These drawings shall show all changes and revisions made up to the time the equipment is completed and accepted.
*Alternate II (Apr 1984)*. When record shop drawings are required and reproducible shop drawings are not needed, the following sentences shall be added to paragraph (g) of the basic clause:

***The above clauses, which are incorporated in Grot's Inc. Contract, clearly state "offerors or quoters are urged and expected to inspect the site where the work will be performed" and "In case of difference between drawings and specifications, the specifications shall govern".***

G- 001848

Aug. 23, 2002
1 of 2

DEPARTMENT OF VETERANS AFFAIRS
NORTH TEXAS VETERANS MEDICAL HEALTH CARE SYSTEM
DALLAS VETERANS MEDICAL CENTER
4500 S. LANCASTER ROAD
DALLAS, TX 75216

Aug. 23, 2002

Mr. Jerry Grot
Grot, Inc.
324 Henry Street
Lexington, KY 40508

Aug. 23, 2002

Date: August 23, 2002

Subj: Replace Fire Alarm System
Contract V549P-609-2, Project #B01-114
Grot Inc , Contractor

Dear Jerry Grot:

In our July 22nd, meeting we discussed, without resolution, the question as to whether the work for the Bonham Fire was to be installed in accordance withthe contract specifications and the NFPA Codes or installed using only the prints as a generic guideline. While the contract states in FAR Clause 52.236-21--Specifications and Drawings for Construction found on page 3-54 that "**Anything mentioned in the specifications and not shown on the drawings, or shown on the drawing and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern.**" it was decided that Ricky Kirk, the Contracting Officer's Technical Representative (COTR) would again, review the plans and specifications before making a finding. Mr. Kirk's findings are listed below.

"1 On project drawing #EF00 01 General Note 5 states

*These drawings are **GENERIC** with respect to any particular manufacturers equipment. Quantities of FATC and spacing dependent devices may vary with the system equipment manufacturer.*

2. In the project specifications in Section 01001 General Conditions, paragraph 1.1, sub-paragraph (d) states:

*In some instances it may have been impracticable to detail all items in specifications or on drawings because of variances in manufacturer's methods of achieving specified results. In such instances the contractor will be required to furnish all labor, materials, drawings, services and connections necessary to produce systems or equipment which are completely installed, functional, and ready for operation by facility personnel in accordance with their use.*

3. Also in the specifications in Section 13850, Fire Alarm System, paragraph 1.1, Description, sub-paragraph A, states:

*This section of the specifications includes: the furnishing, installation, and connection of fire alarm equipment to form **A COMPLETE** multi-building analog addressable-device fire alarm and emergency notification system; testing and placing the new system into operation; training of the owner's personnel; and removal of the old system. The new system shall include, **but not be limited to,** alarm initiating devices,*

7

Aug. 23, 2002

2012

[illegible] drawings and as specified. All devices and accessories necessary for a complete operating system shall be included even though each item is not specifically mentioned or described herein.

Sub-paragraph B states in part:

*The fire alarm system **shall comply** with requirements of NFPA 101 and NFPA 72. The **system design**, system layout, submittal documents preparation, and supervision of installation and testing shall be provided by a technician that is certified NICET level III or a registered fire protection engineer.*

3. Also in Section 13850, paragraph 1.2, Scope, sub-paragraph B, states:

*A new fire alarm system **shall be designed and installed** in accordance with the specifications and drawings. Device location and wiring runs shown on drawings are **for reference only** unless specifically dimensioned. Actual locations shall be in accordance with NFPA 72 and this specification."*

**"After careful review I, Ricky Kirk, the COTR, have concluded that this is a design and installation project and that Grot Inc. must design and install a complete fire alarm system in accordance with contract plans and specifications as well as the NFPA Codes.**

**Furthermore, I request that the contractor, Grot, Inc., resubmit all previous drawings. The resubmitted drawings shall include everything contained on the original drawings as well as any additional devices required by NFPA Codes that did not appear on the original submittals. In addition, the contractor shall provide all information and drawings requested in the specifications, paying particular attention to the requirements of spec. section 13850, paragraph 1.4, submittals."**

Jerry, please instruct your representatives to comply with the COTR's findings. Since "reasonable people can reason together" and we all are reasonable people, I'm convinced that the finished project shall meet everyone's expectations.

In you have any questions call me at 214-857-0021

Sincerely,

John Mraz

John Mraz
Contracting Officer

Grot Incorporated Est. 1986

Electrical & Technology Contractors

688 Grot Drive
Lexington, Kentucky
40505-3835

Telephone: (859) 254-3848
Facsimile: (859) 254-3847
Toll Free: (888) 254-3847
Website: www.grotinc.com

To: VA North Texas Health Care System
Dept. of Veterans Affairs
4500 S. Lancaster Road,
Dallas, Texas 75216

Date: 9/5/2002

Doc No. 7
Project: Bonham Tx.-VA
2002.006
Sam Rayburn Memorial East Ninth
Bonham, Tx 75418

Attn: John Mraz

Re: Contract No. V549P-609-2
Project No. Bo1-114]
Replace Fire Alarm System

Subject: Response to August 23, 2002 e-mail.

Dear John Mraz:

This is to respond to you e-mail letter of August 23, 2002 wherein you outline the findings of Ricky Kirk, the Contracting Officer's Technical Representative. Grot, Inc. disputes the findings of the COTR and respectfully request a Contracting Officer's Final Decision.

The COTR's reliance upon general contract specification is misplaced. With respect to project drawing #EF00.01, General Note 5, the fact that the drawings are "generic" is only to assure that there is no misinterpretation that the drawings may dictate a sole source procurement. Nowhere in that general note does it state that the contractor is responsible for the "design" of a complete fire alarm system.

Further, reliance upon specification Section 01001, General Conditions, paragraph 1.1 subparagraph (d) is likewise misplaced. The fact that it may have been "impractical" to detail all items in the specifications does not make this a design specification. It is the purpose of shop drawings to detail installation procedure for the devices as shown on the drawings. Again, nowhere in this section does it state that the contractor is responsible for design.

Next, the COTR relies upon Section 13850, Fire Alarm System, paragraph 1.1, subparagraph A. None of these sections provides that the contractor is responsible for the design
of the system. It merely states that when the fire alarm system is installed, it will be a "complete" system. Use of the phrase "but not be limited to" does not in any way imply that Grot is responsible for design. This is nothing more than a "generic" listing of systems which will be included in the fire alarm program. The fact that each item is not "specifically mentioned or described herein" means only that the contractor will provide all of the incidental equipment necessary to make the items listed in the specifications and drawings function.

In relying upon Section 13850, paragraph 1.1, subparagraph B, the COTR misconstrues the meaning of the language. It is not the responsibility of the NICET Level III technician to design the entire system. If that is the case, then why are there any specifications for the fire

Grot Incorporated

alarm system or, for that matter any reference to any fire alarm information on the drawings. The architect for this project saw fit to delineate 1732 fire alarm devices on the drawings. Nowhere on the drawings or in the specifications does it state that any reference to fire protection devices shown on the drawings are for demonstrative purposes only and that the contractor should satisfy himself as to the number of fire alarm devices to be installed. At best, the only argument that can be made is that the drawing is ambiguous.

However, even the ambiguity argument fails in the light of Section 13850, paragraph 3.2(a). This paragraph details installation of the new system and provides that the system shall be in accordance with NFPA 70, 72, 90A, and 101 **as shown on the drawings**, and as recommended by the major equipment manufacturer. Further, the remaining paragraphs to paragraph 3.2 dictate the method of installation. Again, if it was the intent of the architect for the fire alarm system contractor to design the project, why did the architect go to such detail in the specifications. The fact of the matter is that was never the intent of these specifications; **otherwise the specifications would have specifically defined that the contractor was to design the system.**

As a result of the findings of the COTR, he has requested that Grot resubmit drawings that shall include all original devices shown and any additional devices required by NFPA. I request the determining factor as to how the COTR is knowledgeable to the additional devices that may be required for the project, and at what date and time the COTR became aware of additional devices needed for the project and whom instructed the COTR to the alleged need. If in fact it shall be necessary for Grot to provide an additional number of devices, the cost of these devices shall be provided upon determining the number of each device type and location. In the alternative, should the contracting officer refuse to reconsider the findings of the COTR, then Grot hereby requests a contracting officers final decision in accordance with the Contract Disputes Act of 1978.

If the contracting officer desires, Grot, along with counsel if necessary, is prepared to meet with the contracting officer, the COTR and any other necessary representatives of the government in an attempt to resolve this issue. However, time is of the essence. Delay in the issuance of the contracting officers final decision could cause delay in completion of the project. If so, then Grot will submit an additional claim for the impact of such delay.

Sincerely
Grot Incorporated

Jerry A. Grot

Jerry Grot
President

cc: Andrew J. Kilpatrick, Counsel for Grot Inc.

DEPARTMENT OF VETERANS AFFAIRS
JOHN MRAZ (90C)
DALLAS VETERANS MEDICAL CENTER
4500 S. LANCASTER ROAD
BUILDING 8,
DALLAS, TX 75216

Grot, Incorporated
688 Grot Drive
Lexington, KY 40505-3835

Attn: Jerry Grot

Dated: September 17, 2002

Re: Contract No. V549P-609-02
Project No. BO1-114
Replace Fire Alarm

Subject: Response to your letter dated 9/5/02/Cure Notice

Dear Jerry Grot:

This letter is in response to your letter dated September 5, 2002 wherein you requested a contracting officers final decision in accordance with the Contract Disputes Act of 1978 with respect to my declaration in a letter dated August 23, 2002 that by right the VA is entitled to the design/install fire alarm system it contracted for and Grot, Incorporated is obligated under that contract to design and install said system.

There are three requirements for a valid CDA claim. "The requirements are: (1) A written demand (2.) Seeking as a matter of right, and (3.) The payment of money in a certain sum." See, e.g., Reflectone, Inc. v. Dalton, 60F.3d 1572, 1575 (Fed. Cir. 1995). Thus, since your request for a final decision under CDA does not include the "payment of money in a certain sum" it cannot be considered a formal claim. In Bridgewater Construction Corporation, VABCA Nos. 2866 et al, 90-2 BCA p 22,764 the board held that, "A contracting officer cannot 'jump the gun' and issue a final decision before the contractor has actually submitted…a written claim"; and in Norfolk Shipping and Drydock Corporation DOT BCA 1936, 88-2 BCA p 20,674 the board stated that "One purpose of the CDA is to induce resolution of disputes by negotiation rather than litigation and the premature issuance of a final decision, in the absence of a valid claim, thwarts that purpose".

The declaration I made in my letter dated August 23, 2002 was based on the Contract Scope, 1.2,B page 13850-3 of the Contract Specifications which states, "A new fire alarm system shall be designed and installed in accordance with the specifications and drawings": and General Description, b. of the Contract Specifications on page 13850-2 which states "The system design, system layout, submittal documents preparation, and supervision of installation and testing shall be provided by a technician that is certified NICET Level III or a registered fire protection engineer" still stands.

In my letter I requested that Grot meet their contractual obligations when I declared that Grot design and install the fire alarm system in compliance with the contract specifications. I did not request a cardinal or constructive change to Contract V5495-609-2 and in no way will furnishing the design/install fire alarm system called for in the contract specifications alter the contracts intent. Furthermore, since your letter is not a valid claim under CDA there can be no "final decision" by the Contracting Officer let alone contractor appeal rights to a "final decision" that was never made.

Therefore, since further discussions lack merit Grot is hereby directed to furnish the VA with the design/install fire alarm system in accordance with the contract specifications.

You have ten (10) days from the receipt date of this letter to cure the deficiency and provide the VA with a design/install fire alarm system or risk contract termination by default.

Sincerely,

John Mraz
Contracting Officer

2

09/17/2002 09:10 859 .3847 GROT INC PAGE 01/01

Sept 18 2002

Sept 18, 2002

Grot Incorporated Est. 1986

Electrical & Technology Contractors

324 Henry Street
Lexington, Kentucky
40508-1215

Telephone: (859) 254-3848
Facsimile: (859) 254-3847
Toll Free: (888) 254-3847
Website: www.grotinc.com

To: VA North Texas Health Care System
Dept. of Veterans Affairs
4500 S. Lancaster Road, Bldg. 8
Dallas, Texas 75216

Date: 9/18/2002

Doc No. 8
Project: Bonham Tx.-VA
2002.006
Sam Rayburn Memorial East Ninth
Bonham, Tx 75418

Attn: John Mraz
Subject: Response to Letter Dated September 17, 2002.

Dear John Mraz:

I am in receipt of your letter dated September 17, 2002 and shall direct my firm to begin the process of designing a cure to the deficiencies contained in the plans and specifications designed by the government's Consultant. As I am certain you are aware, the government warrants the adequacy of the plans and specifications provided for construction. Ambiguities in those plans and specifications are construed against the owner. Even accepting the conclusions and decision of the COTR as correct, which we specifically deny, the plans and specifications are, at best, ambiguous. Grot will ultimately be provided a change order to compensate it for the additional cost. When we have completed our evaluation of your directive, we will submit a formal claim for the additional cost Grot will incur.

This is your formal notice from Grot Inc. that we stand by our position in my letter dated August 23, 2002 that the work asked for is outside the scope of Grot's contract and as such is, among other things, a different site condition and thus any and all cost, expense, delays and other damages incurred by Grot Inc. shall be accrued and a claim shall be made against the owner.

We have turned this matter over to counsel. We stand willing to meet and discuss your decision in an attempt to resolve this short of the claim process but time is of the essence. I request a meeting with you and your counsel and the engineering firm on Monday September 23 2002 before 11:30 a.m., please respond by 4:00 p.m. today so arrangements can be made.

I thank you in advance for your consideration on this matter.

Sincerely,
Grot, Incorporated

Jerry A. Grot

Jerry Grot
President

GROT
EXHIBIT NO. 108
2 FEB 05

cc: Andrew J. Kilpatrick, Goza, Kilpatrick Counsel

G- 003473

HUBZone ABC IEC GSA Schedule

DEPARTMENT OF VETERANS AFFAIRS
JOHN MRAZ (90C)
DALLAS VETERANS MEDICAL CENTER
4500 S. LANCASTER ROAD
BUILDING 8,
DALLAS, TX 75216

Grot, Incorporated
688 Grot Drive
Lexington, KY 40505-3835

Attn: Jerry Grot

Dated: September 18, 2002

Re: Contract No. V549P-609-02
Project No. BO1-114
Replace Fire Alarm

Subject: Response to your letter dated 9/18/02

Dear Jerry Grot:

In response to your letter dated September 18, 2002 I did not direct your firm to "begin the process of designating a cure to the deficiencies contained in the plans and specifications designed by the government's consultant." However, I did direct your firm to complete the contract in accordance with the contract specifications. The government did not, does not and will not lend credence to your assertion that a dispute existed, exists or may exist as to whether Grot is to provide the VA with an install only or design/install fire alarm system.

Moreover, if the there is a conflict between the prints and specifications as you allege, 52.236.21 Specifications and Drawings for Construction on Contract page 3-54 states, "Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern." While the government denied/denies your assertion of contract specification ambiguities, even if your assertion had merit, the non-drafting party has an obligation, "before bidding to seek clarification of an ambiguity of which it was or should have been aware. By failing to inquire the contractor forfeits the opportunity to rely on its unilateral, uniformed interpretation and bears the risk of interpretation. MWK Int'l, Ltd v. U.S., 2 Cl. Ct. 206 (1983)." The contract specifications are not silent, let

PLAINTIFF'S EXHIBIT 35 tabbles

G- 002836

alone vague, about the contractor's obligations: they clearly state that the contractor shall provide a design/install fire alarm system.

Since there is no room for accommodation, I respectfully decline your invitation to meet with your counsel. You have two options: you can provide the design/install fire alarm system as directed and file a claim under the Contract Disputes Acts upon contract completion, or risk contract termination by default.

In addition, I have also, this date, sent you an official "cure notice". Compliance with the cure notice does not jeopardize your right, upon contract completion, to file a claim under the Contract Disputes Act.

Sincerely,

John Mraz
Contracting Officer

Grot

Electrical & Technology Contractors

324 Henry Street
Lexington, Kentucky
40508-1215

Telephone: (859) 254-3848
Facsimile: (859) 254-3847
Toll Free: (888) 254-3847
Website: www.grotinc.com

To: VA North Texas Health Care System
Dept. of Veterans Affairs
4500 S. Lancaster Road, Bldg. 8
Dallas, Texas 75216

Date: 9/25/2002

Doc No. 11
Project: Bonham Tx.-VA
2002.006
Sam Rayburn Memorial East Ninth
Bonham, Tx 75418

Attn: John Mraz
Subject: Progress on "cure" notice.

Dear John Mraz:

We are proceeding to prepare documents for submission to the VA in compliance with your directive of September 18, 2002. However, as we stated in our letter of September 18, 2002, we must know the specific deficiencies, which the VA contends, is the subject of the "cure" letter.

In that regard, we specifically request that the VA indicate on the drawings the location of each deficiency and the location of each device the VA contends is missing from our drawings. We request this information for two reasons. Obviously, the VA knows where it believes the drawings are deficient or you could not issue the "cure" notice. Advising us of this information will expedite our work and mitigate any damage we will incur and ultimately submit to the VA for a change order.

Second, it is important that we know what the VA is looking for with respect to the individual rooms. Otherwise, we are operating in the dark, as we believe that our original submission meets the intent of the specifications. We must know what the specific rooms are being utilized in order to comply with your directive. Please provide a detailed breakdown as to what each room is being utilized for so we can proceed.

Although we are proceeding pursuant to your directive, we are doing so with a full reservation of our right to pursue all cost and expense incurred by Grot and our subcontractors in complying with your directives. Additionally, we remind you that this type of engineering cannot be done overnight. We anticipate that it will take between six to eight weeks to **complete** this process. This is, of course, dependant upon how quickly we can obtain information from the VA responsive to our questions. We will present drawings to the VA as they are developed and have delivered some drawings to the VA on September 24, 2002.

We believe the VA's decision on this matter to be in error. There is no indication in the plans and specifications that we are to "design" the project. The "design" language relied upon by the VA to attempt to justify its position is generic and not a specific directive to design the project. Our consultant and we took the engineer's design and applied the products that were available to our consultant to meet the intent of the design. The engineer **reviewed** Grot/Siemens drawings, **approved the drawings with modifications** and we began construction. It was not until a July 2 2002 meeting before anyone "questioned" whether the drawings met the VA interpretation of the specifications. When did the VA reach the conclusion that our drawings were deficient? Who brought this to your attention?



HUBZone Historically Underutilized Business Zone

ABC

IEC Independent Electrical Contractors, Inc.

GSA Schedule Contract GS-35F-0358L

Grot

You have directed us to design the project per the specification and plans to thus comply with NFPA 101 & 72. Are you and the persons giving you advise aware, that pursuant to NFPA 101 & 72 we can and shall remove devices that are shown on the VA drawings? We are assume that VA will not be opposed to our company removing devices that are shown on the VA **GENERIC** bid drawings if not required by **NFPA 101 & 72.**

This is to notify you that your directive will cause Grot to incur substantial additional cost and expense and an increases in manpower to comply. While we are confident that we will ultimately prevail, we are still being required to finance this unwarranted change. We again request a meeting with you, the engineer for the project, the COTR and anyone else who can respond to our questions to try and resolve these issues in a fair an equitable manner without the necessity of costly litigation for both parties.

Please understand that Grot Inc. and its subcontractors and suppliers are committed to completing this project in accordance with your directives. We can argue about the cost and who is responsible later. **But we must know the specific deficiencies in order to correct them and complete the project in a timely manner**.

Sincerely,
Grot, Incorporated

Jerry R. Grot

Jerry Grot
President

cc: Andy J. Kilpatrick Attorney

DEPARTMENT OF VETERANS AFFAIRS
NORTH TEXAS VETERANS HEALTH CARE SYSTEM
DALLAS VETERANS MEDICAL CENTER
4500 S. LANCASTER ROAD
DALLAS, TX 75216

Mr. Jerry Grot
Grot Incorporated
324 Henry Street
Lexington, KY 40508

November 4, 2002

RE: Contract Completion Date Extension

Dear Mr. Jerry Grot:

Your contract, V549C-599-1, to design and install a fire alarm system at the Sam Rayburn Memorial Veterans Center, Bonham, TX completion date is November 10, 2002. Since you will not be able to meet the November 10, 2002 completion date the VA will issue a modification extending the completion date. However, before I can issue the modification extending the contract I'll need from you a revised work schedule with a new anticipated contract completion date.

In granting a new completion date the VA does not relinquish its right to seek compensatory damages for any costs it incurs resulting from your inexcusable delay in meeting the original contract completion date, nor does it waiver its right to terminate for default should your fail to meet the new completion date.

You have seven days to reply. The current contract remains open and will be extended upon receipt of your reply.

Sincerely,

John Mraz
Contracting Officer

RECEIVED
NOV 12 2002

Mar 18, 2003

Mar. 18, 2003

DATE: March [illegible]

SUBJ: Replace Fire Alarm System
Contract #V540C-590-1
Project #B01-114
Grot Incorporated, Contractor

TO: John Mraz
Contracting Officer

**FROM:** Rickey L. Kirk
Contracting Officer's Technical Representative

John,

Grot has finally sent us a revised schedule. It indicates a completion date of June 23, 2003.
Mr. Evens, contractor's foreman, brought the schedule to me. No cover letter of any kind accompanied it.
Please issue an inexcusable time extension to subject contractor to extend contract to June 23rd.

Thank You,

Rickey L. Kirk

Rickey L. Kirk
C.O.T.R.

EXHIBIT 9

**Mraz, John P.**

**From:** Kirk, Rickey L.
**Sent:** Tuesday, June 10, 2003 2:21 PM
**T-** Mraz, John P.
Ballard, Charles
**,ect:** Fire Alarm Project

June 10, 2003
1 of 3

Here is my response to your request of whether or not to terminate and other items.

Fire Alarm Response61003.doc

11

June 10, 2003

2013

**DATE:** June 10, 2003

**SUBJ:** Replace Fire Alarm System
Contract #V549C-599-1
Project #B01-114
Grot Incorporated, Contractor

**TO:** John Mraz
Contracting Officer

**FROM:** Rickey L. Kirk
Contracting Officer's Technical Representative

John,

Item One:
In response to your question of whether or not we should terminate Grot's contract.
We are operating with not only the old system in part of the buildings but with the new system in the rest of the buildings. The new system has some bugs that need to be worked out and no other contractor would be familiar with what has been done. A new contractor would need time to familiarize themselves with what has been done and what is lacking. I feel it would take longer and add more expense to this contract to terminate.
Therefore I feel it would not be in the best interest of the VA to terminate this contract at this time.

Item Two:
The contractor's on site crew is an industrious crew and are doing their best to get the work done. Our main concern is with the home office personnel. Grot's refusal to redesign and their not fully reading the specifications caused the original delay. For example not being aware they were responsible for transportation and lodging for the training classes.
Now we are continuing to argue whether or not they need to put more smoke detectors in Building 29. Laying aside the NFPA code requirements at this time. I believe our letter to Grot, dated August 23, 2002, is quite clear and no interpretation is needed. It clearly states ***that the contractor must submit redesign drawings which would include all items originally shown on plans plus any new items required by code or manufacturer's requirements.*** The original drawings show at least four smoke detectors in each corridor of the nursing home. On the resubmitted drawings all smoke detectors were removed from the corridors.
Based solely on this letter of August 23, 2002, I request that you, as Contracting Officer, direct Grot Incorporated to produce, without further delay, the redesign drawings for Building 29. Drawings are to include the original smoke detectors and any others required by spacing requirements of the manufacturer.

3 of 3 June 10, 2003

Item Three:
Grot, Inc. and their lawyer continue to try to pressure us into sending them more money. Please inform them that I produce progress payments once a month unless there work progress outruns this payment schedule. We cannot pay contractor for more work than they have done. It is may opinion that they have progressed to the point that I can pay them 60% of the project and no more, by the end of the month I will be able to pay more. I base this opinion on the following:

Wiring installation in buildings 1, 2 and 29 needs to be accomplished.
Device installation in these same buildings needs to be accomplished. These three buildings alone comprise nearly 45% of the wiring and device installation.
Redesign drawings of Bldg. 29 still needs to be made and approved.
Make tie-in to pager system.
PIV switch installation needs to be accomplished.
Tie-in to the Dallas Plant needs to be accomplished.
Patching and repairing walls needs to be accomplished.
Testing of system needs to be accomplished.
Training

Please inform the contractor of Items Two and Three.

If you require anything else please let me know.

Thank You,

Rickey L. Kirk

Rickey L. Kirk
C.O.T.R.

EXHIBIT
"4"
tabbles'

July 23, 2002

Mr. Jerry Grot
Grot Incorporated
688 Grot Drive
Lexington, KY 40508

SUBJ: Contract #V549C-609-2 Design/Install Fire Alarm-Bonham, TX

**SHOW CAUSE NOTICE**

Dear Mr. Grot:

Since you have failed to make progress and make repairs to the Fire Alarm System in Buildings 1, 2, 3, 24 and 29 at the Sam Rayburn Veterans Memorial Hospital, Bonham, TX as directed in our letter of July 17, 2003 and the above contract, the Government is considering terminating the contract under the provisions for default of this contract. On July 17, 2003 it was discovered by our Engineering Service that your company had disarmed the fire alarm system in Building 1 without notifying the VA as required by the above contract. On July 17, 2003, you were directed to correct the problem immediately and Mr. Jon Evans, Grot Project Manager, was contacted and a Fire Watch was initiated. On July 20, 2003 an inspection of all the above buildings was done by the VA Safety Manager and Engineering. It was determined that the work under this contract is approximately 59% complete and does not meet Contract Specification 13850, Paragraph 1.1, sub-paragraph B which states, "The fire alarm system shall comply with requirements of NFPA 101." The contract was awarded on 2-1-02 with a completion date of 11-10-02. On 11-2-02 a time extension to 6-23-03 was granted. To date these problem have still not been corrected and accordingly, you are given the opportunity to present in writing, any facts bearing on the question to:

John Mraz, (90c)
VANTHCS
4500 S. Lancaster Road
Dallas, TX 75216

16

within10 days after receipt of this notice to include a schedule to complete the above contract. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the Contractor and the Government and the liabilities that may be invoked if a decision is made to terminate for default.

Any assistance given to you on this contract or any acceptance by the Government of delinquent goods or services will be solely for the purpose of mitigating damages, and it is not the intention of the Government to condone any delinquency or to waive any rights the Government has under the contract.

John Mraz
Contracting Officer

Cc: Travelers Casualty & Surety Company of America

jerry@grotinc.com wrote:

Grot Inc.
324 Henry St
Lexington, KY 40508
859.254.3848
859.254.3847

July 31, 2003

Electronic Mail to John.Mraz@med.va.gov
& Regular Mail

John Mraz
Contracting Officer
Department of Veterans Affairs
Dallas Veterans Medical Center
4500 S. Lancaster Road
Dallas, TX. 75216

Re: Grot, Inc.
Contract No. V549P-609-2
Project No. B01-114
Replace Fire Alarm System

Subject: Show Cause Notice of July 23, 2003

Dear Mr. Mraz:

This will acknowledge receipt of your Show Cause Notice dated July 23, 2003. Please be advised that Grot takes specific exception to the issuance of this letter and presents the following "reasons" and not "excuses" that the project was not completed by the revised completion date.

First, with respect to the disarming of the fire alarm system in Building 1, it is incorrect to state that Grot did not comply with the contract documents. Jon Evan e-mailed Ricky Kirk advising of Grot's intent to disarm the system. Apparently, Mr. Kirk was out of the office and did not receive the e-mail prior to Grot performing this work. While Grot has acknowledged that the temporary pull stations were not present, Grot immediately responded to the issue, corrected the issue and at no time was anyone at danger of not having adequate fire protection. **At all times**, Building 1 was provided with fire protection in accordance with this contract.

Notwithstanding, Grot instituted a fire watch as required by your letter of July 17th, which Grot believes to have been unnecessary under NFPA 7.6.1.8 and 7.6.1.9.

G- 002909

PLAINTIFF'S EXHIBIT
3
10/12/05

Your letter states that the work performed does not meet the requirements of "NFPA 101". However, your letter offers no explanation as to where this project is deficient as to NFPA 101. It is well settled that a cure notice must specify the progress failures in sufficient detail to enable a contractor to effectively utilize its opportunity to cure. It must be specific enough to enable the contractor to remedy the deficiencies. *Composite Laminates, Inc. v. U.S.*, 27 Fed.Cl. 310 (1992). For example, a cure letter that advised a contractor to submit "acceptable shop drawings" was held not to have described with any degree of specificity that which must be done to make the drawings acceptable. It was declared insufficient notice. *Insul-Glass, Inc.*, GSBCA 8223, 89-1BCA ¶21361. A cure notice which fails to set forth existing problems or current deficiencies that the contractor can correct is similarly deficient. *Brandywine Prosthetic-Orthotic Sbc., Ltd.*, VABCA 3441, 93-1BCA 22250.

To simply state that the work does not meet the specifications without more is insufficient under the above authority. Accordingly, Grot considers the Show Cause Notice to be deficient as to claims that Grot's performance does not meet the requirements of NFPA 101.

In addition, this finding is refuted by Siemens which has on more than one occasion certified that the project is being designed pursuant to NFPA 101. As you know, Siemens' designs were reviewed and approved by FRATTO Engineering. This letter is to specifically request a listing as to where the design does not comply with NFPA 101.

I remind you that in the last several months your office has issued notices to Grot citing paragraphs from NFPA 101 which are from the wrong edition. For example, with respect to the Building 29 redesign, you quoted sections out of the NFPA 101, **2000 edition**. The specifications require utilizing NFPA 101, 1997 edition. This is not the only case in which this has occurred. Another example is the VA's letter of July 17th in which Grot was advised that Building 29 had inadequate fire protection as per NFPA Chapters 4 and 18. However, as cited in the letter, Chapter 4 refers to "Classification of Occupancy and Hazard of Content" and Chapter 18 is applicable to "New Apartment Buildings". This was addressed to you in our letter of May 27th to which we have no response.

In a subsequent letter of July 20th, the VA refers to the same Chapter 18 again and also references 9.6.1 through 9.7.6.2. Neither 9.6.1 through 9.7.6.2. exist in the 1997 edition. Thus, in responding to our request for specifics as to where the work does not meet specification, please be certain to reference the correct edition of the NFPA.

As stated in your letter, this project was awarded on February 1, 2002 with an original completion date of November 10, 2002. Work was proceeding on the project until on or about August 23rd when Mr. Kirk issued his letter determining that Grot was responsible for design of the entire system.

G- 002910

Grot protested that decision and still protests that decision and will seek the cost and expense incurred as a result of that decision.

Notwithstanding, following your letter of September 17th, Grot, in association with Siemens, began redesign of this project. I need not remind you that Mr. Kirk's determination was not made until almost seven (7) months after construction on this project had begun. Delays associated with the redesign of this project severely impacted the completion date and made completion by the original completion date impossible.

In addition, Grot has issued several letters requesting information and direction from your office without which Grot cannot proceed. For example, drawings for Buildings 3, 4, 5, 6, 7, 8, and 11 were received by the VA on November 12, 2002. By letter of December 13th, Grot was inquiring as to the status of the drawings. Further, Grot warned the VA that delay in approving the drawings would delay completion of the project. According to Mr. Kirk, the drawings were not timely reviewed because other VA personnel were busy with other issues at the VA facility in Dallas. Where the contract requires the VA to review and approve the contractor's drawings, the contractor is justified in delaying work covered by the drawings until the VA's approval is received. *T.C. Bateson & Co.*, ASBCA 4718, 58-2, BCA ¶1896. Additional requests for information were made in letters dated October 1, 2002, October 18, 2002, April 29, 2003 and May 27, 2003 and email dated January 22, 2003.

Where a contractor's requests or inquiries are prompted by ambiguous drawings or conflicting instructions, the obligation to provide a quick response is clear. *Clay Bernard Systems Int., LTD. v. United States,* 22 Cl.Ct. 804 (1991).

In the past few weeks, Grot has received verbal direction from VA representatives to add additional devices which are not shown on the approved drawings or, for that matter, the original plans and specifications. Grot has repeatedly requested that these directives be in writing. As Grot has provided a design that is pursuant to NFPA 101, Grot disputes the necessity of the additional devices. Further, Grot has advised your office that it does not believe that it has the authority to unilaterally change approved drawings. In response, VA representatives provided Grot with a copy of "FAR 52.236-21". The VA's reliance on this FAR is misplaced. This is a general FAR that ties the drawings and specifications together. It does not require the installation of devices which are not a part of the scope of work.

Further, and just as important, this FAR applies to **government provided drawings.** I remind you again, Grot has redesigned this project per your directive. The drawings being used for construction are by Siemens/Grot and approved by FRATTO Engineering. There is no further discrepancy.

G- 002911

In addition, this FAR specifically provides for the directives to be in writing. It states in pertinent part as follows:

> "In case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination **in writing. Any adjustment by the Contractor without such a determination shall be at its own risk and expense.** The Contracting Officer shall furnish from time to time such detailed drawings and other information as considered necessary, unless otherwise provided". (Emphasis added).

Representatives of the VA have refused to provide written directive to install the disputed devices. This is not in compliance with FAR 52.236-21 and could be considered a breach of contract by the VA.

In an e-mail to my office of July 29th from Cojean Sprouse, she stated that the "approved drawings" were for "General Arrangement" only. In making that statement she relied upon a stamp placed on the drawings by Mr. Kirk. Mr. Kirk is the COTR and not the design engineer of this project. He is neither a NICET Level III technician nor a fire protection engineer. A closer review of the plans will reflect a stamp from FRATTO Engineering which says as follows:

> "Fabrication/installation may be undertaken. Approval does not authorize changes to the Contract Sum or Contract Time. **Approval is for conformance with the design concept of the project and with the information given in the Contract Documents**, this Approval does not extend to accuracy of quantities or dimensions, designs by contract shop fabrication processes, field construction techniques and safety, or coordination of trades and their work." (Emphasis added).

This stamp verifies that the design provided by Grot meets the requirements of the contract documents. For the VA to now say that additional devices are necessary or that the drawings prepared by Grot do not meet the contract documents, is contrary to the determination made by the VA's expert. Again, these drawings are prepared by a NICET Level III technician and approved by the VA's engineers. None of the individuals giving direction on this project to

G- 002912

install additional devices or to change the approved drawings meet either of these qualifications.

Notwithstanding, Grot has proceeded in accordance with written direction from your office to install certain additional devices. It will continue to follow such written direction, albeit under protest, However, the VA cannot default Grot for installing a project in accordance with approved drawings simply because the VA wishes additional devices installed.

As of the preparation of this letter, testing is ongoing on the correction of the alleged deficiencies provided by Mr. Kirk on July 23rd. I am advised that your representatives have indicated to my project superintendent that they will "fail" the elevator recall test because there are no smoke detectors at the top of the elevator shaft. Neither the drawings provided by FRATTO nor Grot's redesign of this project reflect elevator shaft smoke detectors. These will be additional devices. Again, if the VA wishes those devices installed, a written directive should be issued. For the record, it is my understanding that the elevators recalled as required when tested. Again, you cannot default terminate a contract when construction is in accordance with approved drawings.

I am also advised that during the testing today, an issue arose as to tampers that were not shown on any of the drawings provided by Grot. In addition, there was a problem finding the Inspector's Test Valves to test flows. The VA's representatives indicated that they would fail Grot on the test even though we had no knowledge of these issues.

Incredulously, Mr. Kirk then produced a set of drawings which had this information; drawings that were never made available to Grot. The VA has had information which it knew was of benefit to Grot and never produced it except to use it to attempt to justify a test failure.

I do not need to remind you that this was exactly the type of information requested in Grot's letter of October 18, 2002 following the directive to redesign the project. In item 4 of that letter Grot requested "correct building mechanical drawings". In item 6, Grot requested "correct fire protection sprinkler drawings". The VA never provided the drawings it now relies on to test the system. In fact, the VA never even responded to the request.

It is long settled case law that If the government, VA, possesses material knowledge regarding the performance of a contract which it knows the contractor does not possess, it is under a duty to disclose its superior knowledge. *J.A. Jones Construction Co. v. United States*, 182 Ct. Cl. 615, 390 F.2d 886 (1968). It can not use that superior knowledge or fail to disclose that knowledge to ambush a contractor. In addition, superior knowledge means that the VA knows some critical facts not known or available to Grot, that Grot can not obtain these facts from sources outside of the VA and **the VA withholds the facts from the Grot.** *Santa Fe Engineers, Inc.*, ASBCA No. 17,235 75-2, BCA ¶11,570. The failure to provide the drawings is

G- 002913

inexcusable. To use the drawings now to try and discredit Grot's work borders on bad faith.

It is well established that the government warrants the adequacy of its plans and specifications to the extent that compliance with them will result in satisfactory performance. *American Line Builders, Inc. v. United States*, 26 Cl.Ct. 1155, 1193 (1992), *United States v. Spearin*, 248 U.S. 132 (1918). This implied warranty is not overcome by clauses requiring the contractor to inspect the site, to check plans and assume responsibility until work is completed. The contractor is not responsible for defects in the plans and specifications. *Sipco Services & Marine, Inc. v. United States*, 41 Fed.Cl. 196 (1998). Here, the plans were provided by the VA from the VA's design professional. Grot and every other bidder for the project relied on those plans. At no time did the VA indicate to anyone that they were not complete.

In this case, the specifications were drafted by the VA. That they are ambiguous is patently clear in that neither Grot nor the VA are in agreement as to the responsibility for the design of this project. As a result, the rule of *contra proferentum* will control. That is, the ambiguity will be construed against the party drafting the specification, the VA. Where the government has drafted the ambiguous specifications, a contractor is not required to exercise clairvoyance in determining its contractual responsibilities. *Corbetta Const. Co. v. United States*, 198 Ct.Cl. 712 (1972).

Further, the VA can not seek to avoid the warranty of specifications and drawings by including limiting language or special disclaimers. For example, the specifications, drawings or instructions may have been labeled "advisory", but it has been held that such language does not defeat the contractor's right to rely on the specifications. *Celesco Industries, Inc.*, ASBCA No. 18370, 76-1, BCA ¶11,766 at 56, 169; *Teledyne McCormick-Selph*, ASBCA No. 15664, 73-2 BCA ¶10,243 at 48,290. Thus, the COTR's reliance on the word "generic" in his determination that Grot was responsible for design will clearly fail and reliance on FAR 52-236-21 fails again if the FAR is the basis for a requirement of additional devices. Finally. Mrs. Sprouse's reliance Mr. Kirk's stamp likewise fails based upon this case law.

Similar findings have been made where specifications stated that the plans were for "information and use" in preparing bids and that the contractor was to insure that structural plans were "adequate for the intended purpose". The ASBCA held that the contractor was still entitled to rely on the plans. *Bethlehem Steel Corp.*, ASBCA No. 13,341, 72-1 BCA ¶9,186. None of the provisions submitted to date is sufficient to shift the risk for the design of this project to Grot, yet, to avoid termination Grot provided the redesign.

Next, we are at a loss as to how the VA is determining that the project is only "59% complete". As of today, all buildings are on the network system except Building 1 which has a temporary system in place. Further, with the exception of a few peripheral devices in each building, all devices required by the design are installed and the system is performing. Please provide the basis upon which the VA relies in making this determination.

G- 002914