remember.

I mean there was a lot, lot of discussion about, about how it was going. I'd have to pull the drawings out and look at them and compare them to tell you exactly. 14:58

Q. Okay. But per your testimony today, you stated that the people that actually designed the drawing --

A. They probably just looked at the drawings, yes. 14:58

Q. And probably did not read the specifications, correct?

A. Well, they read the specifications; but I don't know how, how much, if they applied the specifications -- 14:58

Q. Okay.

A. -- exactly.

Q. And then when you were contracted -- when Grot contracted with you to do the redesign of the project, you based your redesign solely on the basic requirements of NFPA codes 101 and 72. Okay? 14:59

A. Existing buildings, yeah.

Q. Not just with the Building No. 29 but overall.

A. Yeah. It would have been under the existing 14:59

building health care standard out of 1997 NFPA 101.

Q. And that was solely what your redesign was based upon.

A. I believe so. I believe that's what Raymond redesigned to and what we talked about. 14:59

Q. So in -- as far as Siemens was concerned, what constituted additional devices on this project?

A. What constituted additional devices?

Q. Correct.

A. With respect to, to the redesign? With 14:59 respect to the -- I mean in what respect?

Q. Break it down any way you want. If I just say to you the term, additional devices, what does that mean to you with respect to this project? What --

A. That would be -- that would be a device that 15:00 we had not, not included in our cost estimate to provide. It would be an additional device. Or it could have been an additional device -- could be a device that was, was -- we were told that we needed to add by Fratto. Or I mean there's a lot of definitions 15:00 of an additional device.

Q. So if I say an additional device is one that was not included on the drawings you submitted, would that be a correct definition?

A. That's one correct definition of an 15:00

Q. Okay. We've got it. Okay. When he says that -- when Mr. Patterson says, "Our directive was to value engineer the project," what does "value engineer" mean?

A. To me or what does it mean legally? 14:12

Q. Is it a term that's used normally in your --

A. It's when you're designing, you value engineer to give the best, the best installation at the lowest cost to the owner.

Q. Okay. And when he says, "Our directive was to value engineer the project," who gave him that directive? 14:12

A. I would say that I told him, when they were to engineer the project, to engineer it to the minimum standards of NFPA 101 and 72. Excuse me. 14:12

MS. WILLIAMS: Okay. 115.

(EXHIBIT NO. 115 IDENTIFIED.)

Q. (BY MS. WILLIAMS) Okay. This is a letter written by you to John Mraz, dated February 28th, 2003. Do you recognize it? 14:14

A. Has my name on it. Yes, ma'am.

Q. Okay. You state that "In reply to your letter dated February 7th, 2003, my firm's position is that the NFPA 101 was incorrectly quoted. The code references Mr. Kirk has used are from NFPA 101, chapter 14:14

GORE, KILPATRICK, PURDIE, & METZ
A PROFESSIONAL LIMITED LIABILITY COMPANY

JAY GORE, III
ANDREW J. KILPATRICK, JR.
ALAN M. PURDIE
JAMES T. METZ
ROBERT J. DAMBRINO, III
CASSANDRA B. WALTER
RICKY LEE BOGGAN
R. ADAM KIRK
MICHAEL G. HOWIE

ATTORNEYS AT LAW
402 LEGACY PARK
POST OFFICE DRAWER 2900
RIDGELAND, MISSISSIPPI 39158
TELEPHONE: 601-957-1595
TELECOPIER: 601-957-1790
akilpatrick@hgglaw.com

JAY GORE, JR.
(1925-1995)

GRENADA OFFICE
135 1ST STREET/38901
POST OFFICE DRAWER 901
GRENADA, MS 38902-0901
TELEPHONE: 662-226-1891
FACSIMILE: 662-226-2237

September 15, 2005

Recorder
Dept. of Veterans Affairs
Board of Contract Appeals
1800 G Street, NW - Suite 545
Washington, DC 20006

Re: Appeal of Grot, Incorporated
Contract No. V549P-606-2
Campus-Wide Fire Alarm
Project No. 099-108
Sam Rayburn Memorial Veterans Center
Bonham, Texas

Subject: **Complaint on Appeal from a Contracting Officer's Final Decision**

Dear Sir:

Enclosed for filing with your office is the original and two (2) copies of Appellant's Complaint on Appeal from a Contracting Officer's Final Decision. Also enclosed is a copy of the cover sheet which I would appreciate you stamping "filed" and return same to me in the enclosed envelope.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Andrew J. Kilpatrick, Jr.

AJK/dmc
Encl.
cc: Grot, Incorporated (w/enclosure)

BEFORE THE DEPARTMENT OF VETERANS AFFAIRS
BOARD OF CONTRACT APPEALS

GROT, INCORPORATED APPELLANT

v. DVABCA No. ____________________

THE UNITED STATES OF AMERICA,
acting by and through the DEPARTMENT
OF VETERANS AFFAIRS APPELLEE

## COMPLAINT ON APPEAL FROM A CONTRACTING OFFICER'S FINAL DECISION

COMES NOW Grot, Incorporated ("Grot"), Appellant, and pursuant to the Contract Disputes Act of 1978 ("CDA") files this Complaint against the United States of America acting by and through the Department of Veterans Affairs (the United States of America being hereinafter referred to as the "VA"), being aggrieved by the decision of a contracting officer on a claim properly certified and submitted by Grot under a contract between Grot and the VA and in support thereof would show as follows, to-wit:

1. This is an appeal from that certain contracting officer's final decision dated June 29, 2005, and is made within the time period required by the CDA; accordingly, this Board has jurisdiction over this cause pursuant to 41 U.S.C. §§ 601, *et seq.*

2. Grot is a corporation organized and existing under the laws of the Commonwealth of Kentucky whose principal place of business and mailing address is



10/12/05 WED 12:55 FAX 214 302 1458 A&KN Office 012

324 Henry Street, Lexington, Kentucky 40508.

3. On February 1, 2002, GSA awarded to Grot contract number V549P-609-2 (the "Contract") for performance of the work generally described as Campus-Wide Fire Alarm, Project No. 099-108 at the Sam Rayburn Memorial Veterans Center, East Ninth and Lipscomb Streets, Bonham, Texas (the "Project"); the Contract provided that the Project was to be completed within 270 days following receipt of the Notice to Proceed.

4. Throughout the course of construction of the Project, Grot's progress was suspended, delayed and otherwise impacted and the cost for performing the work was greatly increased through no fault of Grot; the suspensions, delays and other impacts resulted from, among other things, the VA's interference with Grot's performance on the Project by directing Grot to completely redraw the plans for the Project, defective plans and specifications, multiple directives to conform to erroneous interpretations of the plans and specifications by the contracting officer and his technical representative and defective contract administration together with other actions or inactions by the VA.

5. On or about March 31, 2005, Grot submitted a duly certified claim for additional compensation and requested a contracting officer's final decision; Grot's claim accurately sets forth the basis upon which Grot asserts its claim for additional compensation in the total amount of not less than $1,684,719.86 together with interest thereon of and from the date of certification all as more particularly set out in the claim. A copy of Grot's claim is attached hereto as Exhibit "A".

6. By letter of June 29, 2005, the contracting officer issued his final decision

wherein he recognized Grot's entitlement to only $55,112.60 of the requested adjustment; feeling aggrieved by the decision of the contracting officer, Grot brings this appeal. A copy of the contracting officer's final decision is attached hereto as Exhibit "B".

WHEREFORE, PREMISES CONSIDERED, Grot, Incorporated prays that this honorable Board enter judgment against the United States of America acting by and through the Department of Veterans Affairs as follows, to-wit:

a. Entry of judgment reversing any portion of the contracting officer's final decision denying any portion of Grot's claim and awarding to Grot judgment for the balance of Grot's claim not allowed by the contracting officer in the amount of not less than $1,629,607.26 together with interest thereon from the date of certification; and

b. Entry of judgment in favor of Grot for its attorney's fees and all cost incurred in the pursuit of its claim and this action pursuant to the Equal Access to justice Act, ; and

c. Entry of judgment for such other relief as this Board may deem proper.

Respectfully submitted,

GROT, INCORPORATED

Andrew J. Kilpatrick, Jr.
Gore, Kilpatrick, Purdie & Metz, PLLC
Post Office Drawer 2900
Ridgeland, Ms. 39158-2900
Tele: 601.957.1595
Fax: 601.957.1790

MSB# 3763

DATED: September 15, 2005 Counsel for Appellant

BEFORE THE DEPARTMENT OF VETERANS AFFAIRS
BOARD OF CONTRACT APPEALS

GROT, INCORPORATED — APPELLANT

v. — DVABCA No. ____________

THE UNITED STATES OF AMERICA,
acting by and through the DEPARTMENT
OF VETERANS AFFAIRS — APPELLEE

NOTICE OF APPEAL

COMES NOW, Grot, Incorporated ("Grot"), Appellant, and pursuant to the Rules of the Department of Veterans Affairs Board of Contract Appeals files this its notice of appeal from that certain contracting officer's final decision dated June 29, 2005 in Contract number V549P-609-2 for the project generally described as Campus-Wide Fire Alarm, Project No. 099-108 at the Sam Rayburn Memorial Veterans Center, East Ninth and Lipscomb Streets, Bonham, Texas. A copy of the contracting officer's final decision is attached hereto as Exhibit "A".

Respectfully submitted,

GROT, INCORPORATED

Andrew J. Kilpatrick, Jr.
Gore, Kilpatrick, Purdie & Metz, PLLC
Post Office Drawer 2900
Ridgeland, Ms. 39158-2900
Tele: 601.957.1595
Fax: 601.957.1790
MSB# 3763

DATED: September 13, 2005

Counsel for Appellant

June 29, 2005

North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Dallas, TX 75216

RECEIVED
JUL - 1 2005

**VIA Federal Express**
Gore, Kilpatrick, Purdue, Metz & Adcock
Attorneys At Law
400 Legacy Park, Suite B/39157
Post Office Drawer 2900
Ridgeland, MS 39158

Subject: **Contracting Officer's Final Decision**
On Request For Equitable Adjustment
Contract V549P-609-2
Project No. BO1-114
Replace Bonham Fire Alarm System

Dear Mr. Kilpatrick:

I am writing in response to your letter dated 31 March, 2005, submitted by your firm on behalf of Grot, Incorporated in which you requested a Contracting Officer's Final Decision on your request for an equitable adjustment under Contract Number V549P-609-2 to replace the fire alarm system at the Sam Rayburn Memorial Veterans Center, Bonham, TX. Pursuant to 41 U.S.C. 605 (c) (2), this letter shall serve as the Contracting Officers' "Final Decision" to your request for a "total equitable adjustment to the contract price in the amount of $1,684,719.86".

I will begin by addressing your statement as to whether the original specifications were inadequate. Then answer your question: "If the contractor was responsible for the design of the system as the VA subsequently determined, how could the specifications be inadequate?" And finally, counter your claim that "the Contracting Officer has never pointed to where in the specifications the phrase design/install is found."

The original solicitation was cancelled not because of inadequate specifications but because it contained the 1995 manual and not the most recent version of the manual, which was the 1997 edition and the latest version of the specifications. The Bonham Fire Alarm System was clearly identified in both specifications as a design/install project and not as an install only project. On page 1.2 of the Specification Scope it clearly states that "A new fire alarm system shall be designed and installed in accordance with the specifications and drawings" and page 13850-2 in General Description b. of the Contract Specifications reads: "The system design layout, submittal documents preparation, and supervision of installation and testing shall be provided by a technician that is certified NICET Level III or a registered fire protection engineer."

EXHIBIT
A
- 86 -



10/12/05 WED 12:52 FAX 214 302 1458 A&MM Office ☒007

Moreover, your use of the "interpretation against the drafter rule" to further support your claim for $308,009.72 in costs associated with designing the project is misguided. The hierarchy of rules to aid contract interpretation that have been developed over the years in numerous courts and appeals board decisions places the "interpretation against the drafter rule" at the bottom of the hierarchy. "Interpreting a contract against the drafter is the rule of last resort, only to be used when all other rules have been exhausted". When the contract specifications specifically state that the contractor shall both design and install the fire alarm system the cost of design is part of the original contract cost. The owner does not pay twice for the same work!

Furthermore, the ***FAR Clause, 52-233-1 DISPUTES, found on page 4-42 of the contract clearly states: "The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer".*** However, instead of a commitment of cooperation from Grot Inc. "pending final resolution" the Government received a barrage of correspondence over relatively insignificant matters asking for a response: complaints concerning the motives and requirements of the COTR and his assistants that administered the contract: and even complaints from Grot Inc. about their own subcontractor. All of which resulted in Grot Inc. failure to meet performance deadlines and/or submittal requirements.

You requested in your letter of March 31, 2005 monies in the amount of $44,990.02 for additional labor and material resulting from a differing site condition due to "the lack of capacity or complete absence of conduit in the manholes", which you describe as a textbook Type I condition. You quote *Erickson-Shaver Contracting Corp. v United States, 9 Cl. Ct. 302,304 (1985)* which states: "The underlying issue in a Type I differing site condition claim is whether the contractor reasonably could have anticipated the conditions encountered from a knowledgeable interpretation of the contract documents, its inspection of the site and its general experience as a contractor". Even though ***FAR Clause 52.236-27 SITE VISIT***, found on page 2-4 of the contract identifies the Contracting Officer's Technical Representative and lists his phone number, and the cancellation of the original solicitation gave Grot Inc. not one, but two opportunities to visit the site, Grot Inc submitted both of their bids site unseen thus precluding the discovery of differing site conditions. Moreover, your letter of March 31, 2005 is the first time I've heard about the lack of conduits in the manholes. The only mention of manholes that I'm familiar with is that some of the manholes were contaminated during the initial construction period. However, that problem was resolved after an investigation by the VA Safety Officer in which he concluded that contract workers should wear protective clothing while working in suspect manholes. The only problem with conduits is that the Government did not discover the communication conduits that should not have been used by Grot Inc., until it was too late to make changes.

Regarding the additional cost incurred by Grot Inc. of $74,250.11, which resulted from my directive to proceed with a fire watch, my decision was based on information that I received from the VA Safety Officer and the Contracting Officer's Technical Representative (COTR), Ricky Kirk, who was responsible for insuring that Grot Inc. provided campus wide fire alarm protection for the safety of the VA staff and patients during the design and installation of the new fire alarm system. ***The COTR's conclusions were based on threats to patient and staff safety and supported by language found on page 13850, paragraph 1.1. Description, sub-paragraph E which states: "The contractor shall provide a dedicated fire watch person all times any normally protected area is disconnected from a fire alarm system as a result of the project work, except during normal day shift non-holiday VAA hours. The fire watch person shall have no duties other than a fire watch". Also, Section 1010 of the contract specifications in paragraph 1.4 FIRE SAFETY, sub paragraph K, EXISTING FIRE PROTECTION reads: "Provide fire watch for impairments more than 4 hours in a 24-hour period." Finally, NFPA 101, 9.6.1.7 states: "where a required fire alarm system is out of service for more than 4 hours in a 24-***

*hour period, the authority having jurisdiction shall notified, and the building shall be evacuated or an approved fire watch shall be provided for all parties left unprotected by the shutdown until the fire alarm system has been returned to service."*

At no time during the fire watch did I ever contemplate second-guessing Mr. Kirk's decision to proceed with the fire watch. Placing the safety of patients and staff in jeopardy is not a risk management issue, let alone an option for a Government Contracting Officer.

With regard to your demand for interest on delinquent invoices I will, for arguments sake, honor your request and make interest payments on the following invoices:

| Invoice Amount Due | Received | Paid | Days of Interest | Interest Due |
|---|---|---|---|---|
| $ 81,322.85 | 5/23/02 | 7/31/02 | 39 | $ 456.36 |
| $ 33,329.23 | 6/25/02 | 8/09/02 | 9 | $ 71.85 |
| $ 17,447.28 | 7/22/02 | 9/17/02 | 27 | $ 67.50 |
| $ 18,630.00 | 8/21/02 | 10/09/02 | 19 | $ 50.73 |
| $102,712.00 | 9/22/02 | 11/08/02 | 16 | $ 236.32 |
| $ 9,856.98 | 10/22/02 | 4/07/03 | 82 | $ 104.80 |
| $ 17,137.98 | 12/20/02 | 4/07/03 | 67 | $ 153.87 |
| $ 48,331.71 | 12/02/03 | 4/28/03 | 67 | $ 377.99 |
| $ 74,492.91 | 3/31/03 | 6/19/03 | 50 | $ 434.10 |
| | | | Grand Total | $1,953.52 |

There is no interest payment due for the invoices listed below since the work was never certified by the COTR as being accomplished and thus, the invoices were never paid.

$114,062.99
$ 51,994.89
$ 35,505.95
$ 25,767.85
$ 38,219.62

Also it was not the government that placed Grot Inc. bonding capacity on hold "pending final resolution of the dispute with the VA." The decision to suspend Grot Inc. bonding capacity was made by the surety, Travelers Casualty and Surety Company of America. I can only assume that Travelers decision was not "arbitrary, capricious or made in bad faith" but based on the their evaluation of Grot Inc. level of risk after conducting an independent investigation to ascertain the merits of the termination for default. Your expectation that the government should pay Grot Inc. in the amount of $933,635.30 for loses resulting from Travelers decision to suspend Grot Inc. bonding capacity is disingenuous and not allowable.

Finally, the work necessary to redesign the fire alarm system for the Sam Rayburn Veterans Center, Bonham, TX was not additional work for which the government is responsible. Nor is the government responsible for Travelers Casualty and Surety of America's conclusion based on their independent investigation to suspend Grot Inc. bonding capacity. However, Grot Inc. is entitled to $551,242,90, which represents 59% of the total contract price of $934,310.00, the amount of work completed as certified by the Contracting Officer in the "Termination for Default Notice". Subtract the $498,869.42 already paid Grot Inc. from the $551,242.90 and that leaves a balance of $52,373.48. Add interest of $785.60 at 4.5% for four months on the $52,373.48 and $1,953.52 in interest payments for delinquent invoices for a grand total amount of $55,112.60.

Therefore, it is hereby found that Grot Inc. is entitled to an equitable adjustment of $55,112.60 on its claim made in their letter dated March 31, 2005. This is the Final Decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000.00 or less. Instead of appealing to the agency board of appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive the decision.

The Department of Veterans Affairs Board of Contract Appeals (VABCA) is the authorized representative of the Secretary for hearing and determining such disputes. The rules of the VABCA are published in section 1.783 of Title 38, Code of Federal Regulations. The address of the Board is 810 Vermont Avenue, N.W., Washington, DC 20420

JOHN MRAZ
CONTRACTING OFFICER



10/12/05 WED 12:54 FAX 214 302 1458 VA&M Office 010

DEPARTMENT OF VETERANS AFFAIRS
Board of Contract Appeals
Washington DC 20420
Telephone (202) 273-6743
Facsimile (202) 275-5381

October 3, 2005

Andrew J. Kilpatrick, Esq. (09)
Gore, Kilpatrick, Purdie, & Metz
402 Legacy Park
Post Office Drawer 2900
Ridgeland, MS 39158

Office of General Counsel (025)
Department of Veterans Affairs
810 Vermont Avenue, NW
Washington, DC 20420

Contracting Officer (183B)
Department of Veterans Affair
North Texas Veterans Health Care System
VA Medical Center
4500 S. Lancaster Road
Dallas, TX 75216

**VABCA-7438-7444**
Grot, Incorporated
Contract No. V549P-606-2
VAMC, Bonham, Texas

## NOTICE OF DOCKETING

The appeals of Grot, Incorporated, from a Contracting Officer's final decisions for claims totaling $1,684,719.86, were received and docketed on September 15, 2005, and assigned the following docket numbers:

| *APPEAL NO.* | *CLAIM* | *AMOUNT* |
|---|---|---|
| VABCA-7438 | Unpaid Progress Payments | $195,331.68 |
| VABCA-7439 | Retainage | 84,938.97 |
| VABCA-7440 | Late Payments | 43,564.06 |
| VABCA-7441 | Project Redesign | 308,009.72 |



10/12/05 WED 12:31 FAX 214 302 1458 A&MM Office 003

| | | |
|---|---|---|
| VABCA-7442 | Differing Site Condition – Manholes | 44,990.02 |
| VABCA-7443 | Fire Watch | 74,250.11 |
| VABCA-7444 | Loss of Bonding Capacity | 933,635.30 |

In future correspondence, reference should be made to the assigned docket numbers.

The parties should take notice that correspondence sent via *U.S. Mail* should be addressed as follows:

Department of Veterans Affairs
Board of Contract Appeals (09)
810 Vermont Avenue, NW
Washington, DC 20420

Use of the Board's mail symbol (09) is important to internal mail delivery.

However, for any correspondence sent via *private express carriers* the Board's address is as follows:

Department of Veterans Affairs
Board of Contract Appeals
1800 G Street, NW - Suite 545
Washington, DC 20006

A copy of the Board's Rules is enclosed for the parties' information. 38 C.F.R. § 1.783. These Rules are applicable to all appeals processed under the *Contract Disputes Act of 1978* (41 U.S.C. § 601 *et seq.*). Appellant's attention is directed to Rule 6(1) which requires that its Complaints be filed within 30 days after receipt of this docketing notice. The Board acknowledges receipt of Appellant's Complaints (copy enclosed for the Government).

All documents filed with the Board should be on letter-size paper. For the parties' convenience, documents may be filed via the Board's fax machine at (202) 275-5381.

A *Notice Regarding Alternative Methods of Dispute Resolution* and a copy of the Board's Interim Procedures for processing *Equal Access to Justice Act* applications are also enclosed for the parties' information. Additional information concerning the operation and procedures of the Board may be found at our web site located at *www1.va.gov/bca.* The Board's e-mail address is *vacobca@mail.va.gov.*

The Department of Veterans Affairs should notify the Board and the Appellant within thirty days as to who will be representing the Government in this appeal.

Rule 4 prescribes the duties of the Contracting Officer in connection with assembling and forwarding the appeal files. The files, properly arranged in chronological order, numbered sequentially, tabbed, and indexed to identify its contents, are to be forwarded by the Contracting Officer to the Office of General Counsel (025) for submission to the Board. Please do not use ring binders.

The appeal files are to be lodged with the Board and Appellant on or before *Monday, **November 7, 2005.*** The Contracting Officer is requested, therefore, to forward the originals, legible facsimiles or authenticated copies of all documents specified in Rule 4 to the Office of General Counsel in ample time for that office to file said documents with the Board by the close of business on November 7, 2005.

The parties are advised that Judge Richard C. Walters is being assigned as the Presiding Judge in these appeals. All future filings and correspondence concerning this appeal should be addressed to his attention.

Gary J. Krump

GARY J. KRUMP
Chief Administrative Judge

Enclosures