**No. 03-1951C**
**(Judge Baskir)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**GROT, INC.**

**Plaintiff,**

**v.**

**UNITED STATES**

**Defendant.**

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE**
**TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**FRANKLIN E. WHITE, JR.**
**Assistant Director**

**LINDSAY E. WILLIAMS**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division,**
**Department of Justice**
**Attn: Classification Unit**
**1100 L Street, NW, 8th Floor**
**Washington, DC 20530**
**Telephone: (202) 353-7995**
**Facsimile: (202) 514-8624**

**February 22, 2006** **Attorneys for Defendant**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii**

**A. Grot's interpretation Of The Contract Provisions Is Unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-10**

**B. Grot Was Given Performance Specifications . . . . . . . . . . . . 10-13**

**C. Because The Contract Is Unambiguous, The Parol Evidence Rule Should Be Applied Here To Exclude Any Extrinsic Evidence . . . . . . . . . . . . . . . . . . . . 13-21**

**D. Even If The Court Accepts Grot's Factual Contentions As True, They Do Not Raise A Genuine Issue Of Material Fact, But Only Establish That The Contract Was Patently Ambiguous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23**

**CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23**

# TABLE OF AUTHORITIES

## CASES

A.B. Chance Co. v. RTE Corp.,
854 F.2d 1307 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Aleutian Constructors v. United States,
24 Cl. Ct. 372, 379 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Science & Eng'g, Inc. v. United States,
229 Ct. Cl. 663 F.2d 82 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 5

Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
853 F.2d 1557 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 21-22

Bailey v. United States,
516 U.S.137 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Blake Const. Co. v. United States,
987 F.2d 743 (Fed. Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Brutoco Eng'g & Const. v. United States,
12 Cl. Ct. 104, 109, aff'd, 833 F.2d 1021, 1023 (11th Cir. 1987) . . . . 5

Elden v. United States,
617 F.2d 254 (Ct. Cl. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Eng'g & Const. v. United States,
12 Ct. Cl. 104, 109, aff'd, 833 F.2d 1021, 1023 (11th Cir. 1987) . . . . 5

Foley v. United States,
11 F.3d 1032 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hercules, Inc. v. United States,
292 F.3d 1378 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hol-Gar Mfg. Corp. v. United States,
351 F.2d 972 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7

J.L. Simmons Co. v. United States,
188 Ct. Cl. 412 F.2d 1360 (1969) . . . . . . . . . . . . . . . . . . . . . . . 11

King Fisher Marine Service, Inc. v. United States,
16 Cl. Ct. 231, 234 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martin Lane Co. v. United States,
432 F.2d 1013 (Ct. Cl. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . 5

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

McAbee Construction Inc., v. United States,
97 F.3d at 1431 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Metric Constructors v. NASA,
169 F.3d at 747 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Penguin Indus., Inc. v. United States,
530 F.2d 934 (Ct. Cl. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Barron Bancshares, Inc., v. United States,
366 F.3d 1360, 1375 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 13-14

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sylvania Electric Products, Inc. v. United States,
458 F.2d 994 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,
484 U.S. 365 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Spearin,
248 U.S. 132 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Zinger Constr. Co. v. United States,
807 F.2d 979 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTES

**Code of Federal Regulations**

48 C.F.R. § 52.236-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## COURT RULES

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GROT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1951C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT UPON THE ISSUE OF WHETHER THE CONTRACT REQUIRED GROT TO DESIGN AND INSTALL A FIRE ALARM SYSTEM

Pursuant to RCFC 56, defendant, the United States, respectfully submits the following reply to plaintiff Grot, Incorporated's ("Grot's") response to defendant's motion for partial summary judgment upon the issue of whether the contract required Grot to design and install a fire alarm system. As demonstrated in our opening brief, the contract clearly required Grot to incorporate the bid drawings, specifications, and relevant codes to create a complete fire alarm system. Further, Grot's interpretation of the contract is unreasonable. Finally, many of the facts included in Grot's response brief are not relevant to the narrow issue of whether the contract required Grot to design and install a fire alarm system, or simply required it to install a fire alarm system.

In its response brief, Grot contends that its interpretation of the contract provisions was reasonable, that the contract specifications were design specifications, which the Government warranted as adequate and which relieved it of any duty to inquire, and that the contract provisions were ambiguous. As we demonstrate below, none of Grot's arguments is availing.

A. Grot's interpretation Of The Contract Provisions Is Unreasonable

In its response, Grot first argues that the contract did not require it to "redesign the entire project for the purpose of installing a fire alarm system." Pl's Br. At 20. Grot misunderstands our position. We have never contended that the contract required Grot to "redesign" anything. Nor have we contended that the contract was a "design/build" contract. See id. As Grot correctly observes, a design/build contract is a term of art in Government contracts, and it is a contract in which the Government awards one contract to one contractor for both the design and construction services for a specific project. See Pl's Br. at 27.

Here, the Department of Veterans Affairs ("VA") awarded a contract to Fratto Engineering ("Fratto") an architectural firm, to create the generic bid drawings that defined the contractor's scope of work in the contract at

issue, and to create the specifications, to which contractors would be required to adhere. Bidders were allowed to rely upon the bid drawings, among other things, when creating their bids and when creating the actual fire alarm system. The VA did not expect Grot to repeat the work that Fratto had already completed, but to treat Fratto's drawings as a base or reference in creating the ultimate product. Thus, we have never described the contract at issue as a "design/build" contract.

As we demonstrated in our opening brief, the contract required Grot to incorporate the bid drawings, the contract specifications, and the relevant fire codes to create or design a fire alarm system, and then to install that system. App. 10-16. Grot did not do this. Instead, Grot ignored code requirements and specification provisions and relied solely upon the bid drawings, treating them as blueprints, to install a fire alarm system.

Grot claims that it has "never denied that it was Grot's responsibility to provide a 'system' which met the **specifications and drawings** for the Project as required by 13850." Pl's Br. at 21 (emphasis in original). Yet, this statement is contrary to Grot's words and actions throughout its performance of the contract. App. at 23-24, 30-31, 34, 37-38, 65-66, 71-72,79. In fact, Grot instructed Siemens to submit a subcontract bid based

solely upon the bid drawings. App. at 65, lns 18-25; 66, lns 15-25; 68, lns 13-21. Indeed, Grot submitted shop drawings that were exact copies of the bid drawings. App. at 20, 22, 75, lns 16-22, 25; 76, lns 1-3, 9-12; 77, lns 6-15. Further, Grot told the Government that it was not responsible for ensuring that the fire alarm system met relevant fire codes. App. at 23, 31. When Grot agreed to re-submit its shop drawings, it based its drawings solely upon the minimum requirements of the relevant codes, instead of incorporating them with the bid drawings. App. at 77, lns 18-25; 78, lns 1-5; 79, lns 10-15.

Grot did all of this in contravention of express contract language, which required it to incorporate the specifications, bid drawings and code requirements,13850 ¶¶ 1.1.A, 1.1.B, 1.2.B, and which incorporated a precedence clause, stating that specifications governed over the drawings, FAR 52.236-27, and that both the specifications and drawings govern over the code requirements, 16050 1.2.A. It is this unreasonable interpretation of the contract that led to Grot's default termination.

It is axiomatic that where, as here, the provisions of a contract are phrased in clear and unambiguous language, "the words of those provisions must be given their plain and ordinary meaning by the court in

defining the rights and obligations of the parties . . . ." Elden v. United States, 617 F.2d 254, 260-61 (Ct. Cl. 1980); accord Foley v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991); American Science & Eng'g, Inc. v. United States, 229 Ct. Cl 47, 57; 663 F.2d 82, 88 (Ct. Cl. 1981). Moreover, it is well-established that Government contracts must be read as a harmonious whole. Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979 (Ct. Cl. 1965); Martin Lane Co. v. United States, 432 F.2d 1013, 1019 (Ct. Cl. 1970). "An interpretation which gives reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous." Hol-Gar Mfg. Corp., 351 F.2d at 979; see also Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed. Cir. 1985); Brutoco Eng'g & Const. v. United States, 12 Cl. Ct. 104, 109, aff'd, 833 F.2d 1021, 1023 (11th Cir. 1987). Furthermore, a term that may seem ambiguous in isolation is often clarified by the remainder of the statute or contract. See Bailey v. United States, 516 U.S.137, 146 (1995); United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988).

Here, the plain language of the contract required Grot to design and install a fire alarm system. Nothing in the language of the contract supports Grot's interpretation of the contract as simply requiring it to rely solely upon the bid drawings. Further, Grot's interpretation of the contract does not give "reasonable meaning to all parts" of the contract.

For instance, Grot unreasonably interprets the two specification provisions – specification 13850, paragraphs 1.1.B and 1.2.B – that expressly state that the contractor is to design and install, in accordance with the specifications and drawings, a new fire alarm system. Grot argues that because the word "design" was used only in these two provisions, it was not clear that Grot was to design and install the system. Grot states that in both instances the word "design" is related to the "system" to be installed. Pl's Br. at 21. Grot implies that the system to be designed was somehow not the subject of the contract, but it cites language in the contract to support its counterintuitive view that the "system" to which these provisions referred was not the very subject of the contract. In fact, the "system" was the subject of the contract, as the contract, when read as a whole, makes plain.

Grot's interpretation necessarily leaves the portions of the contract,

clearly providing that the contractor is to incorporate the bid drawings, specifications and code requirements, "useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous." Hol-Gar Mfg. Corp., 351 F.2d at 979. The contract expressly incorporated FAR 52.236-27, which provides that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between the drawings and specifications, the specifications shall govern. 48 C.F.R. § 52.236-21, App. at 9. This provision would hold no meaning if Grot's interpretation is accepted.

Further, once the contracting officer directed Grot to revise and resubmit its shop drawings to comply with the requirements of the contract, Grot ignored the bid drawings and the specifications, relying solely upon the minimum code requirements. App. at 77, lns18-25; 78, lns 1-5; 79, lns 10-15. Accordingly, Grot's interpretation completely voids section 16050, paragraph 1.2.A, which, explicitly states that references to NFPA codes are "minimum installation requirement standards," and paragraph 1.2.B, provides "[d]rawings and other specification sections shall govern in those instances where requirements are greater than those specified in the

[NFPA] standards." App. at 14.

Additionally, Grot contradicts its own reasoning. Grot concedes that the contractor must posses some level of discretion in "designing" the system because each manufacturer would have to vary the components of its system to meet the specifications and drawings. Pl's Br. at 21. That is, because manufacturers' equipment may vary in coverage, function or in other ways, a contractor would necessarily have to vary the components of a system depending upon the manufacturer's equipment employed, in order to achieve the result set forth in the specifications and drawings. Accordingly, Grot necessarily concedes that the quantity and spacing of devices was dependent upon the particular devices used and upon the manufacturer of those devices. Pl's Br. at 22. Yet, if Grot truly believed the bid drawings were exact blueprints, then it could not believe that it had any discretion to change any aspect of the drawings based upon a certain manufacturer's system.

Grot also concedes that the quantities and spacing of devices is governed by the usage and square footage of each particular room, Pl's Br. at 22, as the relevant fire code requirements vary with the usage and footage of a room. Grot further notes that the bid drawings contained no

information regarding the usage or square footage of the rooms. Again, Grot could not reasonably have relied solely upon the bid drawings, because it was required to vary the quantity and spacing of a specific manufacturer's equipment from the quantity and spacing of the devices shown on the bid drawings, and the room usage or square footage were not listed on the bid drawings. There would be no way for Grot to ensure that its system was in compliance with the relevant codes if it was relying solely upon the bid drawings.

Grot's interpretation of specification section 13850, paragraph 1.1.A, which provides that the system shall include, but not be limited to, various equipment listed within that specification section, is similarly inconsistent with its overall contract interpretation. App. at 10. The provision also provides that "[a]ll devices and accessories necessary for a complete operating system shall be included even though each item is not specifically mentioned or described herein." Id. Grot interprets this provision to require it to provide all of the incidental equipment necessary to make the items listed in the specifications and drawings function. Pl's Br. at 23. Grot, thus, acknowledges that it was required to use some level of discretion and creative license in creating a complete fire alarm system.

This acknowledgment is inconsistent with Grot's treatment of the bid drawings as blueprints.

A contract must be construed "to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract." Hercules, Inc. v. United States, 292 F.3d 1378, 1381 (Fed. Cir. 2002)). Grot's interpretation, including the alleged requirement to rely solely upon the bid drawings, and the alleged require to rely solely upon the minimum code requirements, certainly did not give reasonable meaning to all parts of this contract.

B. Grot Was Given Performance Specifications

Grot contends that the specifications at issue were "design" specifications, and that the Government warranted their adequacy and relieved Grot of any responsibility to verify their accuracy. Pl's Br. at 24.

The contract specifications allowed Grot significant discretion and cannot, therefore, be considered true design specifications. The distinction between performance and design specifications is well-established:

> Performance specifications "set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." . . . Design specifications, on the other hand, describe in precise detail the materials to be employed and the

> manner in which the work is to be performed. The contractor has no discretion to deviate from the specifications, but is "required to follow them as a road map."

Blake Const. Co. v. United States, 987 F.2d 743, 745 (Fed. Cir.) (quoting J.L. Simmons Co. v. United States, 188 Ct. Cl. 684, 689, 412 F.2d 1360 (1969)); accord, Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1582 (Fed. Cir. 1987). If the Government provides the contractor with design specifications, the Government warrants that the specifications are accurate, and the Government is responsible for any defects in the specifications. No such warranty accompanies performance specifications, however. See United States v. Spearin, 248 U.S. 132, 136 (1918); Stuyvesant Dredging, 834 F.2d at 1582.

The Federal Circuit has held that the true distinction between design and performance standards is not the label assigned to the drawings and notes, but how much discretion the specifications gave the contractor in the placement of the conduit. See, e.g., Zinger Constr. Co. v. United States, 807 F.2d 979, 981 (Fed. Cir. 1986) (stating that "labels do not independently create, limit, or remove a contractor's obligations"); Penguin Indus., Inc. v. United States, 530 F.2d 934, 937 (Ct. Cl. 1976) (noting that terms "design specification" and "performance specifications" are not

self-determining); Aleutian Constructors v. United States, 24 Cl. Ct. 372, 379 (1991) (finding that most contracts contain both specifications).

The VA provided Grot with a performance specification in that it gave Grot discretion in how to create the fire alarm system. The VA did not dictate the exact fire alarm system Grot was to design and install. Rather, the VA listed the characteristics it wanted the fire alarm system to have and the requirements it wanted the system to meet, but allowed Grot to exercise its discretion, and select its methods, to achieve the required result. App. at 10-16. Indeed, Grot explicitly concedes in its brief that the contract is a performance specification. Pl's Br. at 22, 23. The fact that Grot was required to draft shop drawings, and submit the shop drawings to the VA for review and approval, App. at 12, 13, 15, is conclusive proof that the VA allowed Grot the discretion to perform its obligations in varying manners to be determined by Grot, and accordingly, this was a performance specification. Further, the specifications state throughout that not all devices and accessories are detailed in either the specifications or drawings, that exact device location and spacing would vary depending upon the equipment used, that the relevant code requirements must be met, and that the contractor was responsible for verifying critical

dimensions shown on the bid drawings. App. at 10, 11, 15, 16. All of which, necessarily indicates that the contract bestowed a high level of discretion upon Grot to achieve in many different manners an end result. Therefore, the Court need not even consider Grot's argument that the Government warranted the specifications and therefore, relieved Grot of any obligation to check and verify the correctness, adequacy, or feasibility of the Government documents. Pl's Br. At 25.

C. Because The Contract Is Unambiguous, The Parol Evidence Rule Should Be Applied Here To Exclude Any Extrinsic Evidence

In its response to defendant's motion for partial summary judgment, Grot argues that, in spite of the existence here of a clear written agreement, the Court should look to events which took place during a prior solicitation, evidence of other VA contracting officers' interpretations of different contracts, and other parole evidence in order to correctly construe this contract. However, it is well-settled that once an agreement is set in writing, parol evidence is not permitted to challenge that writing except in a few narrow exceptions.

If the terms of a contract are clear and unambiguous on its face, as they are here, there is no need for the Court to resort to extraneous evidence for its interpretation. Barron Bancshares, Inc., v. United States,

366 F.3d 1360, 1375 (Fed. Cir. 2004). The parol evidence rule, a rule of substantive law, bars courts from considering extrinsic evidence upon a motion for summary judgment when "put forth for the purpose of varying the meaning of clear, unambiguous language." King Fisher Marine Service, Inc. v. United States, 16 Cl. Ct. 231, 234 (1989); see also, Barron Bancshares, 366 F.3d at 1375. The rationale for this rule is that "[w]here the parties intend that their written agreement shall not only be final, but be also the exclusive statement of all their agreements, even a consistent prior oral agreement is superseded and overridden by the written agreement." Sylvania Electric Products, Inc. v. United States, 458 F.2d 994, 1006 (Ct. Cl. 1972)(emphasis in original). Second, even if the written agreement is not the exclusive statement of the parties' agreement, parol evidence my not be considered if it is inconsistent with the terms of the written agreement. Id.

Moreover, "parol evidence may not be utilized by a party to create an ambiguity." King Fisher, 16 Cl. Ct. at 234; see also McAbee Constr., 97 F.3d at 1435. A court should only resort to extrinsic evidence to interpret the terms of a contract provision when the contracting party demonstrates that the terms of the agreement are ambiguous. McAbee Constr., 97 F.3d

at 1435; Metric Constructors, 169 F.3d at 752.

As established in our motion for partial summary judgment and above, the contract at issue here is unambiguous and not susceptible to more than one reasonable interpretation. Thus, the Court has no need and should not look to evidence outside the four corners of the contract to determine its actual meaning.

If, however, the Court considers the parol evidence offered by Grot, Grot's interpretation of this contract would still be unreasonable and invalid. For instance, Grot argues that because none of the "solicitations" issued by the contracting officer referenced "design" in the scope of work, that all of the bidders, except for Siemens, interpreted the contract in the same manner as Grot. Pl's Br. at 25-26. Yet, regardless of whether the solicitations contained the word "design," the specifications, which bidders received prior to bidding, contained the clear and unambiguous language, discussed above, which did contain the word "design." Further, the only evidence Grot offers to support its theory that all bidders, except Siemens, interpreted the contract the same as Grot, is that their were differences in bid amounts. Beyond the fact that it is Grot's pure speculation that the reason for the price differentials was the other bidders' interpreting the

contract as Grot did, the difference in the bid amounts were not significant.

Grot alleges that Siemens had a different interpretation because "certain individuals in the VA" had informed Siemens personnel what they wanted to include in the fire alarm system. Pl's Br. at 26, 30. Grot contends that the VA had a "wish list" of items it wanted included in the fire alarm system, items that were not included in the contract documents. Pl's Br. At 30. Yet, even if VA personnel had conveyed such a "wish list" to Siemens prior to award of the contract, it is irrelevant to the issue of determining whether the contract actually required Grot to design and install the system, versus requiring it to simply copy the bid drawings.

Grot further alleges that Siemens lowered its bid for the second solicitation, disregarding what the VA personnel had told Siemens personnel prior to the first bid, and relying upon solely upon the plans and specifications. Id. This demonstrates only that, other than Siemens based its bid upon the contract documents in their entirety, unlike Grot, which based its bid only on the bid drawings. Further, Mr. McCauley, from whose testimony Grot is deriving its information, stated that he was not at the pre-bid walk through for the first solicitation, App. at 67, lns 22-25; Pl's App. at

192, lns 22-23, thus he has no knowledge as to what information the other bidders received prior to bidding. Second, Mr. McCauley stated that, in his opinion, bidders could have "gone and walked [the site] and seen a lot of the stuff [that was required by the contract]." App. at 191, lns 21-23. It is important to note that Grot did not attend the pre-bid walk through on either the first or the second solicitation, Pl's Br. at 31, thus any difference in Grot's and other bidders' bids could be attributable solely to that fact. Finally, while Siemens may have lowered its bid for the second solicitation, it did not base its bid solely on the bid drawings, but upon both the bid drawings and the specifications (which required that the system be designed and installed pursuant to relevant fire codes), Pl's App. At 77. Nor did it did rely solely upon the drawings when it submitted its first cost proposal to Grot for the subcontract.[1] App. at 65, lns 7-11, 18-22.

Grot places great importance on the fact that the first solicitation was

---

[1] Grot alleges that it did not know, prior to submitting its shop drawings to the VA, that its interpretation of the contract differed from that of the VA. Pl's Br. at 29. Yet, Mr. McCauley stated that he informed Grot that the VA was requiring more than was shown on the drawings, App. at 67, lns 1-10, 69, lns 24-25, 70, lns 1-7. Further, Grot alleges that instructed Siemens to "price the job according to the plans and specifications." Pl's Br. at 29. Yet, Siemens actually only relied upon the bid drawings, and not the specifications, in pricing its subcontract proposal. App. at 75, lns 16-22.

canceled because of “inadequate specifications.” Pl’s Br. at 26. Grot somehow believes that the specifications could not have required the contractor to design the system if the original specifications were “inadequate.” Id. Yet, Grot then concedes that the changes in the specifications between the first and second bids had nothing to do with the design or the installation of the fire alarm system. Id. Thus, the inadequacy that the VA referred to in its decision to cancel the first solicitation obviously had nothing to do with the language or requirements related to designing and installing the system. Grot’s point is, therefore, lost on defendant.

Grot also relies upon the contract that the VA awarded to Fratto for the design of the bid drawings as support for its interpretation of the contract. As stated above, the VA contracted with Fratto to create bid drawings that defined the scope of work for the contractor, and the specifications, to which the contractor had to adhere. Grot notes in its brief that Fratto’s contract required Fratto to conform to all codes “specified in the various Veterans Administration Construction Standards,” Pl’s App. at 101, but that did not mean that the bid drawings themselves complied with all relevant fire codes. In fact, Fratto’s contract required it to notify the

contracting officer of any local code requirements that Fratto thought should be followed. Id. Since Fratto, in addition to creating the bid drawings, also helped develop the specifications for the contract, it is logical that it would include, in the specifications for the contract at issue, a requirement that the contractor meet all relevant fire codes. It in no way means that Fratto's bid drawings met all relevant codes, so the contractor need not concern itself with such requirements. Further, Mark Fratto, testified that the purpose of the drawings was to define the scope of work so that bidders could create their bids, and the contractor could use them as a reference in creating the fire alarm system. Supp. App. at 1, lns 16-25, 2, lns 1-2.

Additionally, Grot notes that Fratto's contract allowed it 264 days to create the bid drawings and specifications for this contract, but that Grot's contract initially only granted it 270 days to complete the work required pursuant to that contract. Pl's Br. at 33. Grot relies upon this as evidence that Grot's contract could not have required it to design and install the fire alarm system. Id. Again, Grot seems to be working with the assumption that the VA expected it to duplicate work that Fratto had completed. That is not correct. The contract did not require and the VA did not expect Grot to

duplicate Fratto's efforts, but to incorporate Fratto's bid drawings, the specifications and relevant fire codes to create the ultimate product. Viewed in a more correct light, Grot had ample time to complete a task that was less burdensome than the task Fratto was asked to complete in less time.

Grot also argues that the contracting officer did not know it was a design/build contract. Pl's Br. at 27. That is because it was not a design/build contract. During the deposition the phrase "design/install" and "design/build" were used interchangeably by Grot's counsel. Yet, the two phrases signify two distinct types of contracts. As stated before, the Government is not and has never argued that this was a design/build contract.

Finally, Grot asks the Court to look to other VA contracting officers' interpretation of similar contract language in other contracts as support for its contention that its interpretation of the contract was reasonable. Pl's Br. at 37-39. Yet, the VA in this case did not interpret the contract provisions any differently than did the VA contracting officers in Kentucky and Utah, referenced by Grot in its brief. Specifically, the contracting officer at the VA in Kentucky stated, "No, this is not a Design/Build project. The project

documents, drawings and specifications, are a fully developed set of documents for the fire alarm system." Pl's App. at 103. Here, the VA interpreted the contract as requiring Grot to incorporate the bid drawings, specifications and relevant fire codes (which were required by the specifications) to create the shop drawings, which would ultimately be reviewed by the VA for conformance to the contract documents. Grot submitted shop drawings that copied the bid drawings, and did not incorporate the specification code requirements.

Thus, while the Court should not consider the parol evidence offered by Grot in construing this unambiguous contract, even if the Court does consider such evidence, the fact remains that Grot's interpretation of the contract was unreasonable.

D. Even If The Court Accepts Grot's Factual Contentions As True, They Do Not Raise A Genuine Issue Of Material Fact, But Only Establish <u>That The Contract Was Patently Ambiguous</u>

Even if the Court accepts all of Grot's factual assertions, it is apparent that these assertions avail Grot nothing, because none of those assertions, even if true, raise a genuine issue of material of fact. It is well-established that a genuine issue of material fact is a disputed fact that is sufficient to affect the outcome of the litigation. <u>See</u> <u>A.B. Chance Co. v.</u>

RTE Corp., 854 F.2d 1307, 1311 (Fed. Cir. 1988); Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988). Indeed, the Supreme Court has held that, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

None of the alleged facts upon which Grot relies create a genuine issue of material fact, because those facts would merely offer further proof that the contract was patently ambiguous. As we established in our initial motion and above, the plain language of the contract required Grot to design and install a fire alarm system. App. at 10-16. If the Court accepts all of Grot's factual contentions as true, those contentions will simply serve to dramatize the fact that there were numerous aspects of the plans and specifications that were in clear and obvious conflict with the requirement that Grot incorporate the bid drawings, the specifications and the relevant code requirements. To whatever extent Grot could argue there is an ambiguity in this contract as to whether they were required to design and install or just install the fire alarm system, that ambiguity was clearly disclosed on the “face of the papers.” Because Grot did not seek

clarification from the contracting officer prior to bidding upon the contract, Grot has lost the opportunity to assert the reasonableness of its position now.

## CONCLUSION

For these reasons, and the reasons set forth in our opening brief, we respectfully request the Court to grant our motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
By Patricia M. McCarthy
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Lindsay Williams
LINDSAY WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 353-7995
Fax: (202) 514-8624

February 22, 2006 Attorneys for Defendant