No. 03-1951C
(Judge Baskir)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GROT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON THE CLAIMS TRANSFERRED FROM THE VABCA AND UPON THE ISSUE OF WHETHER THE TERMINATION OF THE CONTRACT FOR DEFAULT WAS PROPER

PETER D. KEISLER
Assistant Attorney General
JEANNE E. DAVIDSON
Director
FRANKLIN E. WHITE, JR.
Assistant Director
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-0341
Facsimile: (202) 514-8624
Attorneys for Defendant

March 2, 2007

# TABLE OF CONTENTS

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Summary Judgment Is Appropriate Here . . . . . . . . . . . . . . . . . . 5

II. The VA Properly Terminated The Contract For Default . . . . . . 7

A. The Contracting Officer Had A Reasonable Belief That Grot Would Not Complete The Contract On . . . . . 8

B. Grot Cannot Satisfy Its Burden Of Establishing A Valid Excuse For Its Default . . . . . . . . . . . . . . . . . . . . . 13

1. Grot’s Performance Delay Was Ultimately Caused By Its Incorrect And Unreasonable Interpretation Of Its Contractual Obligations . . . 13

2. Grot’s Failure to Perform Is Not Excused By Any Late Payments From The Government . . . . 16

a. Although The VA’s Administration Of The Contract Was Not Perfect, The Minor Payment Errors Committed By The VA Do Not Constitute A Material Breach . . . . 17

b. Any Material Breaches Committed By The VA Were Cured Prior To Termination . 20

c. Because The Contract Contains A Remedy-Providing Clause That Addresses The Payment Errors Committed By The VA, Those Errors Do Not Constitute Breaches Of Contract . . 21

III. The United States Is Entitled To Summary Judgment With Regard To All Of Grot's Claims For Money Damages . . 23

A. Grot Is Not Entitled To Damages For Any Additional Work Claimed For The Alleged Re-Design Of The Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B. Late Payments Made By The VA Resulted In A Small Amount of Prompt Payment Interest . . . . . . . . . . . . . . . . 25

C. Grot Is Not Entitled To Recover Any Unpaid Progress Payments . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D. The Government Is Entitled To Summary Judgment With Regard To Whether It Had The Right To Withhold Ten Percent Of Contract Progress Payments Due To Defective Work . . . . . . . . . . . . . . . . . 27

E. The Government Is Entitled To Judgment Upon Grot's Claim Alleging Type I Differing Site Conditions Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1. Government Contractors Are Generally Responsible For Differing Site Conditions . . . . . 29

2. Grot Cannot Support Its Entitlement To An Equitable Adjustment Based Upon Type I Differing Site Conditions . . . . . . . . . . . . . . . . . . . . 31

F. Grot Is Not Entitled To Collect Damages For Lost Bonding Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

G. The Firewatch Was Part of Grot's Duties Under

The Contract And Is Not A Basis for Recovering Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# TABLE OF AUTHORITIES

## CASES

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 reh'g denied,
186 F.3d 1379 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

In re Boston Shipyard Corp.,
886 F.2d 451 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 22

Bowsher v. Merck & Co.,
460 U.S. 824 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

DWS, Inc., ASBCA No. 33245,
87-3 BCA ¶ 19,960, aff'd on recon.,
87-3 BCA ¶ 20,133 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Dalton v. Cessna Aircraft Co.,
98 F.3d 1298 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

DeKonty Corp., ASBCA No. 32140,
90-2 BCA ¶ 22,645 (1990), rev'd on other grounds,
922 F.2d 826 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Discount Co. v. United States,
554 F.2d 435 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Empire Energy Management Systems, Inc., ASBCA No. 46741,
00-1 BCA ¶ 30,636 (1999), aff'd on recon. on other grounds,
2000 WL 199754 (Feb. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Foster Constr. C.A. and Williams Bros. Co. v. United States,
435 F.2d 873 (Ct. Cl. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Grot, Inc. v. United States,
No. 03-1951C (Fed. Cl. May 15, 2006) . . . . . . . . . . . . . . . . . . . . . . 3

Hannon Elec. Co. v. United States,
31 Fed. Cl. 135 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Hoffman Construction Co. of Oregon v. United States,
40 Fed. Cl. 184 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lisbon Contractors, Inc. v. United States,
828 F.2d 759 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Malone v. United States,
849 F.2d 1441 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mega Construction Co. v. United States,
29 Fed. Cl. 396 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 36

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Morganti National, Inc. v. Untied States,
49 Fed. Cl. 110 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

Nexus Construction Co.,
91-3 BCA at 121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Nexus Construction Co., ASBCA No. 31070,
91-3 BCA ¶ 24,303 aff'd on recon. on other grounds,
92-1 BCA ¶ 24,577 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Northern Helex Co. v. United States,
455 F.2d 546 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Olin Jones Sand Co.,

225 Ct. Cl. 741 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

Olympus Corp. v. United States,
98 F.3d 1314 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Parkway Distributor & Building Services, Inc.,
89-3 BCA at 111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Parkway Distributor & Building Services, Inc., ASBCA No. 36190,
89-3 BCA ¶ 22,199 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ragonese v. United States,
120 F. Supp. 768 (Ct. Cl. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . 33

Rhen v. United States,
17 Cl. Ct. 140 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

Sermor, Inc., ASBCA Nos. 32824 et al.,
94-1 BCA ¶ 26,301 (1993), aff'd on recon.,
94-3 BCA ¶ 27,244 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Sterling Millwrights, Inc. v. United States,
26 Cl. Ct. 49 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

STG Const. Co., Inc. v. United States,
157 Ct. Cl. 409 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 32

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Textron Defense Systems v. Widnall,
143 F.3d 1465 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United Contractors v. United States,
368 F.2d 585 (Ct. Cl. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Spearin,
248 U.S. 132 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Utah Construction & Mining Co.,
384 U.S. 394 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Universal Fiberglass Corp. v. United States,
537 F.2d 393 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Weeks Dredging & Contracting, Inc. v. United States,
13 Cl. Ct. 193 (1987), aff'd,
861 F.2d 728 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . 31, 32, 33, 34

William Green Constr. Co. v. United States,
477 F.2d 930 (Ct. Cl. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Wilner v. United States,
24 F.3d 1397 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Youngdale & Sons Const. Co., Inc. v. United States,
27 Fed. Cl. at 530 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**STATUTES and REGULATIONS**

31 U.S.C. §§ 3901 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

48 C.F.R. § 52.232-27(a)(2) (1994) . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

48 C.F.R. § 52.232-5(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

48 C.F.R. § 52-236.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## MISCELLANEOUS

Cibinic & Nash, Administration of Government Contracts, . . . . . . . . . . . 22

Nash, Government Contract Changes, 6-9 (1989 & Supp. 1991) . . . . . 17

Payment Delay Claims," in Proving And Pricing Construction Claims § 11.7 (1990 & Supp. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

Restatement (Second) of Contracts § 237 (1981) . . . . . . . . . . . . . . . . . 21

Rule 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GROT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1951C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT UPON
THE CLAIMS TRANSFERRED FROM THE
VABCA AND UPON THE ISSUE OF WHETHER THE
TERMINATION OF THE CONTRACT FOR DEFAULT WAS PROPER

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that the Court grant summary judgment in its favor, because there are no genuine issues as to any material fact with regard to the six claims transferred from the Department of Veterans Affairs Board of Contract Appeals ("VABCA") and consolidated with the instant case, nor is there any material fact at issue with regard to the propriety of the Government's termination of plaintiff Grot, Inc.'s ("Grot's") contract for default. The United States is, therefore, entitled to an order granting it judgment upon all remaining issues in the case. In support of this motion, we rely upon the pleadings, Defendant's

Proposed Findings of Uncontroverted Fact (“DPFUF”), and the following memorandum of law and appendix ("App.").

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

I. Whether the termination for default of Grot’s contract was proper given Grot’s continuous and unwavering failure to understand and perform its obligations under the contract.

II. Whether, assuming that the termination for default was proper, Grot is precluded, as a matter of law, from recovering upon any of its other claims for money damages.

III. Whether Grot is precluded, as a matter of law, from recovering any damages from the allegedly additional work Grot claims was necessary to “re-design” the fire alarm system.

IV. Whether Grot is precluded, as a matter of law, from recovering any damages resulting from its purported loss of bonding capacity.

V. Whether Grot is precluded, as a matter of law, from recovering any damages resulting from the alleged differing site conditions because it failed to inspect the site before entering into the contract with the VA.

VI. Whether Grot is precluded, as a matter of law, from recovering any damages resulting from the fire watch because Grot was obligated under the contract to perform a fire watch after Grot rendered the existing fire alarm system inoperative and had failed to install new pull stations.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This case arises under the Contract Dispute Act, and involves a contract between the Department of Veterans Affairs ("VA") and Grot, Inc. for the design and installation of a fire alarm and sprinkler system at the Sam Rayburn Memorial Veterans Center located in Bonham, Texas. In its amended complaint Grot Inc. challenged the VA's decision to terminate the contract for default and requested that the Court convert the termination into a termination for the convenience of the Government.

The Government previously filed a motion for partial summary judgment in this case, which this Court granted in an order dated May 15, 2006. Grot, Inc. v. United States, No. 03-1951C (Fed. Cl. May 15, 2006)(order granting partial summary judgment). This Court found that the Government's interpretation of the contract, i.e., that the contract required Grot to design and install a fire alarm system was correct, and that Grot's

interpretation that the contract was an install only contract was incorrect and unreasonable.

Notwithstanding this Court's rejection of the fundamental premise underlying its position that the termination was wrongful, Grot continues to challenge the VA's of Grot's contract for default. This Court should sustain the VA's termination for default. Grot's utter failure to understand its responsibilities under the terms of the contract and, as a consequence, Grot's failure to render acceptable contract performance in a timely manner, provided the contracting officer a reasonable belief that Grot would not complete the contract.

Grot seeks to distract the Court's attention from its performance deficiencies that supported the VA's termination for default by asserting a myriad of claims purportedly entitling it to an equitable adjustment. These claims were largely denied by the VA's contracting officer, and were then appealed to the VABCA. The VABCA claims were later transferred to this Court and consolidated with this case. None of Grot's claims has merit, and all should be denied by the Court.

The claims transferred from the VABCA include: (1) additional costs as a result of the VA's request that Grot "re-design" the project; (2) Grot's

claim for damages owing to its lack of bonding capacity; (3) Grot's claim for an equitable adjustment owing to differing site conditions, specifically relating to the condition of the manholes, and the conduits through which Grot expected to run the electrical cables to service the fire alarm system; (4) Grot's claim for damages based on providing a fire watch after it disabled the existing fire alarm system and had not replaced it with a functioning system during construction; and (5) Grot's claims for damages for unpaid progress payments, retainage, and late payments, related to work Grot claims that it completed.

## II. Statement Of The Facts

For our statement of facts, in accordance with RCFC 56(h), we respectfully refer the Court to our proposed findings of uncontroverted fact filed with this motion.

## ARGUMENT

## I. Summary Judgment Is Appropriate Here

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c). It is "a salutary method of

disposition “designed ‘to secure the just, speedy and inexpensive determination of every action."'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). As the court of appeals emphasized in Sweats Fashions: "[T]he burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by "showing" — that is, pointing out to the [Court of Federal Claims] — that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. at 248.

There is no dispute over any fact that could affect the outcome of the remaining portions of Grot’s suit that are addressed below. Accordingly, disposition of those portions of this case through summary judgment is

appropriate. Moreover, many of the issues addressed in this motion involve contract interpretation, and contract interpretation issues are particularly well-suited for resolution by summary judgment. E.g., Textron Defense Systems v. Widnall, 143 F.3d 1465, 1468 (Fed. Cir. 1998).

II. The VA Properly Terminated The Contract For Default

The VA terminated Grot for default because it had failed to perform its agreed-to duties under the contract – it had failed to design and install a complete fire alarm/sprinkler system as set out in the contract by the time specified in the contract. Not only did Grot fail to install the fire alarm/sprinkler system, but it spent a great deal of time arguing with the VA that it had no responsibility to design any part of the system under the terms of the contract. This Court has already decided, in its May 15, 2006 order, that Grot's interpretation of the contract was not reasonable and further that the contract required Grot to "incorporate both the bid drawings and the specifications to create a complete system." Grot Order, at 10; Specifications § 13850 ¶ 1.2(B). (App. at 11).

When the Government terminates a contract for default, it bears the burden of establishing that the termination was justified. Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 765 (1987). Here, the

Government's decision to terminate Grot's contract because of Grot's failure to render timely performance is proper if it is based on the contracting officer's reasonable belief that there 'no reasonable likelihood that the [contractor] could perform the entire contract effort within the time remaining for contract performance.'" Morganti National, Inc. v. Untied States, 49 Fed. Cl. 110, 129 (2001) (citing Lisbon Contractors, 828 F.2d at 765 (alteration in original)(other citations omitted). As we will demonstrate, the contracting officer's belief that Grot would never successfully complete the contract was completely reasonable, and is supported by this Court's May 15, 2006 Order as well as Grot's actions in failing to make timely or adequate performance, and refusal to accept direction from the VA.

### A. The Contracting Officer Had A Reasonable Belief That Grot Would Not Complete The Contract On Time

The VA terminated the contract because Grot was failing to make sufficient progress toward contract completion, and because Grot did not appear to understand its responsibilities under the contract, and would not comply with the contracting officer's directives. DPFUF ¶ 18.[1]

[1] "DPFUF ¶ __" refers to defendant's separately-filed proposed findings of uncontroverted fact.

It is undisputed that Grot continually refused to provide a design for the project despite numerous requests and repeated directives from the VA to do so. Rather than consider the possibility that its interpretation of the contract was not correct, Grot instead continually argued with the VA about its responsibilities under the contract. As early as June 25, 2002, Grot responded to the VA's concerns about the lack of design by stating: "It is the responsibility of the Engineering firm for the project to design a workable system which meets all applicable codes." App. 24-25. Indeed, Clyde Bell, Grot's project manager succinctly summed up Grot's attitude throughout the contract when he offered the following testimony at his deposition:

> A. Well, when we bid the job –
> Q. Uh-huh.
> A. – you know, it was not a design-build job.
> Q. Okay.
> A. You know, we bid it as a – if it was a design-build job from the get-go, we would have threw it in the trash. We don't do that.
> Q. Okay.
> A. Period. We don't.

DPFUF ¶ 10.

On August 23, 2002, the contracting officer issued a specific directive to Grot, quoting the contracting officer's technical representative, ("COTR"),

> After careful review, I, Rickey Kirk, the COTR, have concluded that this is a design and installation project and that Grot, Inc., must design and install a complete fire alarm system in accordance with contract plans and specifications as well as the NFPA Codes.

DPFUF ¶ 4.

Grot responded to this clear instruction by repeating its misunderstanding of the contract and specifications, and stating its unaltered refusal to provide any design work under this contract. DPFUF ¶¶ 5-6.

On July 23, 2003, after another year of fruitless correspondence and continual lack of cooperation from Grot, the VA issued a show cause letter. DPFUF ¶ 16. Grot's response confirmed the VA's belief that it should terminate Grot for default. Grot made no effort to address the shortcomings identified by the VA in the show cause letter. Instead, it continued to argue that the VA had misinterpreted the specifications and the contract, and made it clear that the VA could expect nothing but continued argument and lack of performance if Grot continued on the contract. DPFUF ¶ 17.

It is undisputed that Grot failed to complete the contract by either the original contract deadline, November 10, 2002, or the extended contract

deadline, June 23, 2003. Moreover, when the VA tested the alarm system on July 31 and August 1, 2003, there were numerous defects revealed in the work Grot portrayed as complete. DPFUF ¶¶ 45-49. For example, it is undisputed that the elevator recall system did not function properly. DPFUF ¶¶ 52-53. An entire building, Building 1, was operating on a temporary fire alarm system, necessitating a fire watch to ensure the safety of employees and patients. DPFUF ¶ 53.

Nevertheless, Grot continued to argue that it had no design responsibilities, and blamed the VA for providing it with faulty specifications. In short, after missing two contract completion deadlines, and with the contract estimated to be only 59 percent complete, Grot was still arguing about the nature and extent of its responsibilities, rather than demonstrating any intention or capability to substantively address the VA's concerns and complete the work remaining under the contract. DPFUF ¶ 17. Grot's response to the VA's show cause letter supports the VA's decision to terminate the contract for default. If a contractor fails to reassure the Government that it would take the necessary actions to render adequate contract performance, the contracting officer is justified in terminating the contract for default. Hannon Elec. Co. v. United States, 31

Fed. Cl. 135, 143 (1994). A contractor's response that is argumentative, rather than indicating the contractor's intent to resolve the Government's concerns, is inadequate, and supports the reasonableness of the contracting officer's decision to terminate. Id.

Additionally, the contracting officer is entitled to take into account the excuses offered by the contractor for its failure to meet the contract deadlines. Morganti, 49 Fed. Cl. at 130. This includes the contractor's inability to meet its own representations about when it will complete the job. Id. Here, after it failed to meet the original contract completion deadline of November 10, 2002, Grot submitted a revised schedule that indicated a completion date of June 23, 2003. DPFUF ¶ 12. Clearly, Grot did not meet that deadline. Indeed, 17 months into what started as a nine-month project, Grot continued to blame its failure to perform upon the VA, the supposedly "defective specifications" it had been provided, and upon the VA's alleged failure to provide Grot with design assistance. DPFUF ¶ 17. Given this history, the contracting officer was well within his discretion to terminate the contract for default. Hannon, 31 Fed. Cl. at 143; Discount Co. v. United States, 554 F.2d 435, 441 (1977) (a demonstrated lack of diligence indicating that the contractor will not timely perform the contract is

proper grounds for terminating the contract for default); Universal Fiberglass Corp. v. United States, 537 F.2d 393, 398 (1976) (failure to make progress and failure to provide an adequate response to a cure notice warranted termination of the contract for default.)

B. Grot Cannot Satisfy Its Burden Of Establishing A Valid Excuse For Its Default

Grot has the burden of proof with regard to excusable delay. E.g., Wilner v. United States, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (in banc). In order to show that excusable delay occurred, Grot must demonstrate that events for which it was not legally responsible affected the critical path, delaying completion of the project. E.g., Wilner v. United States, 24 F.3d at 1399 n.5; Hoffman Construction Co. of Oregon v. United States, 40 Fed. Cl. 184, 193, 197-99 (1998) (citing cases).

### 1. Grot's Performance Delay Was Ultimately Caused By Its Incorrect And Unreasonable Interpretation Of Its Contractual Obligations

Here, Grot was clearly legally responsible for the delay. It cannot be disputed that Grot failed to perform its obligations under the contract. This Court has already found that Grot unreasonably misinterpreted the contract, and failed to understand that it was responsible for the design of the project. Because Grot never developed a design for the project, it left itself unable to perform the contract without the constant involvement of the VA. The lack of design led Grot to lack direction in its construction and is what led to much of the delay in performance and to Grot's repeated requests to meet with VA personnel. Moreover, part of what the Government contracted for in this solicitation was the expertise and capability of the successful bidder to design the fire alarm/sprinkler system such that the VA could know that it was being done according to the proper standards.

It is not disputed that at the time of default, Grot had not produced design drawings that incorporated the contract specifications and the fire code requirements. DPFUF ¶ 21. Instead, as this Court held previously, Grot attempted to install the system exactly as shown upon the bid

drawings, ignoring the requirements of the specifications, and without the benefit of a NICET level III fire protection engineer to assist in ensuring compliance with the applicable fire code as Grot was also obligated to do. DPFUF ¶ 22. The delay that Grot argues was caused by the VA's refusal to meet with it or to answer its questions was the product of Grot's failure ab initio to provide a design of the system. Essentially, Grot hampered itself to the point of paralysis in the performance of the contract by failing to produce the kind of comprehensive drawings this Court held that the contract required. DPFUF ¶ 20. Given the myriad requirements of the contract specifications, the fire code, and the bid drawings, it is unsurprising that Grot was frequently at a loss to know how to proceed given the fact that it had never made any effort to synthesize the various requirements into a coherent and comprehensive set of drawings that it could use. DPFUF ¶ 20.

Thus, Grot's failure to design the system affected all aspects and is the root cause of all the delay. That, and not the alleged refusal of the VA to answer repeated questions, explains why completion of the project was delayed. And why the VA was justified in concluding that Grot would never complete the project satisfactorily warranting a termination of the contract

for default. Indeed, shortly before the VA issued the termination letter, Grot persisted in its failure to understand the job it had contracted to do, and continued to complain that it had to "redesign" the project, rather than showing any understanding that it was finally taking what should have been its first step under the contract. Given that the Court has already held that Grot had the responsibility under the contract to produce design drawings, any delay resulting from a lack of drawings does not constitute excusable delay. Wilner v. United States, 24 F.3d at 1399 n.5.

2. Grot's Failure to Perform Is Not Excused By Any Late Payments From The Government

Grot also challenges the termination for default by arguing that the Government failed to make timely payments to which the contractor was entitled and that this constituted a material breach of the contract. Grot cannot establish that some temporarily delayed payments from the VA constituted a breach of the contract, much less a material breach, nor can Grot establish that its failure to perform was a result of the late payments. Its claim must, therefore fail, and the United States is entitled to summary judgment upon this issue. See, e.g., Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1276-77, reh'g denied, 186 F.3d 1379, 1380-81

(Fed. Cir. 1999); Malone v. United States, 849 F.2d 1441, 1445-46 (Fed. Cir. 1988).

a. Although The VA's Administration Of The Contract Was Not Perfect, The Minor Payment Errors Committed By The VA Do Not Constitute A Material Breach

Evaluating whether the Government's failure to pay the contractor constitutes a material breach involves comparing the contract price to the amount the Government failed to pay. E.g., Nexus Construction Co., ASBCA No. 31070, 91-3 BCA ¶ 24,303 at 121,462, aff'd on recon. on other grounds, 92-1 BCA ¶ 24,577 (1991). However, when performing this analysis, the only amounts that can be considered as funds not paid by the Government are those that were "undisputably due and owing under the contract." DWS, Inc., ASBCA No. 33245, 87-3 BCA ¶ 19,960 at 101,050 (citing cases), aff'd on recon., 87-3 BCA ¶ 20,133 at 101,925 (1987); accord, e.g., Empire Energy Management Systems, Inc., ASBCA No. 46741, 00-1 BCA ¶ 30,636 (1999), aff'd on recon. on other grounds, 2000 WL 199754 (Feb. 17, 2000); Nexus Construction Co., 91-3 BCA at 121,460-63; DeKonty Corp., ASBCA No. 32140, 90-2 BCA ¶ 22,645 at 113,586 (1990) (on mot. for recon.), rev'd on other grounds, 922 F.2d 826 (Fed. Cir. 1991); Parkway Distributor & Building Services, Inc., ASBCA No.

36190, 89-3 BCA ¶ 22,199 at 111,674 (1989); Nash, Government Contract Changes, 6-9 (1989 & Supp. 1991); see also Sterling Millwrights, Inc. v. United States, 26 Cl. Ct. 49, 89-91 (1992). The Government has a duty to pay a contractor only those funds to which the contractor has fully established its entitlement, not those about which there is a dispute. As the First Circuit has explained:

> A different decision would make government contracts truly unworkable, allowing contractors to demand immediate reimbursement of cost overruns, even if the government disagrees with the claim. There would be no meaning to default or dispute clauses that define procedures in case of disputes.

In re Boston Shipyard Corp., 886 F.2d 451, 458 (1st Cir. 1989); accord id. at 457 n.4.

Although the VA was occasionally slow to make progress payments to Grot, the United States is entitled to summary judgment upon this issue because the modest, short-term delays in payment of amounts to which Grot was undisputably entitled[2] do not constitute a material breach. See

---

[2] Grot asserts that it should have been paid for work that it purports to have completed. Because the Government did not accept any request for progress payments after the thirteenth, the dollar amounts associated with the later requests cannot be considered as part of a material breach analysis.

Northern Helex Co. v. United States, 455 F.2d 546 (Ct. Cl. 1972) (material breach occurs when Government fails "to pay a large amount over an extended period of time" or when there is "a total failure to pay over many months"); In re Boston Shipyard Corp., 886 F.2d at 457-58 & n.4. As several commentators have noted, "Mere delayed payment is not enough" to constitute a material breach. "[A] contractor would have to demonstrate that the government had withheld payment, in significant amounts, without right for a substantial time." W. Robert Buxton et al., "Payment Delay Claims," in Proving And Pricing Construction Claims § 11.7 at 333 (1990 & Supp. 1994).

Prior to the termination for default, Grot submitted 18 applications for progress payments. The VA made 13 progress payments in response to these applications.[3] DPFUF ¶¶ 31, 34. Pursuant to FAR § 52.232-27, “Prompt Payment For Construction Contracts” (Apr 1989), which was incorporated by reference into the contract, DPFUF ¶ 21, each payment was due within 30 days of the Government's receipt of a "proper invoice"[4]

[3] These consisted of Progress Payments 1 through 13. In addition, Grot submitted pay applications on May 1, 2003, May 30, 2003, June 30, 2003, July 21, 2003, and March 18, 2004. DPFUF ¶ 34.

[4] A "proper invoice" is one which meets the requirements stated in the clause. 48 C.F.R. § 52.232-27(a)(2) (1994); see generally Cibinic &

from Grot. 48 C.F.R. § 52.232-27(a)(1)(i)(A) (1994). Unfortunately, nine of the progress payments were made late, resulting in prompt payment interest of $1,953.52. DPFUF ¶ 33.

These progress payments were only late by a modest amount of time, however — on average, just 41 days. DPFUF ¶ 32. The largest such payment was Progress Payment Seven, in which the VA paid Grot $102,712.00. Id. This was about 14.6 percent of the then-current contract price. Moreover, the remaining progress payments were smaller; many were much smaller. The average amount paid by the VA to Grot as a progress payment was $44,806.00 which constitutes only six percent of the contract price as awarded. These short delays in payment of relatively modest amounts do not constitute a material breach. E.g., Northern Helex Co. v. United States, 455 F.2d at 550.[5] The United States is entitled to summary judgment upon this issue.

---

Nash, Administration of Government Contracts, supra, at 1148-51.

[5] Grot does not claim, either in the amended complaint or in any of the claims transferred from the VABCA, that its failure to perform was a result of receiving late payments. Nor do the facts support any claim for excusable delay caused by the brief delays in the VA's making progress payments.

b. Any Material Breaches Committed By The VA Were Cured Prior To Termination

All of these alleged breaches had been cured by the date of termination. As of June 19, 2003, Grot had received Progress Payments 1 through 13, with most paid within about two months. Once the VA cured the alleged breaches for late payment of these progress payments, Grot could no longer rely upon these late payments as a defense to the termination for default. Sermor, Inc., ASBCA Nos. 32824 et al., 94-1 BCA ¶ 26,301 at 130,822 (1993), aff'd on recon., 94-3 BCA ¶ 27,244 (1994); Parkway Distributor & Building Services, Inc., 89-3 BCA at 111,674; Restatement (Second) of Contracts § 237 & cmt. b & illus. 5 (1981).

c. Because The Contract Contains A Remedy-Providing Clause That Addresses The Payment Errors Committed By The VA, Those Errors Do Not Constitute Breaches Of Contract

In any event, the minor payment errors committed by the VA do not constitute any sort of contract breach, material or otherwise. As noted above, this contract incorporated by reference FAR § 52.232-27, "Prompt Payment For Construction Contracts" (Apr 1989), which provides for the payment of interest by the United States when the Government fails to

timely pay an undisputed invoice.[6] DPFUF ¶ 21. Thus, the parties contemplated that payments from the VA might be late, and the contract provided a remedy in case this occurred. See In re Boston Shipyard Corp., 886 F.2d at 457 (presence of changes clause in contract shows parties "clearly anticipated that changes would need to be made").

It is well-established that when a clause in a Government contract provides a remedy for something that would otherwise qualify as a breach, the remedy-providing clause governs the contractor's rights and the contractor cannot pursue a breach claim in addition to — or in lieu of — the remedy provided by the contract. E.g., United States v. Utah Construction & Mining Co., 384 U.S. 394, 401-05 & n.6 (1966); Mega Construction Co. v. United States, 29 Fed. Cl. 396, 414-16 & n.11 (1993) (citing cases); Cibinic & Nash, Administration of Government Contracts, at 692, 934-40. This analysis applies here with full force. The VA's failure to comply perfectly with the contract's payment provisions did not give rise to a

---

[6] Payment of this interest is pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901 et seq. See Sterling Millwrights, Inc. v. United States, 26 Cl. Ct. at 90 n.15. "The payment of interest is usually considered the most straightforward way to make whole a construction contractor who has been denied timely payment of costs." Buxton et al., "Payment Delay Claims," in Proving And Pricing Construction Claims, § 11.9; see also id. § 11.10.

breach claim. Grot's sole remedy for the VA's failure to pay undisputed amounts on time is interest, calculated pursuant to the Prompt Payment Act and FAR § 52.232-27. The contracting officer agreed, in his final decision, to pay Grot the prompt payment interest upon all undisputed requests for payment. DPFUF ¶¶ 32, 33.

For all these reasons, the VA did not materially breach the contract. The United States is entitled to summary judgment upon this issue.

## III. The United States Is Entitled To Summary Judgment With Regard To All Of Grot's Claims For Money Damages

Given that we have established above that the contract was properly terminated for default, Grot should be precluded from recovering upon claims that are premised upon Grot's erroneous interpretation of its contract responsibilities, and Grot's allegations that the Government somehow acted improperly in terminating the contract. Moreover, independent of the termination, none of Grot's claims for money damages has merit and all should be rejected by the Court.

Grot argues that the Government:

(1) failed to make timely and complete progress payments to Grot,

(2) failed to timely process requests for payment,

(3) failed to pay Grot "for the cost of the purported "re-design" of the project, and

(4) withheld funds allegedly due to Grot.

As explained below in the remainder of this brief, the United States is entitled to summary judgment upon all these issues.

A. Grot Is Not Entitled To Damages For Any Additional Work Claimed For The Alleged Re-Design Of The Project

Grot's claim for additional compensation based upon the purportedly additional work required to "redesign" the project must be rejected because "design" of the project was included in Grot's responsibilities under the contract from the very beginning. Grot was not required to re-design the project, it was required by the original terms of the contract to prepare a design for the fire alarm/sprinkler system that incorporated the bid drawings provided by Fratto, as well as the contract specifications and the prevailing fire code. The Court's May 15, 2006, order establishes this beyond argument. DPFUF ¶ 20.

As we established above, Grot continually refused to provide a design for the project despite numerous requests and repeated directives from the VA to do so.

If Grot believed in good faith that the VA was requesting work beyond the scope of the contract, it could have chosen to perform the work and seek an equitable adjustment at the completion of the contract. Instead, Grot delayed progress of the project by continually arguing with the VA, and requesting the VA to contribute the very design guidance it was being paid to provide under the contract. DPFUF ¶ 17.

For these reasons, the cost of any additional work that may have resulted from Grot's failure to understand its design responsibility must be borne by Grot, not the Government.

B. Late Payments Made By The VA Resulted In A Small Amount of Prompt Payment Interest

As discussed above, prior to the termination for default, Grot submitted 18 applications for progress payments. The VA made 13 progress payments in response to these applications.[7] DPFUF ¶¶ 31, 34. Pursuant to FAR § 52.232-27, "Prompt Payment For Construction Contracts" (Apr 1989), which was incorporated by reference into the contract, DPFUF ¶ 21, each payment was due within 30 days of the

[7] These consisted of Progress Payments 1 through 13. In addition, Grot submitted pay applications on May 1, 2003, May 30, 2003, June 30, 2003, July 21, 2003, and March 18, 2004. DPFUF ¶ 34.

Government's receipt of a "proper invoice"[8] from Grot. 48 C.F.R. § 52.232-27(a)(1)(i)(A) (1994). Unfortunately, nine of the progress payments were made late, resulting in prompt payment interest of $1,953.52. DPFUF ¶ 33. As noted above, in his final decision, the contracting officer agreed to pay $1,953.52 for Prompt Payment Act interest owed upon all undisputed requests for payment.

C. Grot Is Not Entitled To Recover Any Unpaid Progress Payments

Grot claims, without support, that it is entitled to payment upon its last five requests for progress payments. DPFUF ¶ 34, App. 185-186. This work was never certified by the COTR as having been completed, resulting in the payments not being rendered. DPFUF ¶ 34, App. 193. It is undisputed that the work that Grot claimed was complete was deficient and did not function in accordance with the contract specifications. DPFUF ¶¶ 49-57. Under the terms of the contract, the Government is not obligated to pay for deficient work. DPFUF ¶ 23. Nor, as established above, is Grot entitled to recover any prompt payment interest upon these payments

[8] A "proper invoice" is one which meets the requirements stated in the clause. 48 C.F.R. § 52.232-27(a)(2) (1994); see generally Cibinic & Nash, Administration of Government Contracts, supra, at 1148-51.

because the work was never accepted by the VA. See Section II.B.2.a, above.

As established above, in Section II of our brief, the VA properly terminated this contract for default based upon Grot's total failure to understand its obligations under the contract and its consequent failure to render acceptable performance. Given that the termination for default was proper, Grot cannot establish any right to recover additional monies under the contract for work that was not accepted by the Government, and its claim should be denied.

D. The Government Is Entitled To Summary Judgment With Regard To Whether It Had The Right To Withhold Ten Percent Of Contract Progress Payments Due To Defective Work

Grot contends that the Government had no right to withhold ten percent of the amount requested by Grot for progress payments. Grot is mistaken. The Government had the contractual right to withhold more than ten percent. The Government is entitled to summary judgment upon this issue.

Two subparts of FAR standard clause 52.232-5, "Payments under Fixed-Price Construction Contracts" (Apr 1989), are relevant with regard to this issue. Subpart (e), upon which Grot relies, states:

> If the Contracting Officer finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contracting Officer shall authorize payment to be made in full. However, if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved.

48 C.F.R. § 52.232-5(e). Subpart (b) states: "The Government shall make progress payments monthly as the work proceeds . . . on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer." 48 C.F.R. § 52.232-5(b); see also DPFUF ¶ 20.

Thus, the Government possessed right to retain up to ten percent of the dollar value of work that had been properly performed by Grot, if Grot's progress on the job was unsatisfactory. The Government also possessed the right to withhold payment for work that had been improperly performed by Grot. DPFUF ¶ 23.

Here, Grot's performance was clearly unsatisfactory, considering that Grot failed to meet two contract completion deadlines. DPFUF ¶¶ 11, 12, 16. In addition, contrary to Grot's position, the Government possessed the contractual right to withhold up to 100 percent of the amount Grot

requested for work that had not been performed properly. DPFUF ¶ 24. Given the facts that Grot failed to complete the contract by either the initial or extended contract completion deadline, the VA had sufficient basis to exercise its retainage rights, and is entitled to summary judgment upon this issue.

### E. The Government Is Entitled To Judgment Upon Grot's Claim Alleging Type I Differing Site Conditions Claims

Grot alleges that it encountered "differing site conditions" at the VA jobsite, specifically that there were not pre-existing conduits available for Grot to use in installing the continuous network loop around the VA hospital campus. App. 176. Grot asserts that this lack of conduit in the manholes constituted a "Type-1" differing site condition." App. 176-177.

#### 1. Government Contractors Are Generally Responsible For Differing Site Conditions

Generally, a contractor, such as Grot, who performs pursuant to a fixed-price contract, assumes the risk of all problems that arise during contract performance, as well as all increased costs resulting from those problems. The United States Supreme Court has said: "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because

unforeseen difficulties are encountered." United States v. Spearin, 248 U.S. 132, 136 (1918); accord Bowsher v. Merck & Co., 460 U.S. 824, 826 n.1 (1983) (holding that fixed-price contractor bears risk of unforeseen difficulties); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996) (same).

The differing site conditions clause, 48 C.F.R. § 52-236.2, relieves the contractor of some, but not all, of this risk. The differing site conditions clause serves "to shift the risk of adverse subsurface or latent physical condition from the contractor, who normally bears such risk under a fixed-price contract, to the government." Olympus Corp. v. United States, 98 F.3d 1314, 1316 (Fed. Cir. 1996). "[W]ithout this clause, contractors would inflate their bid prices to account for the costs of investigating unknown conditions. . . ." Id. at 1316. The Court of Claims observed: "Whenever dependable information on the subsurface is unavailable, bidders will . . . include in their bids a contingency element to cover the risk." Foster Constr. C.A. and Williams Bros. Co. v. United States, 435 F.2d 873, 887 (Ct. Cl. 1970). By including a differing site conditions clause in its contracts, "[t]he Government benefits from more accurate bidding, without inflation for risks which may not eventuate." Id. at 614, 435 F.2d at 887.

However, the differing site conditions clause does not "shift the risk of all unanticipated adverse site conditions from the contractor to the government. Rather, the government bears only those risks that encourage 'more accurate bidding.'" Olympus Corp., 98 F.3d at 1317 (quoting Foster Constr., 435 F.2d at 887). In particular, the differing site conditions clause imposes upon the Government only the risk that the contract's affirmative indications regarding subsurface conditions are inaccurate (Type I) or the risk that the site's subsurface conditions are unforeseeable (Type II).

2. Grot Cannot Support Its Entitlement To An Equitable Adjustment Based Upon Type I Differing Site Conditions

To establish entitlement to an equitable adjustment based upon a Type I differing site condition, Grot bears the burden of establishing, by a preponderance of the evidence, each of the following six elements: (1) that the contract documents affirmatively indicated or represented the subsurface conditions which form the basis of Grot's claim; (2) that Grot acted as a reasonably prudent contractor in interpreting the contract documents; (3) that Grot reasonably relied upon the indications of subsurface conditions in the contract; (4) that the subsurface conditions actually encountered within the contract site area differed materially from

the subsurface conditions indicated in the same contract area; (5) that the actual subsurface conditions encountered were reasonably unforeseeable; and (6) that Grot's claimed excess costs are solely attributable to the materially different subsurface conditions within the contract site. Weeks Dredging & Contracting, Inc. v. United States, 13 Cl. Ct. 193, 218 (1987), aff'd, 861 F.2d 728 (Fed. Cir. 1988). Accord Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed. Cir. 1987).

Grot is not entitled to recover based upon a Type I differing site condition because it did not act as a reasonably prudent contractor when it neglected to make a site visit prior to bidding on the contract. Additionally, the contract provided specifications for constructing conduit necessary to contain the electrical cables that would service the fire alarm system, thereby alerting Grot to the likelihood that it would have to construct some conduit. DPFUF ¶ 29. The contract makes no representations concerning the status or contents of the manholes, thus, Grot cannot have reasonably have relied upon the contract to reach any conclusions about the manholes. It is settled law that a contractor is not entitled to an equitable adjustment under a Type I differing site condition theory if the contract is silent regarding the subsurface condition encountered. Youngdale & Sons

Const. Co., Inc. v. United States, 27 Fed. Cl. at 530; Weeks Dredging & Contracting, Inc. v. United States, 13 Cl. Ct. at 219; STG Const. Co., Inc. v. United States, 157 Ct. Cl. 409 (1962).[9] Where the contract does not contain affirmative (either positive or negative) representations regarding the presence of the subsurface condition purportedly relied upon by the contractor, the Government is not liable. Id.

Further, Grot cannot show that the conditions actually encountered were not reasonably foreseeable based upon all the information available to the contractor at the time of bidding, that it acted as a reasonably prudent contractor in interpreting the contract drawings, or that it reasonably relied upon the indications of conduit or manholes in the contract. These elements of the plaintiff's burden of demonstrating a differing site condition focus upon "the reasonableness of the plaintiff's conduct in interpreting the contract documents, and utilizing that information in order to arrive at its bid." Weeks v. United States, 13 Cl. Ct.

[9] The differing site conditions clause cannot be invoked "if the plans and specifications do not 'show' or 'indicate' anything about the alleged unforeseen condition, i.e., if they say 'nothing one way or the other about the subsurface condition.'" United Contractors v. United States, 368 F.2d 585, 595 (Ct. Cl. 1966)(citing Ragonese v. United States, 120 F. Supp. 768, 769 (Ct. Cl. 1954)).

at 224. These elements require consideration of the reasonableness of the "plaintiff's overall preaward conduct." Weeks, 13 Cl. Ct. at 224.

Grot failed to make any site visit before submitting its bid for the fire alarm installation project. Nor did Grot participate in the pre-bid site conference held for contractors by the VA on July 20, 2001. DPFUF ¶¶ 36-39. In addition, Grot was specifically invited and encouraged to conduct its own site visit to walk the property and observe all physical conditions relevant to its proposal. DPFUF ¶ 39.

These elements require consideration of "all the information--including any reasonably discoverable outside information--which was available to the contractor at the time of bidding," and also depend to a large extent "upon the reasonableness of its prebid site investigation." Weeks v. United States, 13 Cl. Ct. at 236. Where no reasonable site investigation has been made, a claim for differing site conditions is properly dismissed. Id. at 238. Here, Grot made no pre-bid site investigation at all, and that is fatal to its claim.

F. Grot Is Not Entitled To Collect Damages For Lost Bonding Capacity

Grot claims that it has been “severely crippled” by its loss of bonding capacity, as a result of its bond on the contract at issue not being released

pending the outcome of this litigation. App. at 185. Even assuming that Grot's allegations on this subject are correct, it is still not entitled to recover any damages for any inability to bid on or be awarded other jobs. This Court has clearly and consistently held that a contractor may not recover damages which "involve plaintiff's ability to obtain other work." Olin Jones Sand Co., 225 Ct. Cl. 741, 743 (1980). In Olin Jones, the plaintiff attempted to recover damages based upon its representation that the Government had impaired its ability to obtain other work that required the company to issue a bond. Id., at 742. The Court explicitly held that the plaintiff could not recover damages that allegedly resulted when,

> because of defendant's [the Government's] actions, the bonding company or others refused to issue bonds on behalf of plaintiff other contracts or new work. Even if proven, these damages would be too remote and speculative to be recoverable.

Id., at 744.

Similarly, this Court held in William Green Constr. Co. v. United States, 477 F.2d 930 (Ct. Cl. 1973), that "there would be no recovery for general loss of business, the claimed loss of the entire [company's] net worth, and losses and the non-federal [contracts] – such damages are all deemed too remote and consequential." This theme was repeated in Rhen

v. United States, 17 Cl. Ct. 140, 143-44 (1989), when the Court dealt with a claim from a contractor who had been terminated for default, and alleged that its lack of ability to obtain future bonding resulted in it not being able to obtain other profitable contracts, and that the Government should be ordered to compensate it for its lost business opportunities. The Court rejected this claim outright, concluding that the claim was for "general loss of business as a result of the default termination." Id. Here, Grot claims that its lack of bonding capacity has resulted in it not being able to find other profit-generating work, leaving it with an allegedly large operating loss. This is, in substance, the identical claim to that universally rejected in this Court as too remote, consequential and speculative, and thus, even assuming for purposes of this motion that Grot's bonding capacity has been negatively affected, Grot's claim is one upon which recovery is unavailable as a matter of law. Mega Constr. Co. v. United States, 29 Fed. Cl. 396, 473-474 (1993).

### G. The Firewatch Was Part of Grot's Duties Under The Contract And Is Not A Basis for Recovering Damages

It is undisputed that the contract required Grot to institute a fire watch "all times any normally protected area is disconnected from a fire alarm system as a result of the project work." DPFUF ¶¶ 27, 41.

It is also undisputed that Grot disconnected the fire alarm system in Building 1, and failed to connect the temporary pull stations. DPFUF ¶¶ 40, 42. Accordingly, Grot agreed to institute a fire watch in Building 1. DPFUF ¶ 42.

On July 20, 2003, the VA Safety Manager, the COTR, and others from the Veteran's Administration Medical Center ("VAMC") Facilities Management Service conducted an inspection of Building Nos. 1,2,3,24, and 29. DPFUF ¶ 45. This inspection revealed 42 deficiencies in 3 buildings, including that the elevator recall functions were not operating, the smoke doors did not function in all areas, and no tamper and flow switches were connected to the system. DPFUF ¶ 46.

As a result of that inspection, the contracting officer directed Grot, on July 22, 2003, to establish a fire watch for Building Nos. 1,2,3, 24, and 19. DPFUF ¶ 47.

On July 23, 2003, the VA faxed a list of six deficiencies to Siemens that needed to be corrected before the fire watch could be lifted. DPFUF ¶ 49. Siemens acknowledged receiving the deficiency notice and, on July 24, 2003, informed Grot that the deficiencies were "being worked on." DPFUF ¶ 50.

Grot notified the contracting officer that the fire alarm system was fully activated with the exception of Building No. 1, however, on July 28, 2003, the contracting officer directed Grot that the fire alarm system should be “fully operational” instead of merely “fully activated.” DPFUF ¶ 51. “Fully operational” was defined as “‘All major fire systems in Buildings 1,2,3, 24, and 29 must be in full operation and provide complete protection for our patients and employees in accordance with the requirements of Contract V549C-609-2 and the NFPA. Id. The contracting officer also directed Grot to correct six additional deficiencies that had been identified with the fire alarm system. DPFUF ¶ 52.

On July 29, 2003, Grot sent a letter to the contracting officer representing that the fire alarm system was “fully operational” but also acknowledging that Grot was “working diligently to address the deficiency list,” thereby indicating that Grot had not resolved all issues identified by the VA. DPFUF ¶ 53.

Another pre-test was conducted on July 31-August 1, 2003, during which it was determined that there remained numerous deficiencies, that were acknowledged by Grot as matters needing remediation. DPFUF ¶¶ 54-57. Specifically, Grot acknowledged that Building 1 remained on a

temporary alarm system, that the elevator recall tests failed, smoke detectors had not been installed in any of the elevator shafts, and some flow switches could not be tested to send an alarm it could not be determined how the sprinkler piping had been installed. DPFUF ¶ 57.

Based upon these results, the COTR directed Grot to continue the fire watch for Buildings 1, 2, 3, 24, and 29. DPFUF ¶ 58. Despite the contract provision clearly obligating Grot to institute a fire watch at all times any building lacked adequate fire protection, Grot told the VA that it would end the fire watch as of August 1, 2003, based on Grot's opinion that it was no longer necessary. DPFUF ¶ 59.

Instead of abiding by the COTR's directives, Grot, once again, chose to argue with the VA, refused to cooperate, and failed to perform tasks clearly required of it under the terms of the contract. Shortly thereafter, on August 7, 2003, the contracting officer terminated Grot from the contract for default. DPFUF ¶ 60.

It is axiomatic that a contractor is not entitled to an equitable adjustment for performing tasks required under the terms of a contract. Here, it is undisputed that the contract obligated Grot to provide a fire watch "all times any normally protected areas is disconnected from a fire

alarm system as a result of project work." DPFUF ¶ 41. Grot acknowledged that Building 1 remained on a temporary system, and further acknowledged numerous other deficiencies in the fire alarm systems it installed, thereby rendering the buildings disconnected from a functioning fire alarm system, and triggering the need for a fire watch. DPFUF ¶ 41. Grot must bear the costs of its own failure to provide adequate fire protection, and the United States is entitled to summary judgment upon this issue.

## CONCLUSION

For the reasons stated above, defendant respectfully requests the Court to grant defendant's motion for summary judgment and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 616-0341
Fax: (202) 514-8624

March 2, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 2nd day of March, 2007, I caused to be served electronically a copy of " DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON THE CLAIMS TRANSFERRED FROM THE VABCA, AND ON THE ISSUE OF WHETHER THE TERMINATION OF THE CONTRACT FOR DEFAULT WAS PROPER" to:

ANDREW KILPATRICK, JR.
Gore, Kilpatrick, Purdie, Metz & Adcock, PLLC
P.O. Drawer 2000
Ridgeland, Mississippi 39158

______Joan M. Stentiford__________