Department of Ve●ans Affairs

# VHA FA.. TRANSMITTAL

This transmission is intended only for the use of the person or office to whom it is addressed and may contain information that is privileged, confidential or protected by law.

All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited.

If you have received this communication in error, please notify us immediately at the telephone number shown below. Thank you.




| | | | |
|---|---|---|---|
| TO: Charles Ballard | FAX NUMBER: ☐FTS ☐COMMERCIAL 71009 | DATE: 6/6/03 | No. PAGES ATTACHED: 4 |
| SUBJECT: Thirteenth Progress Payment to Grot, INC. (Replace Fire Alarm System Phase 1) | | | |
| FROM: Cookie / Rick Kirk | TELEPHONE NUMBER: ☐FTS ☐COMMERCIAL | | |

VA FORM MAY 1993 10-0114B



G- 00642

Charles,

Please sign and then send to John Mraz for his signature.

thanks
Cookie / Rick Kirk

# REQUEST FOR ADDITIONAL COMPENSATION

# OF

# GROT INCORPORATED

**CAMPUS-WIDE FIRE ALARM**

**PROJECT NUMBER 099-108**

**SAM RAYBURN MEMORIAL VETERANS EAST NINTH**

**BONHAM, TEXAS**

**CONTRACT NUMBER GS-35F-0358L**

Submitted by:

Andrew J. Kilpatrick, Jr.
Gore, Kilpatrick, Purdie, Metz & Adcock, PLLC
Post Office Drawer 2900
Ridgeland, Mississippi 39158
Telephone: 601.957.1595
Facsimile: 601.899.9171
E-mail: akilpatrick@hgglaw.com
Counsel for Grot, Incorporated

**EXHIBIT "A"**

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Exhibit Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The VA directs Grot to redesign the project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Differing site conditions - lack of conduit in manholes . . . . . . . . . . . . . . . . . . . . . . . . 10

Additional cost incurred as a result of the Contracting Officer's directive to proceed with a "fire watch" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Failure to make prompt payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Grot was severally crippled by loss of bonding capacity . . . . . . . . . . . . . . . . . . . . . . . 19

Recapitulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

The VA warrants the adequacy of plans and specifications . . . . . . . . . . . . . . . . . . . . . 21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certification

## INDEX OF EXHIBITS

Exhibit 1 - First two pages of the original Solicitation, Offer and Award . . . . . . . . . . . . 1

Exhibit 2 - Contracting officer's transmittal and Amendment One . . . . . . . . . . . . . . . . . 1

Exhibit 3 - Government's electronic release inviting bids on the project and the Instructions, Conditions and Notices to Offerors . . . . . . . . . . . . . . . . . . . 1

Exhibit 4 - Contracting officer's transmittal and Amendment Two . . . . . . . . . . . . . . . . . 2

Exhibit 5 - Notice from the contracting officer for the pre-bid conference . . . . . . . . . . . 2

Exhibit 6 - Contracting officer's minutes from the pre-bid conference and phone list of attendees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Exhibit 7 - Memorandum from Ricky Kirk to contracting officer outlining questions and answers for pre-bid conference . . . . . . . . . . . . . . . . . . . . . . . . . 2

Exhibit 8 - Amendment Three to the solicitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Exhibit 9 - Grot's protest letter of September 14, 2001 to the General Accounting Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Exhibit 10 - VA's letter of October 18, 2001 to the Comptroller General requesting dismissal of Grot's protest and the VA's letter of October 29, 2001 indicating that the VA was cancelling the solicitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Exhibit 11 - First three pages of Grot's response to the Solicitation, Offer and Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Exhibit 12 - Notice to Proceed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Exhibit 13 - Notes from pre-construction conference . . . . . . . . . . . . . . . . . . . . . . . . 4

Exhibit 14 - Contracting officer's technical representative's June 24, 2002 e-mail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Exhibit 15 - Grot's letter of June 25, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 16 - Contracting officer's August 23, 2002 letter . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 17 - Grot's letter of September 5, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 18 - Contracting officer's September 17, 2002 letter . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 19 - Grot's September 18, 2002 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 20 - Contracting officer's September 18, 2002 letter . . . . . . . . . . . . . . . . . . . . . 7

Exhibit 21 - Contracting officer's September 18, 2002 letter . . . . . . . . . . . . . . . . . . . . . 7

Exhibit 22 - Grot's letter of September 25, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Exhibit 23 - Mraz's November 4, 2002 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Exhibit 24 - Recapitulation of cost associated with redesign . . . . . . . . . . . . . . . . . . . . 9

Exhibit 25 - Recapitulation of cost associated with the lack of conduit in the manholes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Exhibit 26 - Contracting officer's letter of July 17, 2003 . . . . . . . . . . . . . . . . . . . . . . 12

Exhibit 27 - Grot's letter of July 17, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Exhibit 28 - COTR's letter of July 17, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Exhibit 29 - Grot's letter of April 29, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Exhibit 30 - Grot's letter of May 27, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Exhibit 31 - Contracting officer's letter of July 20, 2003 . . . . . . . . . . . . . . . . . . . . . . 14

Exhibit 32 - Grot's letter of July 20, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Exhibit 33 - Grot's letter of July 22, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Exhibit 34 - Grot's letter of July 23, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Exhibit 35 - Mraz's e-mail of July 23, 2002 (sic) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Exhibit 36 - Grot's letter of July 31, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Exhibit 37 - VA's Termination for Default Letter of August 7, 2003 . . . . . . . . . . . . . . . 15

Exhibit 38 - Recapitulation of cost associated with maintaining the fire watch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Exhibit 39 - e-mail series . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Exhibit 40 - Grot's counsel's letter of May 19, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . 17

Exhibit 41 - List of pay applications, the date submitted
and the date of payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Exhibit 42 - Application Number 19 for retainage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Exhibit 43 - Scott McCauley deposition transcript pages 56-64 . . . . . . . . . . . . . . . . . 21

Exhibit 44 - Mark S. Fratto deposition transcript page 23 . . . . . . . . . . . . . . . . . . . . . . 23

## INTRODUCTION

Grot, Inc. ("Grot") is an emerging HubZone small business located in Lexington Kentucky. Approximately, Eighty-five percent (85%) of Grot's contracts are with the United States government. In addition, Grot holds a General Services Administration ("GSA") Schedule 70 Contract specifically, Contract No. GS-35F-0358L.

As everyone associated with this claim is aware, this project was being performed for the Department of Veterans Affairs ("VA"). This project was initially released for bid as Solicitation IFB 549-64-01. A copy of the first two pages of the original Solicitation, Offer and Award is attached as Exhibit "1". The original bid date was July 11, 2001 but was extended until July 31, 2001 to accommodate prospective bidders that had not received copies of the plans and specifications. A copy of the contracting officer's transmittal and Amendment One to the solicitation is attached collectively as Exhibit "2". Also, included in Exhibit "2" as a part of the contracting officer's transmittal were answers to certain questions that had been raised by prospective bidders concerning interpretation of the plans, specifications and drawings.

The government's electronic release inviting bids on the project and the Instructions, Conditions and Notices to Offerors provided with the information to bidders, copies of which are attached collectively as Exhibit "3", described the work to be performed as follows:

> The contractor **shall furnish all labor, equipment, materials and supervision to replace the "Fire Alarm System"** at the Sam Rayburn Memorial Veterans Center, 12012 E. Ninth Street, Bonham, TX **in accordance with the contract drawings and specifications**. The project shall involve **general construction, demolition, alterations, grading, electrical and mechanical work**. Contract work shall be

> performed in compliance with the most up-to-date industry standards and codes as required by the city, county, state and Federal Government. The period of performance is ninety (90) calendar days. (Emphasis added).

Again, conspicuously absent from the VA's notice is any reference to the word "**design**". Nowhere in the VA's electronic notice is any contractor put on notice that the contractor will be responsible for **design** of the fire alarm system. As will be seen later, the lack of such notice will be critical to Grot's performance under the contract,

As stated above, the original contract completion time was ninety (90) days. However, for some reason never disclosed to the bidders, the contract completion time was increased to two hundred seventy (270) days by Amendment Two. A copy of the contracting officer's transmittal and Amendment Two to the solicitation are attached collectively as Exhibit "4".

Subsequent thereto, the contracting officer noticed a pre-bid conference for July 20, 2001. A copy of the notice from the contracting officer for the pre-bid conference is attached as Exhibit "5". A copy of the contracting officer's minutes from the pre-bid conference and list of attendees is attached collectively as Exhibit "6". A copy of a memorandum from Ricky Kirk to the contracting officer outlining the questions and answers from the pre-bid conference is attached as Exhibit "7".

By amendment dated July 27, 2001, the amended bid date was again extended, this time until August 28, 2001. A copy of Amendment Three to the solicitation is attached as Exhibit "8". At the bid opening, ADT Security Services, Inc. ("ADT") was determined to be the lowest bidder for the Project. However, Grot protested the award of the Contract to ADT in that among other things, the contracting officer had allowed

ADT to increase its bid price to the detriment of other bidders. A copy of Grot's protest letter of September 14, 2001 to the General Accounting Office is attached as Exhibit "9". Following Grot's protest, the VA cancelled the solicitation due to what the VA determined were "**inadequate specifications**". A copy of the VA's letter of October 18, 2001 to the Comptroller General requesting dismissal of Grot's protest and the VA's letter of October 29, 2001 indicating that the VA was cancelling the solicitation are attached collectively as Exhibit "10".

Again it is important to note that at no time during the solicitation process did the VA ever indicate that design of the fire alarm system was the responsibility of the contractor. In fact, the very reason for cancellation of the original solicitation was "**inadequate specifications**". If the contractor was responsible for design of the system as the VA subsequently determined, how could the specifications be inadequate?

On January 8, 2001, the VA received bids on IFB 549-23-02 which replaced IFB 549-64-01. A copy of the first three pages of Grot's response to the Solicitation, Offer and Award is attached as Exhibit "11". Again on the VA's solicitation you find the description of the work. It again states as follows:

> The contractor **shall furnish all labor, equipment, materials and supervision to replace the "Fire Alarm System"** at the Sam Rayburn Memorial Veterans Center, 12012 E. Ninth Street, Bonham, TX **in accordance with the contract drawings and specifications**. The project shall involve **general construction, demolition, alterations, grading, electrical and mechanical work**. Contract work shall be performed in compliance with the most up-to-date industry standards and codes as required by the city, county, state and Federal Government. The period of performance is 270 calendar days. (Emphasis added).

The only difference between the original description of the work and that contained in

the rebid was the period of contract performance.

As noted on the third page of Exhibit "11", on February 1, 2002, the VA awarded to Grot contract number V549P-609-2 (the "Contract") for performance of the work described as Campus-Wide Fire Alarm, Project No. 099-108 at the Sam Rayburn Memorial Veterans Center, East Ninth and Lipscomb Streets, Bonham, Texas (the "Project"). The Contract provided that the Project was to be completed within two hundred seventy (270) days following receipt of the Notice to Proceed. The Notice to Proceed was received by Grot on February 1, 2002 with work to begin within 10 days thereby making the original Contract completion date for the Project November 10, 2002. A copy of the Notice to Proceed is attached hereto as Exhibit "12".

After award of the Contract, Grot began the process of issuing subcontracts and vendor purchase orders one of which was to Siemens Building Technologies, Inc. ("Siemens"), one of the original bidders to the VA. Siemens was to provide technical assistance, equipment and working drawings based upon the plans and specifications provided by the VA upon which Grot based its pricing for the Contract. It is important to note that at all times during the bid process, Grot relied upon the plans, specifications and drawings provided by the VA to develop its price and to schedule work for the Project. The plans, specifications and drawings were prepared by Fratto Engineering, Inc. ("Fratto").

A pre-construction conference was held on February 25, 2002. A copy of the notes from the pre-construction conference is attached as Exhibit "13". A review of the notes from the meeting indicates that there was a discussion about "submittals" and installation of the approved submittals. But nowhere in the meeting notes does it reflect

that the VA advised Grot that it was responsible for design of the Project.

Grot took the plans, specifications and drawings provided by the VA and requested Siemens to provide field installation drawings in accordance with the VA's bid documents. Siemens provided the requested drawings which were submitted to the VA for review and approval. The VA delivered the drawings to Fratto for review and approval. The drawings were returned by the VA stamped as "approved" or "approved as corrected". In some instances the VA determined unilaterally that it wanted additional devices that were not shown on the original drawings provided by the VA and prepared by Fratto. **Grot had drawings approved by the VA and Fratto for all of the buildings involved in the Project by the end of March and had begun installation of the new fire alarm system.**

Again it is important to note that at no time during the solicitation process, the award or the preconstruction conference, did the VA ever indicate that design of the fire alarm system was the responsibility of the contractor.

**THE VA DIRECTS GROT TO REDESIGN THE PROJECT**

Then, unbelievably, after Siemens and Grot submitted the drawings and the VA and Fratto made modifications and changes thereto and then approved the drawings for construction, the VA determined that it was Grot's responsibility to "design" the Project. This determination was first made in writing to Grot on or about June 24, 2002; four months and fourteen days after the issuance of the Notice to Proceed and after Grot had performed extensive work on the Project **based upon the VA and Fratto approved drawings.** A copy of the contracting officer's technical representative's June

24, 2002 e-mail is attached as Exhibit "14".

Grot protested the directive of the VA advising that the specifications do not state that the Project is a design/build project nor was Grot contracted to design the fire alarm system. A copy of Grot's letter of June 25, 2002 is attached as Exhibit "15".Grot repeatedly asked for meetings with the contracting officer to review the directive. Incredulously, the contracting officer refused to have "any " meetings with Grot to discuss the directive or any other issue on the Project for that matter. Instead, by letter of August 23, 2002, the contracting officer, again without meeting with Grot, directed Grot to design the fire alarm system for the Project. A copy of the contracting officer's August 23, 2002 letter is attached as Exhibit "16". Grot immediately responded by letter of that same date and by letter of September 5th, Grot protested the direction of the VA clearly pointing out the fallacy of the rational used to make the determination. Grot requested a meeting with the contracting officer to try and come to an understanding as to the respective parties' position. A copy of Grot's letter of September 5, 2002 is attached as Exhibit "17".

As was the norm throughout the entire Project, by letter of September 17th, the contracting officer rejected Grot's request for a meeting and then directed that Grot furnish the VA with the "design/install" fire alarm system although nowhere in the specifications is the phrase "design/install" found. A copy of the contracting officer's September 17, 2002 letter is attached as Exhibit "18".

Grot immediately responded by letter of September 18th indicating that Grot was proceeding to redesign the project by curing the deficiencies in the original plans and specifications. At all times Grot reserved its rights to dispute the decision made by the

contracting officer. A copy of Grot's September 18, 2002 letter is attached as Exhibit "19".

The contracting officer responded by letter of that same day, again refusing to meet with Grot, and now taking the position that if there was an ambiguity in the contract documents, that it was Grot's duty to point out the ambiguity during the bid process. However, the contracting officer's reliance on that requirement is misplaced when the ambiguity is latent. Again the contracting officer found that the specifications "clearly state that the contractor shall provide a **design/install** fire alarm system". Yet the contracting officer has never pointed to where in the specifications the phrase "design/install" is found. A copy of the contracting officer's September 18, 2002 letter is attached as Exhibit "20".

Later that same day, again without meeting with Grot despite repeated request to do so, the VA issued a cure notice directing Grot to "cure" "failures . . . . . . endangering performance of the contract". A copy of the contracting officer's September 18, 2002 letter is attached as Exhibit "21". The contracting officer's cure letter fails to meet the requirements of the FARs in that it does not specify at all what the "failures" are that Grot must cure. It is totally devoid of any substantive information with respect to what Grot must "cure". Grot proceeded with the redesign of the Project while reserving its rights under the Contract Dispute Act.

By letter of September 25, 2002, Grot protested the contracting officer's directive. But, consistent with its obligations under the contract, Grot began to perform in compliance with the directive. Notwithstanding, there were a substantial number of questions to be resolved and Grot requested a meeting with the contracting officer to

begin the process of redesigning the Project. A copy of Grot's letter of September 25, 2002 is attached as Exhibit "22".

The requested meeting was denied. In fact, throughout the redesign process Grot repeatedly requested meetings with and direction from the contracting officer. **Not one time would the contracting officer meet with Grot despite the fact that Grot was trying to redesign a project pursuant to the contracting officer's directive.**

The directive by the VA caused Grot to incur significant increases in the cost of performing its work under the Contract and extended the time of performance for which the VA is liable. By letter from the contracting officer of November 2, 2002, the VA acknowledged that Grot was entitled to an extension in the Contract completion time until June 23, 2003 but did not increase the Contract price to reflect the extended impact cost incurred by Grot. A copy of contracting officer's November 4, 2002 letter is attached as Exhibit "23". Grot did not sign the change order as the extension of the contract time recognized by the VA was not sufficient given the scope of the redesign directed by the contracting officer and the fact that Grot was still awaiting answers from the contracting officer or his technical representatives.

Specifically, Grot incurred additional direct cost in the amount of $143,342.33 for materials and labor directly associated with the directive to redesign the Project. Grot also incurred additional engineering cost and expense to Siemens for engineering the redesign in the amount of $14,262.00. Grot and Siemens minimized the impact of redesign cost to the VA by returning equipment not required under Grot and Siemens' design. This was in compliance with the contracting officer's directive to redesign in

accordance with NFPA 101 and 72. This was brought to the attention of the VA at the time of redesign and since the VA never acknowledged to the contrary, the proposal was accepted.

Further, the directive of the contracting officer for Grot to redesign the Project extended Grot's time for performance from the original contract completion date of November 10, 2002 until at least August 8, 2003; a period of two hundred seventy-one (271) days. This extension directly impacted Grot's job site cost in the amount of $13,170.00 and created extended and unabsorbed home office overhead in the amount of $126,145.08.

In addition, Grot incurred additional direct cost with Siemens for work on the redesign in the amount of $14,262.00. This amount was actually mitigated by Grot through the return of ceratin devises that would no longer be needed due to the VA's directive. As Siemens is a direct subcontractor to Grot, Grot is entitled to overhead and profit in the amount of $2,995.02 for a total cost from Siemens' additional work of $17,257.02

When coupled with the direct additional cost incurred by Grot for labor and materials together with other incidental cost such as additional bond premiums, the total additional cost incurred by Grot in redesigning the Project including overhead and markup is $308,009.72. A copy of the recapitulation of cost associated with the redesign is attached as Exhibit "24".

The cost for additional material and labor reflected on the attachments to this claim are based upon Grot's price schedule with the GSA and, specifically, Contract # GS-35F-0385L. Accordingly, this pricing insures the best value to the VA for the

additional cost incurred. Any pricing based upon normal commercial industrial pricing would be significantly higher.

**DIFFERING SITE CONDITIONS-LACK OF CONDUIT IN MANHOLES**

Part of the construction for the Project involved the installation of a continuous network loop around the campus which tied in all of the panels for the system. Minutes from the pre-bid conference of July 20, 2001clearly show that "no trenching should be necessary". In fact, the notes indicate that all lines should be run through existing conduits and the steam tunnel. A copy of the minutes from the pre-bid conference are attached as Exhibit "6".

While the conduit was available in rare instances, in most cases the conduits were being utilized by other services and in some instances it did not exist at all. When Grot determined that the conduits were not as represented in the minutes, Grot advised the contracting officer through the technical representative. As was the case throughout the Project, the VA never provided any guidance to Grot for installation of the network loop outside the conduits. As a result, Grot began installation of the network loop as best it could under the circumstances.

The lack of capacity or complete absence of conduit in the manholes leaves no doubt that Grot encountered significantly differing site conditions at the Project. In order to prevail on a differing site condition claim Grot need only prove that the conditions indicated in the contract varied materially from the conditions actually encountered during the performance of the contract. *Stuyvesant Dredging Co. v. United States*, 834 F. 2d 1576, 1581 (Fed. Cir. 1987), *quoting P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F. 2d 913, 916 (Fed. Cir. 1984). In this case the VA can not deny that the

conditions actually encountered were not materially different than represented in the Contract.

The differing site conditions encountered by Grot were textbook "Type I" conditions. In other words, the site condition differed from a representation made about the site in the contract. See, e.g., *Servidone Construction Corp. v. United States*, 19 Ct. Cl. 346, 360 (1990). The underlying issue in a Type I differing site condition claim is whether the contractor reasonably could have anticipated the conditions encountered from a knowledgeable interpretation of the contract documents, its inspection of the site and its general experience as a contractor. *Erickson-Shaver Contracting Corp. v. United States*, 9 Cl. Ct. 302, 304 (1985). In this case the representation was made by the contracting officer himself. If the differing site condition causes an increase in the contractor's cost or the time required to perform the work, then the contractor is entitled to an equitable adjustment in the contract. FAR 52.236-2.

In this case not only did the site conditions themselves create a problem, the VA's delay in responding to Grot's request for information, change orders and directives compounded the problem. Grot would have completed this Contract as it intended but for delays that are solely attributable to the VA. The lack of available conduit directly impacted Grot's cost of performing its work on the Project. This differing site condition resulted in additional labor and material cost to Grot in the amount of $44,990.02. A copy of the recapitulation of cost associated with the lack of conduit in the manholes is attached as Exhibit "25".

Again, the cost reflected on Exhibit "25" is based upon Grot's price schedule with the GSA per the previously referenced Contract # GS-35F-0385L. This again insures