**SIEMENS** Building Technologies

October 2, 2006

Mr. John Mraz, Contracting Officer
Department of Veterans Affairs
North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Building 8
Dallas, TX 75216

Dear Mr. Mraz:

I write in response to your letter of September 11, 2006, in which you direct Siemens to replace the existing stand-alone smoke detectors located in Building 24 at the Bonham VA facility with addressable smoke detectors. For the reasons stated in my letter of August 29, 2006, Siemens respectfully disagrees with the VA's conclusion that Building 24 is a "domiciliary" that requires replacement of the existing smoke detectors with addressable devices. Despite this disagreement, Siemens will make every reasonable effort to complete the VA's request as soon as practicable.

As you know, Siemens' current deadline to complete the fire alarm system in Bonham is October 20. Prior to the VA's directive to replace the smoke detectors in Building 24. In light of the work that must now be done in Building 24, however, Siemens will require additional time past October 20, as you anticipated in your letter. Siemens requests that it be given additional time to finalize all installation issues, including replacing the smoke detectors in Building 24, which would move the completion deadline to February 28, 2007. In addition, I would like to discuss with you at your convenience the costs for labor and materials that Siemens will incur by doing this additional work, and whether the VA will consider paying Siemens for all or part of these unexpected costs.

Thank you for your continued cooperation as Siemens works to complete this project to the VA's satisfaction.

Sincerely,

Bob Luczkowiak

Bob Luczkowiak
Operations Manager

Cc: Dave Fladda, Steven Shamash, Bob Butchko

Siemens Building Technologies, Inc.

8600 N. Royal Lane
Suite 100
Irving, TX 75063

Tel: (972) 550-8488
Fax: (972) 751-1194

May 27, 2005

North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Dallas, TX 75216

Mr. Bill Johnson
Senior Project Manager
Siemens Building Technologies
Fire Safety
8600 N. Royal Lane # 100
Irving, TX 75063
Tel: (972) 929-5044
Fax: (972) 751-1194

Subject: Request For Contract Extension
Sam Rayburn V.A. Fire Alarm System Replacement

Dear Mr. Bill Johnson:

I am writing as the Contracting Officer for Contract V549C-667-43 in response to the "Contract Extension Request" dated May 19, 2005, submitted by you on behalf of Siemens Building Technologies, Inc. to Mr. Ricky Kirk, the Contracting Officer's Technical Representative (COTR) for the Bonham Fire Alarm System Replacement Project.

On April 21, 2005 in response to your earlier "Contract Extension Request" dated April 11, 2005, the V.A. granted a 30-day performance extension with a new contract completion date of May 10, 2005. Your letter of May 19 requests another extension of 180 days with a new "finish date" of November 18, 2005. While it is our intent to accommodate all reasonable requests in furtherance of successful contract performance, we have concerns about delaying contract completion by another 180 days.

Therefore, please contact Ricky Kirk, the COTR, to discuss and reach agreement on a new "finish date" that will both expedite project completion and accommodate your

request for additional time. After agreement has been achieved, I'll issue another modification to extend the contract "finish date".

If I can be of further help, contact me at (214) 857-0021. I appreciate your forbearance in this matter.

Thanking You,

John Mraz
Contracting Officer

CC: Ricky Kirk
Charles Ballard
Mel Harrison

**Johnson, Bill (SBT US)**

From: Rickey.Kirk@med.va.gov
Sent: Thursday, June 09, 2005 2:48 PM
To: Johnson Bill
Cc: Melvin.Harrison@med.va.gov; Chris.Forner@med.va.gov; Charles.Ballard@med.va.gov
Subject: Bonham Fire Alarm

Bill,
We need to set a meeting for this project. I would suggest Tuesday, June 10, at 10am

The items we need to discuss are:

What exactly is wrong with the system here?
What is it going to take to complete this project?
Conduit penetrations not sealed.
The Time Factor. Your 180 day time extension request is not acceptable.
Considerations from Siemens for another time extension.

Please let me know if Tuesday will be a good time for the meeting.
I will be off tomorrow therefore I will not see your response until Monday, if it's not returned today.

Rickey Kirk
C.O.T.R.

**Trevino, Catherine (SBT US)**

---

**From:** Fladda Dave
**Sent:** Monday, August 15, 2005 11:19 AM
**To:** Luczkowiak Bob; Bill Johnson (william.johnson@siemens.com)
**Subject:** FW: Subject Fire Alarm

I thought we sent a request through for a specific extension date Also, I thought we were sending them weekly updates on our progress, Why is this guy in the dark?

**Dave Fladda**
General Manager
Siemens Building Technologies, Inc.
8600 N. Royal Lane
Irving, Texas 75063
Direct: 972-465-1060
Fax: 866-947-0060

Mailto: Dave.Fladda@Siemens.com
Internet: www.sbt.Siemens.com

*This e-mail may contain confidential information. If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying or distribution of it is strictly prohibited. Please inform us immediately and destroy the original transmittal. Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Siemens Building Technologies Inc., unless otherwise specifically stated*

---

**From:** John.Mraz@med.va.gov [mailto:John.Mraz@med.va.gov]
**Sent:** Monday, August 15, 2005 10:01 AM
**To:** Rickey.Kirk@med.va.gov; Johnson Bill
**Cc:** Charles.Ballard@med.va.gov; Melvin.Harrison@med.va.gov; Chris.Forner@med.va.gov; Luczkowiak Bob; Fladda Dave
**Subject:** RE: Subject Fire Alarm

Bill:

Ricky is absolutely right I am the Contracting Officer for this project and I must modify the contract with a new completion date The VA does not want to arbitrarily assign a new completion date; instead, we would like to assign a new completion date that we know you can meet and we can't do that without your input.

So, please submit, within ten (10) calendar days, a new contract completion date and a proposed work schedule to Ricky Kirk, the COTR, for his review: after which, upon mutual agreement between Siemens and the VA, I'll modify the contract Otherwise the VA will have to unilaterally assign a new completion date

Please e-mail receipt of this e-mail and call me if there is anything I can do to assist you in accomplishing this requirement

Thanks,

John

-----Original Message-----
**From:** Kirk, Rickey L.
**Sent:** Monday, August 15, 2005 8:44 AM
**To:** 'william.johnson@siemens.com'
**Cc:** Mraz, John P.; Ballard, Charles; Harrison, Melvin; Forner, Chris; 'bob.luczkowiak@siemens.com'; 'dave.fladda@siemens.com'
**Subject:** Subject Fire Alarm

Bill,
I just heard a rumor that the new chip is coming in Thursday. Is this true? If so, why am I hearing it via a third or fourth party? What's happening concerning this project? Besides the chip problem there's still the matter of patch and paint, especially in Building 3. When the painter left here on a Tuesday back in June they were going to be back that Thursday. Haven't seen them since.
The project's last time extension gave until April 20, 2005 for completion. We've discussed, a little about considerations for more time. It's time we seriously talked considerations and completion of this project.
Please let me know what is happening as soon as possible.

Rickey L. Kirk
C.O.T.R.

**Johnson, Bill (SBT US)**

**From:** Luczkowiak Bob
**Sent:** Tuesday, September 20, 2005 2:00 PM
**To:** Mraz, John P.; Kirk, Rickey L.; Harrison, Melvin; Forner, Chris; Johnson Bill
**Cc:** Luczkowiak Bob
**Subject:** RE: VA Bohnam Weekly log for Week of 9-5-05 thru 9-9-05

Gentlemen:

Bill Johnson and Ricky Kirk have talked and Siemens will be going to the VA Bonham on Thursday September 22nd to address the issues on the attached the e-mail We will be bringing a Patch and paint contractor, an electrician, and a technician with us to complete as much work as possible. I will give everyone an update on Friday September 23rd as to status of each item and a schedule to complete the items which were not able to be completed this week

Regards,
Bob Luczkowiak
SBT Operations Manager
Siemens Building Technologies, Inc.
8600 N. Royal Lane Suite 100
Irving, TX 75063
Tel direct: (972) 550-8488
Fax: (972) 751-1194
Mobile: (214) 908-2067
Mail to: .luczkowiak@siemens.com
Internet: www.sbt.siemens.com

*Note: This e-mail may contain confidential information. If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying or distribution of it is strictly prohibited. Please inform us immediately and destroy the original transmittal. Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Siemens Building Technologies, Inc., unless otherwise specifically stated.*

---

**From:** Mraz, John P. [mailto:John.Mraz@med.va.gov]
**Sent:** Tuesday, September 20, 2005 12:57 PM
**To:** Kirk, Rickey L.; Luczkowiak Bob; Harrison, Melvin; Forner, Chris; Johnson Bill
**Subject:** RE: VA Bohnam Weekly log for Week of 9-5-05 thru 9-9-05

Ricky:

Have you reached agreement on a completion date? Is there anything that I can do to expedite matters?

Thanks,

John

---

**From:** Kirk, Rickey L.
**Sent:** Wednesday, September 14, 2005 10:49 AM
**To:** 'Luczkowiak Bob'; Harrison, Melvin; Forner, Chris; Kirk, Rickey L.; Johnson Bill
**Cc:** Mraz, John P.
**Subject:** RE: VA Bohnam Weekly log for Week of 9-5-05 thru 9-9-05

After discussing this with other VA personnel it has been decided that Siemens should proceed to

do the patch and paint as discussed even though the exterior walls have not been sealed If the moisture penetration continues and rework is required at a latter date, the VA will take responsibility for it and re-work the area
Also other items needing done from the original punch list and not competed are:

1. Door holders on doors in hall between Bldg 1 and Bldg 29 on the north end have not been replaced/repaired.
2. Penetrations on 2nd floor of Bldg 24 were not filled Siemens personnel stated that they didn't finish this floor
because the time they were allowed for penetrations had expired and they couldn't finish this floor These
penetrations must be filled.
3. All spare parts were not delivered on the first shipment. The rest of the spare parts must be delivered.

It has just come to my attention that an old existing duct detector, above the arts and crafts room in Bldg 24, was never
replaced. This duct detector must be replaced.

Please have these items completed promptly

As for the time extension it is still under discussion and a decision will be made this week.

Thank You,

Rickey Kirk
C.O.T.R.

---

**From:** Luczkowiak Bob [mailto:bob.luczkowiak@siemens.com]
**Sent:** Friday, September 09, 2005 5:22 PM
**To:** Mel Harrison; Chris Forner; Rickey.Kirk@med.va.gov; Johnson Bill
**Cc:** Luczkowiak Bob
**Subject:** VA Bohnam Weekly log for Week of 9-5-05 thru 9-9-05

Rickey,

Did the VA complete the repair of the exterior wall where Siemens will need to repair the interior wall?
We are planning on having a contractor go to VA Bonham to assess the work required during the week of September 19.
If the VA has the exterior portion completed then Siemens would like to complete the interior repairs by September 30th.

Please let me know if the exterior work is completed so we can make plans

Regards,
Bob Luczkowiak
SBT Operations Manager
Siemens Building Technologies, Inc
8600 N Royal Lane Suite 100
Irving, TX 75063
Tel direct: (972) 550-8488
Fax: (972) 751-1194
Mobile: (214) 908-2067
Mail to: bob.luczkowiak@siemens.com
Internet: www.sbt.siemens.com
*Note: This e-mail may contain confidential information. If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying or distribution of it is strictly prohibited Please inform us immediately and destroy the original transmittal Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Siemens Building Technologies, Inc., unless otherwise specifically stated*

October 11, 2005

North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Dallas, TX 75216
John Mraz
Contracting Officer (90C)
Tel: 214-857-0021,
Fax: 214-857-0027
E-mail: John.Mraz@med.va.gov

Bob Luczkowiak
SBT Operations Manager
Siemens Building Technologies, Inc.
8600 N. Royal Lane Suite 100
Irving, TX 75063
Tel: 972-550-8488
Fax: 972-751-1194
E-mail: Bob.Luczkowiak@siemens.com

**Subject: Consideration for Contract Extension for Contract V549C-667-4, Sam Rayburn, Bonham TX VA Fire Alarm System Replacement Project**

Dear Mr., Bob Luczkowiak:

I am writing as the Contracting Officer for Contract V549C-667 in response to the "Request for Contract Extension" Letter that I sent to Mr. Bill Johnson on behalf of Ricky Kirk, the Contracting Officer's Technical Representative (COTR) for the Sam Rayburn, Bonham, TX Fire Alarm System Replacement Project. In my letter dated May 27, 2005 I requested from Siemens a new completion date for the project, which to date, I have not received.

On June 14, 2005, Ricky Kirk, the COTR, meet with Dave Flassa and Bill Johnson from Siemens and agreement was reached that consideration would be granted to the VA in exchange for the contract time extension requested by Siemens.

Listed below are the considerations suggested by Ricky Kirk, the COTR.

"1. Complete system manufacturer's factory training for another VA technician. The training received shall certify that the VA technician is certified for the Manufacturer's full-service technician rating and is factory qualified to make authorized software and

hardware modifications for the installed system. To date, only two (2) VA technicians and not the four (4) called for in Specification Section 13850, Part 3, sub-paragraph 3.7, Instruction and Training have received training. The VA requests transportation, lodging and food to be provided not only for the two (2) VA technicians that have not as of yet received training, but also for one (1) additional VA technician.

2. Guarantee Period Services shall be extended one (1) year from the original three (3) year period. The extra year shall include everything stated in Specification Section 13850, paragraphs 1.5, Guarantee and 1.6, Guarantee period services. This is requested since most parts already installed will be nearly four (4) years old by the time the system is finally accepted as being complete.

3. Since the equipment ages with each passing day, it is the VA belief that additional spare parts should also be included as part of the considerations. Please review the parts list in Specification Section 13850, Part 2 Products, sub-paragraph 2.14, Spare and Replacement Parts and provide all parts due the VA but not sent. In addition, the VA is requesting as consideration one (1) extra of each part listed with the exception of Items, 10, 11, 12, and 18."

Finally, request a new completion date for the project so that I can issue a modification with new date. Please respond to this letter within seven (7) workdays.

If you have any questions, call me at 214-857-0021.

Sincerely,

John Mraz
Contracting Officer

## Johnson, Bill (SBT US)

| | |
|---|---|
| ɔm: | Mraz, John P [John.Mraz@med.va.gov] |
| nt: | Tuesday, October 11, 2005 11:43 AM |
| To: | Luczkowiak Bob; Fladda Dave; Ballard, Charles; Kirk, Rickey L.; Forner, Chris; Harrison, Melvin; Johnson Bill |
| Subject: | Sam Rayburn< Bonham, TX Fire Alarm System Replacement |
| Attachments: | Fire Alarm Siemens Oct 11.doc |

Fire Alarm Siemens Oct 11.doc ...

Bob:

Please e-mail acknowledgement <<Fire Alarm Siemens Oct 11.doc>> of this letter.

Thanks,

John

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE | PAGE 1 OF PAGES 1

2. AMENDMENT/MODIFICATION NO: Modification # Seven

3. EFFECTIVE DATE: 13 Feb 06

4. REQUISITION/PURCHASE REQ. NO

5. PROJECT NO (If applicable)

6. ISSUED BY — CODE 549 / 90C

Contracting Officer (90C)
VA North Texas Health Care System
Dallas VA Medical Center 4500 South Lancaster Rd.
Dallas, TX 75216

7. ADMINISTERED BY (If other than Item 6) — CODE

Same as Item 6

8. NAME AND ADDRESS OF CONTRACTOR (No. Street, county, State and ZIP: Code)

Siemens Building Technologies, Inc.
8600 N. Royal Lane #100
Irving, TX 75063

CODE | FACILITY CODE

(4) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO: V549C-667-4

X 10B. DATED (SEE ITEM 13): 5/7/04

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offerss extended. X ]is extended

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended. by one of the following methods:

(a) By completing Items 8 and 15, and returning one (1) copy of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATA SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and data specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (4) | |
|---|---|
| X | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. Other (Specify type of modification and authority) |

The completion date under then above reference contract is hereby amended to read "May 1, 2006". The most recent extension extended the contract through May 10, 2005.

The Government does not relinquish its right to seek compensatory damages caused by the contractor's inexcusable delay. Moreover the new contract completion date re-establishes the Government's rights to terminate for default should the contractor fail to complete the contract by May 1, 2006.

All other terms and conditions remain unchanged.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print): John Mraz, Contracting Officer

15B. CONTRACTOR/OFFEROR

(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA

BY

(Signature of Contracting Officer)

16C. DATE SIGNED: 13 Feb 06

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105
FAR (48 CFR) 53.243

STANDARD FORM 30 (REV. 10-83)

**Trevino, Catherine (SBT US)**

---

**From:** Hayes Steve-Dallas
**t:** Friday, February 17, 2006 11:15 PM
**o:** Luczkowiak Bob; Fladda Dave
**Subject:** RE: Contract Extension

Dave or I can probably sign on Monday. Do you think we should get legal to review first?

Steve Hayes
Red River District Manager
Siemens Building Technologies
972-465-1061
mailto:steve.hayes@siemens.com

*This e-mail may contain confidential information. If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying or distribution of it is strictly prohibited. Please inform us immediately and destroy the original transmittal. Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Siemens Building Technologies, Inc., unless otherwise specifically stated.*

---

**From:** Luczkowiak Bob
**Sent:** Friday, February 17, 2006 4:27 PM
**To:** Hayes Steve-Dallas; Fladda Dave
**Subject:** FW: Contract Extension

Attached is the formal extention for VA Bonham.
T' have asked us to sign and send forward.
I have gotten the extention thru May 1 vs the Feb 28 date in the original letter with out having to give more "consideration"

Who will sign this document??

Regards,
Bob Luczkowiak
SBT Operations Manager
Siemens Building Technologies, Inc.
8600 N. Royal Lane Suite 100
Irving, TX 75063
Tel direct: (972) 550-8488
Fax: (972) 751-1194
Mobile: (214) 908-2067
Mail to: .luczkowiak@siemens.com
Internet: www.sbt.siemens.com

*Note: This e-mail may contain confidential information. If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying or distribution of it is strictly prohibited. Please inform us immediately and destroy the original transmittal. Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Siemens Building Technologies, Inc., unless otherwise specifically stated.*

---

**From:** John.Mraz@med.va.gov [mailto:John.Mraz@med.va.gov]
**S** Friday, February 17, 2006 1:25 PM
**T** uczkowiak Bob; Rickey.Kirk@med.va.gov
**Subject:** Contract Extension

Bob:

Attached is a copy of the modification, which extends your contract through May 1, 2006. Please sign and return.

Thanks,

John

July 21, 2006

Department of Veterans Affairs
North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Building 8
Dallas, TX 75216

Mr. Robert Luczkowiak
SBT Operations Manager
Siemens
8600 N. Royal Lane
Irving, TX 75063

**Cure Notice**

Subject: V549C-667-4
Design/Install Fire Alarm System, Bonham, TX

Dear Mr. Robert Luczkowiak:

You are hereby notified that your failure to complete Contract V549C-667-4, Design/Install Fire Alarm System, Bonham, TX must be cured. The original period of contract performance was from April 28, 2004 through November 4, 2004. As of this date the contract is almost two years past completion.

I received a letter from Ricky Kirk, the Contracting Officer's Technical Representative (COTR), in which he reports that you are seeking another time extension that will advance the completion date to the end of December. In his letter the COTR states that the main problem is that you "still have not been able to get the programming of the chip correct". He also listed in his letter the deficiencies below that were discovered during a sample inspection of the system conducted on July 6, 2006 by himself, Charles Ballard, Mel Harrison and Chris Forner that need a cure. The list is by no means all-inclusive.

Building 1

1st Floor:
½" conduit and wrong wire type run to FACP
Flex conduit used to connect panel to FACP rather than can connectors
½" flex run from AOD smoke to Code Purple, run over 6' long

5ht Floor:
Relocated pull station not wired correctly and not labeled
Conduits from Stairwell North not run according to NEC
Wiring in J-Box not labeled

Building 24

½" conduit between AAMP and FACP
Old wire running wild in ceiling of Fire Control Office
Gutter above ceiling in Fire Control Office not labeled
Wall penetration in Fire Control Office not sealed

Building 29

Smoke Detector #7-11-1 in Corridor by FACP hanger not hooked properly
2 j-boxes have no covers
Flex laying on ceiling grid
Old wiring lying on grid

In addition, Spec Section 13850, paragraph 3, 4, sub-paragraph A, sub-subparagraph 1 is not being met.

Therefore, within seven (7) days after receipt of this notice, you must submit to me a plan to cure the above deficiencies as well as a proposed work schedule that definitely identifies a contract completion date that you can meet, a date much earlier than the end of December 2006.

As you know the original contract for the Bonham Fire Alarm System was awarded in early 2002. The government has been very patient, but enough is enough! The project needs to be completed as soon as reasonably possible.

If you have any questions or if there is anything I can do to help expedite the completion of the Bonham Fire Alarm Project do not hesitate to contact me.

Sincerely,

John Mraz
Contracting Officer

cc: Ricky Kirk, Charles Ballard, Chris Forner & Mel Harrison/Dallas, VA
Bob Butchko/Siemens

**Trevino, Catherine (SBT US)**

**From:** Mraz, John P. [John.Mraz@va.gov]
**ˉˉnt:** Friday, July 21, 2006 2:33 PM
**ıo:** Luczkowiak Bob; Butchko Bob
**Cc:** Ballard, Charles; Harrison, Melvin; Kirk, Rickey L.; Forner, Chris
**Subject:** Cure Notice
**Attachments:** Siemens Cure Notice.doc

Bob Luczkowiak:

Attached is a copy of a "Cure Notice" for Contract V549C-667-4, Bonham Fire Alarm System Project.

Please use this e-mail to acknowledge receipt of the "Cure Notice" Letter.

Thanks,

John

**Trevino, Catherine (SBT US)**

**From:** Luczkowiak Bob
**nt:** Friday, July 28, 2006 8:13 AM
**ɪ ʊ:** John.Mraz@med.va.gov
**Cc:** 'Rickey.Kirk@med.va.gov'; Ballard, Charles; 'Harrison, Melvin'; Forner, Chris; Fladda Dave; Hayes Steve-Dallas; Butchko Bob
**Subject:** VA Bonham Cure Notice Response
**Attachments:** Document (8).PDF; Bonham REB 072406.pdf

Attached is a final schedule for the response to the cure notice for Contract V549C-667-4, Bonham Fire Alarm System Project

Please contact Dave Fladda, or Bill Johnson with with questions.

I will be on vacation until Aug 7th.

Regards,
Bob Luczkowiak
SBT Operations Manager
Siemens Building Technologies, Inc.
8600 N. Royal Lane Suite 100
Irving, TX 75063
Tel direct: (972) 550-8488
Fax: (972) 751-1194
Mobile: (214) 908-2067
Mail to: .luczkowiak@siemens.com
Ir ': www.sbt.siemens.com

*Nᴄ . This e-mail may contain confidential information If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying or distribution of it is strictly prohibited. Please inform us immediately and destroy the original transmittal. Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Siemens Building Technologies, Inc., unless otherwise specifically stated*

SIEMENS Building Technologies

July 28, 2006

Department of Veterans Affairs
North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road, Bldg. 8
Dallas, Texas 75216

Dear Mr. Mraz:

Thank you for your letter of July 21, 2006.

While we do not entirely agree with all the legal and factual conclusions in your letter, we greatly appreciate the spirit of cooperation and pragmatism that you express. We remain committed to providing the VA the high quality fire alarm system that it has bargained for.

The attached schedule is both aggressive and realistic. We propose to resolve installation issues in the very near term, commencing immediately and completing in early September. The firmware issues are being resolved at this very moment, with an eye toward completion before end of the calendar year.

You have made clear that you want this work completed much sooner. We note in this regard that installation of the firmware will indeed be completed in early October, with the balance of the time being devoted mostly to "burn-in", testing and as builts. Thus, in practical terms it may be suggested that work will be substantially complete in October. Given the life safety issues involved, we know the VA would not want to forego extra caution in the name of expediency.

We thank you again for your continued courtesy and cooperation in this matter. We look forward to timely completing any and all open items. Unless we hear from you to the contrary, we will proceed on the basis of this proposed schedule.

Sincerely,

Bob Luczkowiak

Bob Luczkowiak
OPS Manager Solutions

Siemens Building Technologies, Inc.

8600 N. Royal Lane
Suite 100
Irving, TX 75063

Tel: (972) 550-8488
Fax: (972) 751-1194

| ID | | Task Name | Duration | Start | Finish | Predecessors |
|---|---|---|---|---|---|---|
| 1 | | **Firmware** | **106 days** | **Tue 8/1/06** | **Tue 12/26/06** | |
| 2 | | Lab Testing | 5 days | Tue 8/1/06 | Mon 8/7/06 | |
| 3 | | Field Test 'Beta' Version | 4 days | Tue 8/8/06 | Fri 8/11/06 | 2 |
| 4 | | DV Testing | 28 days | Mon 8/14/06 | Wed 9/20/06 | 3 |
| 5 | | Install On-Site | 1 day | Thu 9/21/06 | Thu 9/21/06 | 4 |
| 6 | | Pre- Testing On Site | 14 days | Fri 9/22/06 | Wed 10/11/06 | 5 |
| 7 | | 30 Day Burn In | 30 days | Thu 10/12/06 | Wed 11/22/06 | 6 |
| 8 | | Final Testing | 10 days | Thu 11/23/06 | Wed 12/6/06 | 7 |
| 9 | | As-Built Update | 14 days | Thu 12/7/06 | Tue 12/26/06 | 8 |
| 10 | | | | | | |
| 11 | | **Installation** | **29 days** | **Tue 8/1/06** | **Fri 9/8/06** | |
| 12 | | **1st Flr** | **6 days** | **Tue 8/1/06** | **Tue 8/8/06** | |
| 13 | | 1/2"cond & wire to FACP | 2 days | Tue 8/1/06 | Wed 8/2/06 | |
| 14 | | Replace Flex Conduit to FACP | 2 days | Thu 8/3/06 | Fri 8/4/06 | 13 |
| 15 | | Replace flex @ AOD Smoke | 2 days | Mon 8/7/06 | Tue 8/8/06 | 14 |
| 16 | | **5th Floor** | **7 days** | **Wed 8/9/06** | **Thu 8/17/06** | 12 |
| 17 | | Relocate Pull Stat & Label | 2 days | Wed 8/9/06 | Thu 8/10/06 | |
| 18 | | Rework North Stair conduit | 3 days | Fri 8/11/06 | Tue 8/15/06 | 17 |
| 19 | | Label Wiring in J Box | 2 days | Wed 8/16/06 | Thu 8/17/06 | 18 |
| 20 | | **Building 24** | **8 days** | **Fri 8/18/06** | **Tue 8/29/06** | 16 |
| 21 | | Repl. 1/2 cond PACP to AAMP | 2 days | Fri 8/18/06 | Mon 8/21/06 | |
| 22 | | Old wire in FACP ceiling | 2 days | Tue 8/22/06 | Wed 8/23/06 | 21 |
| 23 | | Label gutter in FACP ceiling | 2 days | Thu 8/24/06 | Fri 8/25/06 | 22 |
| 24 | | Fill penetrations in FACP | 2 days | Mon 8/28/06 | Tue 8/29/06 | 23 |
| 25 | | **Building 29** | **8 days** | **Wed 8/30/06** | **Fri 9/8/06** | 20 |
| 26 | | Hang smoke 7-11-1 | 2 days | Wed 8/30/06 | Thu 8/31/06 | |
| 27 | | Covers on J Boxes | 2 days | Fri 9/1/06 | Mon 9/4/06 | 26 |
| 28 | | Secure flex in ceiling | 2 days | Tue 9/5/06 | Wed 9/6/06 | 27 |
| 29 | | Old wiring on grid | 2 days | Thu 9/7/06 | Fri 9/8/06 | 28 |




Project: Bonham REB 072406
Date: Thu 7/27/06

| | | | | | |
|---|---|---|---|---|---|
| Task | | Milestone | | External Tasks | |
| Split | | Summary | | External Milestone | |
| Progress | | Project Summary | | Deadline | |



300

| ID | | Task Name |
|---|---|---|
| 1 | | **Firmware** |
| 2 | ▦ | Lab Testing |
| 3 | | Field Test 'Beta' Version |
| 4 | | DV Testing |
| 5 | | Install On-Site |
| 6 | | Pre- Testing On Site |
| 7 | | 30 Day Burn In |
| 8 | | Final Testing |
| 9 | | As-Built Update |
| 10 | | |
| 11 | | **Installation** |
| 12 | | **1st Flr** |
| 13 | ▦ | 1/2"cond & wire to FACP |
| 14 | | Replace Flex Conduit to FACP |
| 15 | | Replace flex @ AOD Smoke |
| 16 | | **5th Floor** |
| 17 | | Relocate Pull Stat & Label |
| 18 | | Rework North Stair conduit |
| 19 | | Label Wiring in J Box |
| 20 | | **Building 24** |
| 21 | | Repl. 1/2 cond PACP to AAMP |
| 22 | | Old wire in FACP ceiling |
| 23 | | Label gutter in FACP ceiling |
| 24 | | Fill penetrations in FACP |
| 25 | | **Building 29** |
| 26 | | Hang smoke 7-11-1 |
| 27 | | Covers on J Boxes |
| 28 | | Secure flex in ceiling |
| 29 | | Old wiring on grid |




| | | | | | |
|---|---|---|---|---|---|
| Project: Bonham REB 072406<br>Date: Thu 7/27/06 | Task | Milestone | ◆ | External Tasks | |
| | Split | Summary | | External Milestone | |
| | Progress | Project Summary | | Deadline | ⇩ |



301

| ID | | Task Name |
|---|---|---|
| 1 | | **Firmware** |
| 2 | | Lab Testing |
| 3 | | Field Test 'Beta' Version |
| 4 | | DV Testing |
| 5 | | Install On-Site |
| 6 | | Pre- Testing On Site |
| 7 | | 30 Day Burn In |
| 8 | | Final Testing |
| 9 | | As-Built Update |
| 10 | | |
| 11 | | **Installation** |
| 12 | | **1st Flr** |
| 13 | | 1/2"cond & wire to FACP |
| 14 | | Replace Flex Conduit to FACP |
| 15 | | Replace flex @ AOD Smoke |
| 16 | | **5th Floor** |
| 17 | | Relocate Pull Stat & Label |
| 18 | | Rework North Stair conduit |
| 19 | | Label Wiring in J Box |
| 20 | | **Building 24** |
| 21 | | Repl. 1/2 cond PACP to AAMP |
| 22 | | Old wire in FACP ceiling |
| 23 | | Label gutter in FACP ceiling |
| 24 | | Fill penetrations in FACP |
| 25 | | **Building 29** |
| 26 | | Hang smoke 7-11-1 |
| 27 | | Covers on J Boxes |
| 28 | | Secure flex in ceiling |
| 29 | | Old wiring on grid |




Project: Bonham REB 072406
Date: Thu 7/27/06

Task | Split | Progress | Milestone | Summary | Project Summary | External Tasks | External Milestone | Deadline

| ID | | Task Name |
|---|---|---|
| 1 | | **Firmware** |
| 2 | | Lab Testing |
| 3 | | Field Test 'Beta' Version |
| 4 | | DV Testing |
| 5 | | Install On-Site |
| 6 | | Pre- Testing On Site |
| 7 | | 30 Day Burn In |
| 8 | | Final Testing |
| 9 | | As-Built Update |
| 10 | | |
| 11 | | **Installation** |
| 12 | | **1st Flr** |
| 13 | | 1/2"cond & wire to FACP |
| 14 | | Replace Flex Conduit to FACP |
| 15 | | Replace flex @ AOD Smoke |
| 16 | | **5th Floor** |
| 17 | | Relocate Pull Stat & Label |
| 18 | | Rework North Stair conduit |
| 19 | | Label Wiring in J Box |
| 20 | | **Building 24** |
| 21 | | Repl. 1/2 cond PACP to AAMP |
| 22 | | Old wire in FACP ceiling |
| 23 | | Label gutter in FACP ceiling |
| 24 | | Fill penetrations in FACP |
| 25 | | **Building 29** |
| 26 | | Hang smoke 7-11-1 |
| 27 | | Covers on J Boxes |
| 28 | | Secure flex in ceiling |
| 29 | | Old wiring on grid |




Project: Bonham REB 072406
Date: Thu 7/27/06

| | | | |
|---|---|---|---|
| Task | Milestone | External Tasks | |
| Split | Summary | External Milestone | |
| Progress | Project Summary | Deadline | |



303

| ID | | Task Name |
|---|---|---|
| 1 | | **Firmware** |
| 2 | | Lab Testing |
| 3 | | Field Test 'Beta' Version |
| 4 | | DV Testing |
| 5 | | Install On-Site |
| 6 | | Pre- Testing On Site |
| 7 | | 30 Day Burn In |
| 8 | | Final Testing |
| 9 | | As-Built Update |
| 10 | | |
| 11 | | **Installation** |
| 12 | | **1st Flr** |
| 13 | | 1/2"cond & wire to FACP |
| 14 | | Replace Flex Conduit to FACP |
| 15 | | Replace flex @ AOD Smoke |
| 16 | | **5th Floor** |
| 17 | | Relocate Pull Stat & Label |
| 18 | | Rework North Stair conduit |
| 19 | | Label Wiring in J Box |
| 20 | | **Building 24** |
| 21 | | Repl. 1/2 cond PACP to AAMP |
| 22 | | Old wire in FACP ceiling |
| 23 | | Label gutter in FACP ceiling |
| 24 | | Fill penetrations in FACP |
| 25 | | **Building 29** |
| 26 | | Hang smoke 7-11-1 |
| 27 | | Covers on J Boxes |
| 28 | | Secure flex in ceiling |
| 29 | | Old wiring on grid |




Project: Bonham REB 072406
Date: Thu 7/27/06

| | | | | | |
|---|---|---|---|---|---|
| Task | | Milestone | | External Tasks | |
| Split | | Summary | | External Milestone | |
| Progress | | Project Summary | | Deadline | |



304

| ID | | Task Name |
|---|---|---|
| 1 | | **Firmware** |
| 2 | | Lab Testing |
| 3 | | Field Test 'Beta' Version |
| 4 | | DV Testing |
| 5 | | Install On-Site |
| 6 | | Pre- Testing On Site |
| 7 | | 30 Day Burn In |
| 8 | | Final Testing |
| 9 | | As-Built Update |
| 10 | | |
| 11 | | **Installation** |
| 12 | | **1st Flr** |
| 13 | | 1/2"cond & wire to FACP |
| 14 | | Replace Flex Conduit to FACP |
| 15 | | Replace flex @ AOD Smoke |
| 16 | | **5th Floor** |
| 17 | | Relocate Pull Stat & Label |
| 18 | | Rework North Stair conduit |
| 19 | | Label Wiring in J Box |
| 20 | | **Building 24** |
| 21 | | Repl. 1/2 cond PACP to AAMP |
| 22 | | Old wire in FACP ceiling |
| 23 | | Label gutter in FACP ceiling |
| 24 | | Fill penetrations in FACP |
| 25 | | **Building 29** |
| 26 | | Hang smoke 7-11-1 |
| 27 | | Covers on J Boxes |
| 28 | | Secure flex in ceiling |
| 29 | | Old wiring on grid |




Project: Bonham REB 072406
Date: Thu 7/27/06

| | | | | | |
|---|---|---|---|---|---|
| Task | | Milestone | | External Tasks | |
| Split | | Summary | | External Milestone | |
| Progress | | Project Summary | | Deadline | |



305

August 3, 2006

Department of Veterans Affairs
North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S. Lancaster Road
Building 8
Dallas, TX 75216

Mr. Robert Luczkowiak
SBT Operations Manager
Siemens
8600 N. Royal Lane
Irving, TX 75063

Subject: V549C-667-4
Design/Install Fire Alarm System, Bonham, TX

Dear Mr. Robert Luczkowiak:

I am writing this letter in response to your letter of July 28, 2006 in which you requested an extension of Contract V549C-667-4, Design/ Install Fire Alarm System, Bonham, TX.

While you proposed in your letter "to resolve installation issues in the very near term, commencing immediately and completing in early September", your "eye toward completion" will not occur before the end of December 2006. The resolution of the "firmware issues", has been held in abeyance for more than two (2) years and requesting another five (5) month extension to complete a six month contract that is already twenty-one (21) months delinquent is totally unacceptable: and this does not even address potential delinquencies that are normally discovered in every building when the final inspection is held. Moreover, it doesn't require a jeweler's eye to see that this contract will never be completed without a firm and irrevocable contract completion date.

Therefore, I am extending the contract for another two (2) months with a new and final completion date of October 7, 2006. The Government does not relinquish its right to seek compensatory damages for losses caused by Siemens inexcusable delays. Moreover, the new contract completion date re-establishes the Government's right as a last resort to terminate for default should the contractor fail to complete the contract by October 7, 2006

In another contract related matter, the Government approves your request to "have Sentelle Electric go to the Bonham VA starting Wednesday August 2, 2006 to review the overall installation of the fire alarm system". However, per contract specifications you must have a NICET III on site.

Again, if there is anything that I can do to expedite contract completion contact me immediately.

Sincerely,

John Mraz
Contracting Officer

cc: Charles Ballard, Ricky Kirk, Mel Harrison, Chris Forner, Government
Bill Johnson, Dave Fladda, Bob Butchko

**Andy Kilpatrick**

**From:** "Shelbi Barnhouse" <SBarnhou@CCSB.com>
**To:** "Andy Kilpatrick" <akilpatrick@gorekilpatrick.com>
**Sent:** Thursday, March 29, 2007 10:12 AM
**Subject:** RE: Grot, Inc v The United States

That is correct.

---

**From:** Andy Kilpatrick [mailto:akilpatrick@gorekilpatrick.com]
**Sent:** Thursday, March 29, 2007 10:07 AM
**To:** Shelbi Barnhouse
**Subject:** Grot, Inc. v. The United States

Shelbi: Also, did I understand you to say that Siemen's had not received substantial completion on its contract with the VA at Bonham?

**Andrew J. Kilpatrick, Jr.**
**Gore, Kilpatrick, &**
**Dambrino, PLLC**
**Post Office Drawer 2900**
**Ridgeland, MS. 39158**
**Tel: 601.957.3202**
**Fax: 601.957.1790**

**(PRIVILEGED AND CONFIDENTIAL. The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.)**

This electronic message is confidential and is intended only for the use of the individual to whom it is addressed. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, you are hereby notified that any use, dissemination, distribution or reproduction of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify me by electronic message or telephone at 214-855-3000, and delete the message from your system.

Carrington, Coleman, Sloman & Blumenthal, L.L.P.
www.carringtoncoleman.com

June 29, 2005

North Texas Veterans Health Care System
Dallas Veterans Medical Center
4500 S Lancaster Road
Dallas, TX 75216

RECEIVED
JUL - 1 2005

VIA **Federal Express**
Gore, Kilpatrick, Purdue, Metz & Adcock
Attorneys At Law
400 Legacy Park, Suite B/39157
Post Office Drawer 2900
Ridgeland, MS 39158

Subject: **Contracting Officer's Final Decision**
On Request For Equitable Adjustment
Contract V549P-609-2
Project No. BO1-114
Replace Bonham Fire Alarm System

Dear Mr. Kilpatrick:

I am writing in response to your letter dated 31 March, 2005, submitted by your firm on behalf of Grot, Incorporated in which you requested a Contracting Officer's Final Decision on your request for an equitable adjustment under Contract Number V549P-609-2 to replace the fire alarm system at the Sam Rayburn Memorial Veterans Center, Bonham, TX. Pursuant to 41 U.S.C. 605 (c) (2), this letter shall serve as the Contracting Officers' "Final Decision" to your request for a "total equitable adjustment to the contract price in the amount of $1,684,719.86".

I will begin by addressing your statement as to whether the original specifications were inadequate. Then answer your question: "If the contractor was responsible for the design of the system as the VA subsequently determined, how could the specifications be inadequate?" And finally, counter your claim that "the Contracting Officer has never pointed to where in the specifications the phrase design/install is found."

The original solicitation was cancelled not because of inadequate specifications but because it contained the 1995 manual and not the most recent version of the manual, which was the 1997 edition and the latest version of the specifications. The Bonham Fire Alarm System was clearly identified in both specifications as a design/install project and not as an install only project. On page 1.2 of the Specification Scope it clearly states that "A new fire alarm system shall be designed and installed in accordance with the specifications and drawings" and page 13850-2 in General Description b. of the Contract Specifications reads: "The system design layout, submittal documents preparation, and supervision of installation and testing shall be provided by a technician that is certified NICET Level III or a registered fire protection engineer."

Moreover, your use of the "interpretation against the drafter rule" to further support your claim for $308,009.72 in costs associated with designing the project is misguided. The hierarchy of rules to aid contract interpretation that have been developed over the years in numerous courts and appeals board decisions places the "interpretation against the drafter rule" at the bottom of the hierarchy. "Interpreting a contract against the drafter is the rule of last resort, only to be used when all other rules have been exhausted" When the contract specifications specifically state that the contractor shall both design and install the fire alarm system the cost of design is part of the original contract cost. The owner does not pay twice for the same work!

Furthermore, the *FAR Clause, 52-233-1 DISPUTES, found on page 4-42 of the contract clearly states: "The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer".* However, instead of a commitment of cooperation from Grot Inc. "pending final resolution" the Government received a barrage of correspondence over relatively insignificant matters asking for a response: complaints concerning the motives and requirements of the COTR and his assistants that administered the contract: and even complaints from Grot Inc. about their own subcontractor. All of which resulted in Grot Inc. failure to meet performance deadlines and/or submittal requirements.

You requested in your letter of March 31, 2005 monies in the amount of $44,990.02 for additional labor and material resulting from a differing site condition due to "the lack of capacity or complete absence of conduit in the manholes", which you describe as a textbook Type I condition. You quote *Erickson-Shaver Contracting Corp. v United States, 9 Cl. Ct. 302,304 (1985)* which states: "The underlying issue in a Type I differing site condition claim is whether the contractor reasonably could have anticipated the conditions encountered from a knowledgeable interpretation of the contract documents, its inspection of the site and its general experience as a contractor". Even though *FAR Clause 52.236-27 SITE VISIT,* found on page 2-4 of the contract identifies the Contracting Officer's Technical Representative and lists his phone number, and the cancellation of the original solicitation gave Grot Inc. not one, but two opportunities to visit the site, Grot Inc submitted both of their bids site unseen thus precluding the discovery of differing site conditions. Moreover, your letter of March 31, 2005 is the first time I've heard about the lack of conduits in the manholes. The only mention of manholes that I'm familiar with is that some of the manholes were contaminated during the initial construction period. However, that problem was resolved after an investigation by the VA Safety Officer in which he concluded that contract workers should wear protective clothing while working in suspect manholes. The only problem with conduits is that the Government did not discover the communication conduits that should not have been used by Grot Inc., until it was too late to make changes.

Regarding the additional cost incurred by Grot Inc. of $74,250.11, which resulted from my directive to proceed with a fire watch, my decision was based on information that I received from the VA Safety Officer and the Contracting Officer's Technical Representative (COTR), Ricky Kirk, who was responsible for insuring that Grot Inc. provided campus wide fire alarm protection for the safety of the VA staff and patients during the design and installation of the new fire alarm system. *The COTR's conclusions were based on threats to patient and staff safety and supported by language found on page 13850, paragraph 1.1. Description, sub-paragraph E which states: "The contractor shall provide a dedicated fire watch person all times any normally protected area is disconnected from a fire alarm system as a result of the project work, except during normal day shift non-holiday VAA hours. The fire watch person shall have no duties other than a fire watch". Also, Section 1010 of the contract specifications in paragraph 1.4 FIRE SAFETY, sub paragraph K, EXISTING FIRE PROTECTION reads: "Provide fire watch for impairments more than 4 hours in a 24-hour period." Finally, NFPA 101, 9.6.1.7 states: "where a required fire alarm system is out of service for more than 4 hours in a 24-*

*hour period, the authority having jurisdiction shall notified, and the building shall be evacuated or an approved fire watch shall be provided for all parties left unprotected by the shutdown until the fire alarm system has been returned to service."*

At no time during the fire watch did I ever contemplate second-guessing Mr. Kirk's decision to proceed with the fire watch. Placing the safety of patients and staff in jeopardy is not a risk management issue, let alone an option for a Government Contracting Officer.

With regard to your demand for interest on delinquent invoices I will, for arguments sake, honor your request and make interest payments on the following invoices:

| Invoice Amount Due | Received | Paid | Days of Interest | Interest Due |
|---|---|---|---|---|
| $ 81,322.85 | 5/23/02 | 7/31/02 | 39 | $ 456.36 |
| $ 33,329.23 | 6/25/02 | 8/09/02 | 9 | $ 71.85 |
| $ 17,447.28 | 7/22/02 | 9/17/02 | 27 | $ 67.50 |
| $ 18,630.00 | 8/21/02 | 10/09/02 | 19 | $ 50.73 |
| $102,712.00 | 9/22/02 | 11/08/02 | 16 | $ 236.32 |
| $ 9,856.98 | 10/22/02 | 4/07/03 | 82 | $ 104.80 |
| $ 17,137.98 | 12/20/02 | 4/07/03 | 67 | $ 153.87 |
| $ 48,331.71 | 12/02/03 | 4/28/03 | 67 | $ 377.99 |
| $ 74,492.91 | 3/31/03 | 6/19/03 | 50 | $ 434.10 |
| | | | Grand Total | $1,953.52 |

There is no interest payment due for the invoices listed below since the work was never certified by the COTR as being accomplished and thus, the invoices were never paid.

$114,062.99
$ 51,994.89
$ 35,505.95
$ 25,767.85
$ 38,219.62

Also it was not the government that placed Grot Inc. bonding capacity on hold "pending final resolution of the dispute with the VA." The decision to suspend Grot Inc. bonding capacity was made by the surety, Travelers Casualty and Surety Company of America. I can only assume that Travelers decision was not "arbitrary, capricious or made in bad faith" but based on the their evaluation of Grot Inc. level of risk after conducting an independent investigation to ascertain the merits of the termination for default. Your expectation that the government should pay Grot Inc. in the amount of $933,635.30 for loses resulting from Travelers decision to suspend Grot Inc. bonding capacity is disingenuous and not allowable.

Finally, the work necessary to redesign the fire alarm system for the Sam Rayburn Veterans Center, Bonham, TX was not additional work for which the government is responsible. Nor is the government responsible for Travelers Casualty and Surety of America's conclusion based on their independent investigation to suspend Grot Inc. bonding capacity. However, Grot Inc. is entitled to $551,242,90, which represents 59% of the total contract price of $934,310.00, the amount of work completed as certified by the Contracting Officer in the "Termination for Default Notice". Subtract the $498,869.42 already paid Grot Inc. from the $551,242.90 and that leaves a balance of $52,373.48. Add interest of $785.60 at 4.5% for four months on the $52,373.48 and $1,953.52 in interest payments for delinquent invoices for a grand total amount of $55,112.60.

Therefore, it is hereby found that Grot Inc. is entitled to an equitable adjustment of $55,112.60 on its claim made in their letter dated March 31, 2005. This is the Final Decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000.00 or less. Instead of appealing to the agency board of appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive the decision.

The Department of Veterans Affairs Board of Contract Appeals (VABCA) is the authorized representative of the Secretary for hearing and determining such disputes. The rules of the VABCA are published in section 1.783 of Title 38, Code of Federal Regulations. The address of the Board is 810 Vermont Avenue, N.W., Washington, DC 20420

John Mraz

JOHN MRAZ
CONTRACTING OFFICER

-----Original Message-----
From: Angela Lafferty [mailto:grot04@iglou.com]
Sent: Tuesday, March 11, 2003 1:33 PM
To: John Mraz
Cc: Jerry Grot; Andy Kilpatrick
Subject: RE: Past Due Payments

Dear Mr Mraz,

Please e-mail me with the status of payment for our December 2002 pay request in the amount of $17,137.98 and our pay request for January 2003 in
the amount of $48,331.71. These amounts are seriously past due.

Thanks,
Angela Lafferty, Financial Administrator
Jerry N. Grot Electric, Inc.

Project #099-108/00063
Sam Rayburn Veterans Center

-----Original Message-----
From: Angela Lafferty [mailto:grot04@iglou.com]
Sent: Tuesday, March 18, 2003 10:26 AM
To: Mraz, John P.
Cc: Andy Kilpatrick; Jerry Grot
Subject: RE: Past Due Payments

Mr. Mraz,

I have not heard back from you in reference to the payment status of our Dec
2002 and our Jan 2003 pay request. Please advise.

Angela Lafferty, Financial Administrator
Grot, Inc.

-----Original Message-----
From: Mraz, John P. [mailto:John.Mraz@med.va.gov]
Sent: Monday, March 24, 2003 1:58 PM
To: 'angela@grotinc.com'
Subject: RE: Past Due Payments

Thanks!

-----Original Message-----
From: Kirk, Rickey L.
Sent: Monday, March 17, 2003 7:23 AM
To: Mraz, John P.
Subject: RE: Past Due Payments

I am working on the Dec. request for payment.
They don't seem to recall that the payments will always be about 2 months
behind each request because in the beginning of the project they wanted payment for materials stored on site and it took them about 2 months to get receipts to me. Therefore it delayed payments to them by the original
2 month delay.

Rick

## m Rayburn Medical Center

as of May 19, 2004

| ɔice Date | Fax Date | Cert mail signed | Amount of Invoice | Amount Pd | Ret | Date Pd |
|---|---|---|---|---|---|---|
| 3/22/02 | | | 32,843.00 | 29,558.70 | 3,284.30 | 05/24/02 |
| 4/22/02 | | | 8,052.60 | 7,247.34 | 805.26 | 05/24/02 |
| 5/22/02 | 5/23/02 | | 90,358.72 | 81,322.85 | 9,035.87 | 07/31/02 |
| 6/22/02 | 6/25/02 | | 37,032.48 | 33,329.23 | 3,703.25 | 08/09/02 |
| | 7/30/02 | | | | | |
| 7/22/02 | 7/22/02 | | 19,419.20 | 17,447.28 | 1,941.92 | 09/17/02 |
| 8/22/02 | 8/21/02 | | 20,700.00 | 18,630.00 | 2,070.00 | 10/09/02 |
| 9/22/02 | 9/22/02 | 9/26/03 | 114,125.40 | 102,712.85 | 11,412.55 | 11/08/02 |
| 10/22/02 | 10/22/02 | 10/29/02 | 10,952.20 | 9,856.98 | 1,095.22 | 02/12/03 |
| 11/22/02 | 11/22/02 | | 32,710.10 | 29,439.09 | 3,271.01 | 04/07/03 |
| 12/22/02 | 12/20/02 | 12/27/02 | 19,042.20 | 17,137.98 | 1,904.22 | 04/07/03 |
| 1/22/03 | 1/22/03 | | 53,701.90 | 48,331.71 | 5,370.19 | 04/28/03 |
| 2/22/03 | | 3/13/03 | 32,625.00 | 29,362.50 | 3,262.50 | 05/16/03 |
| 3/22/03 | 3/25/03 | 3/31/03 | 82,769.90 | 74,492.91 | 8,276.99 | 06/19/03 |
| 4/22/03 | | 5/1/03 | 126,736.65 | | 12,673.66 | |
| 5/29/03 | 5/30/03 | 6/9/03 | 57,772.10 | | 5,777.21 | |
| 06/30/03 | 06/30/03 | 7/7/03 | 39,451.05 | | 3,945.10 | |
| 07/25/03 | | | 28,630.95 | | 2,863.10 | |
| 8/8/2003 | | | 42,466.25 | | 4,246.62 | |
| | | | 849,389.70 | 498,869.42 | 84,938.97 | |

314

| | | |
|---|---|---|
| al Contract Amount | $ | 934,310.00 |
| ount billed to date including retainage | | 849,389.70 |
| ount left to bill against original contract | $ | 84,920.30 |
| ount paid to date | $ | 498,869.42 |
| ıount owed to date including retainage | $ | 350,520.28 |

sed on amount billed to date - balance left to bill not included)

CAUSE NO. 03-1951C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GROT INCORPORATED,
*Plaintiff,*

VS.

THE UNITED STATES OF AMERICA,
*Defendant.*

ORAL DEPOSITION OF
JOHN MRAZ
VOLUME 2
October 13, 2004

oOo

*In Dallas/Fort Worth ...*

MBA REPORTING SERVICES INC.

*Court Reporters & Videographers*

*801 East Campbell Road, Suite 180 * Richardson, Texas 75081*

*972.530.6400 Fax 972.530.3307 800.283.8923*

EXHIBITS IN SEPARATE BINDER



ORIGINAL

reprocurement?
A. I would guess about as much time as we gave Grot. Nine months. Eight or nine months. I'm just -- I think eight or nine months.
Q. The original contract completion time was 270 days. 09:59
A. Right. Nine months.
Q. Is it your testimony that you've now given Siemens 270 days to complete a project which you contend was 59 percent complete when you terminated 09:59 Grot?
A. I don't know. I don't know how much time we gave them.
Q. Did you negotiate the reprocurement with Siemens? 09:59
A. Yes.
Q. Who provided input?
A. You mean from the VA?
Q. Correct.
A. Mel Harrison, our expert, fire alarms. It's 09:59 Rickey Kirk's contract. Rickey Kirk.
Q. What discussions have you had with Travelers since the, since the initiation of the reprocurement?
A. None.
Q. You did make demand on Travelers at the time 09:59

of the termination, right?
A. No, we didn't. We called and told them that there was work that needed to be done, and we told them that we were going to do it.
Q. You didn't -- so have you released the surety from its obligations on its bond? 10:00
A. No.
Q. But you didn't comply with the requirements for the surety on the bond in making any type of demand on them, did you? 10:00
A. No.
Q. Why would you not ask the surety to come on the project and complete the project?
A. The reason is because generally the surety will hire the default contractor. It saves a lot of money. And the VA was not going to accept Grot to complete the contract by the surety. 10:00
Q. Why?
A. Because of the history of the contract. Nineteen months and there was -- the contract still wasn't complete. 10:01
Q. Did you believe Grot was a capable contractor and capable of completing the job at the time you terminated them?
A. Yes. 10:01

Q. Then why wouldn't you allow them to put Grot back on the project?
A. Because Grot was unwilling at that point to comply with the COTR interpretation of the specs and the plan. 10:01
Q. We discussed this yesterday about your position that Grot was unwilling to comply with the COTR's directive. Do you remember?
A. Uh-huh. Yes.
Q. And I asked you to tell me where, in all of the directives given in writing to Grot that Grot disputed, that they didn't perform; and you couldn't tell me one, could you? 10:02
A. I don't remember.
Q. Can you tell me one today? 10:02
A. Where Grot didn't perform?
Q. Right.
A. According to Rickey, the work wasn't done according to the contract specifications. Grot was unwilling to do it. 10:02
Q. The dispute was, you had directed Grot to redesign the project, right?
A. Correct.
Q. Grot redesigned the project and submitted drawings, which were approved by Rickey and approved by 10:02

Fratto, correct?
A. Some of the drawings, I guess, were.
Q. Right. Grot started performing in accordance with those approved drawings. You remember? Right?
A. He started performing when? After -- 10:03
Q. After he gets an approved drawing, he goes and starts to build according to that, right?
A. Yes.
Q. Then Mr. Kirk makes the decision that he doesn't want just what's on those approved drawings. 10:03 He wants what's on those approved drawings plus what was on Fratto's original drawings, right?
A. Correct.
Q. Grot disputed that, didn't he? Or didn't they? 10:03
A. Yes.
Q. And said, "No. We've given you drawings prepared by a NICET Level 3 fire safety engineer. This meets NFPA 101 and 72." That was Grot's dispute, right? 10:03
A. Yes.
Q. But Mr. Kirk through you as the contracting officer --
A. Uh-huh.
Q. -- said, "No. I want what's on those 10:03

drawings and what was on the original drawings by Fratto," didn't he?

A. Yes, I believe he did.

Q. Regardless of redundancy in the system, right? 10:04

A. That, I don't know if they were redundant or not. I don't know if he wanted to put two, and it said they only needed two, and they had four. I know that Rickey Kirk wanted the contractor to comply with the specs and the code. Whatever was on one -- whatever 10:04 was on all of them had to be on the final project.

Q. He wanted what was in both, didn't he? He wanted what was on Fratto's drawings and the approved drawings that had been prepared by the NICET Level 3 designer. That was the dispute, wasn't it? 10:04

A. No, that wasn't -- but, yeah, that was the dispute.

Q. Okay. And all Grot said was, "NFPA 101 and 72 does not require these additional devices shown on Fratto's original drawings. If you want them, direct 10:05 me to put them, put them in writing." That's what Grot asked for, wasn't it?

A. I'll say yes.

Q. Okay. What was wrong with that, Mr. Mraz, from Grot's perspective? 10:05

A. What was wrong with that is that the COTR's interpretation was that Grot was supposed to add devices that were contained in the specifications and the NFPA. It wasn't pick and choose.

Q. Mr. Mraz, Mr. Kirk is not a NICET Level 3 technician, is he? 10:06

A. I don't think so.

Q. He doesn't have that certification, does he, Mr. Mraz? You know that.

A. How do I know that? 10:06

Q. How long has he worked for you?

A. How long have I known him? About eight years.

Q. If he does not have that NICET Level 3 certification, you would have been relying on someone 10:06 who is not, first off, not qualified to design this project to tell you the technical aspects of this project, weren't you? I mean wouldn't you have been?

A. If he wasn't conferring with anyone else, if he was relying solely on his own judgment, the answer 10:06 to that question would be yes.

Q. Well, there's no place in any of this documentation I've seen where he says he discussed it with a NICET Level 3 certified person. Can you show me where he did? 10:07

A. No, I can't. I know he discussed it with Mel and Chris.

Q. Is there anyone in the VA, Dallas or Bonham, that has a NICET Level 3 certification?

A. I don't know. 10:07

Q. Did you ever tell Travelers that you were not going to accept Grot as a completion contractor?

A. No. But that was our fear.

(EXHIBIT NO. 25 IDENTIFIED.)

Q. (BY MR. KILPATRICK) I hand you a document 10:09 we've marked as 25, Exhibit 25. Can you tell me what that document is?

A. CBD notice.

Q. What is CBD -- excuse me.

A. *Commerce* -- or *Business Daily*. The *Commerce* 10:09 *Business Daily*. That's where we advertise.

Q. Is that a VA advertisement for construction services for the project?

A. Let's see. Yes. Yes, it is.

Q. But just for the record, there's a submission 10:10 number, 50N6S7. Whose number is that? Or do you know what that references?

A. That references this (indicating). It was the number they assigned to it. And it was accepted.

Q. It's not a VA number? 10:10

Q. The six deficiencies, again, being deficiencies in construction that needed to be completed to get off a fire watch on Building 29, right?
A. Right.
Q. And it was disputed by Grot that those were deficiencies that necessitated a fire watch, right?
A. Yes.
Q. They -- they instituted the fire watch?
A. Uh-huh.
Q. They did what you told them to do, didn't they?
A. Uh-huh.
Q. As a matter of fact, with the exception of the fact that they disputed issues with respect to additional devices, et cetera, when you told them in writing to do something, Grot did it, didn't they?
2:36P A. Let's see. When I told him to do something in writing?
Q. Yes.
A. I told them in writing to complete the contract in accordance with the plans and specs.
Q. When you told them to institute the

fire watch in Building 1, they did it, didn't they?
A. Correct.
Q. When you told them to institute the fire watch in Building 29, they did it, didn't they?
A. Correct.
Q. When you told them to start correcting the six deficiencies to get off fire watch in Building 29, they started, didn't they?
A. Uh-huh. Yes.
Q. Can you cite -- other than a dispute as to what is required in the work as being NFPA requirements, Fratto requirements, can you cite me one instance where you told Grot to perform a function, that they didn't do it?
A. A specific function?
Q. Yes.
A. No. All I know is that they weren't cooperating with the COTR, and they were disputing just about everything the COTR wanted them to do, and claimed it was outside the scope of the contract.
2:37P Q. Okay. Look, if you would, please, sir, at the -- well, look at -- on the bottom, there's a Government Bates stamp, 2911. That will be easier than me trying to tell you the page number. Fifth

A. No.
Q. Why?
A. Because when he signed the contract, he signed a design-install contract.
Q. Okay. We're going to get into that. That's fine. I understand your position on that. I promise you, I do.
But if it was not in his schedule to design this project, take -- just assume for the purposes of this question that it's not a design-build project --
2:54P A. Uh-huh.
Q. -- and I'm acknowledging on the record that that is the basis of an assumption for this question --
A. Uh-huh.
Q. -- if he has to stop construction and start designing the buildings, it will delay him completing the project, won't it?
A. Yes.
Q. All right. During the period of time between the issuance of your show cause letter and your Termination for Default, did you do any analysis on the time it was going to take to reprocure this project so it could be finished?

A. Yes.

Q. What did you do?

A. We had decided that Siemens would complete the contract.

Q. When did you decide that?

A. After -- before we decided to terminate for default. We had to have a contingency plan to have the contract completed.

Q. Is it your testimony that the decision to terminate this project for default was made on August 7th, 2003?

2:55P A. Yes.

Q. Did you ever consider the impact the termination was going to have on Mr. Grot's bonding capacity?

A. Yes.

Q. What did you -- in what way did you consider that?

A. I knew that would create problems for him. I didn't want to create problems for him. I wanted him to complete the contract, and so did everybody else. That's why we extended it from nine months to eighteen months.

Q. What had -- what had told you that he had no intention of completing the project?

A. The fact that after 19 months, less than 60 percent of the contract had been completed.

After that letter in September where he agreed to perform in accordance with the plans and specs, he was still fighting with the COTR over everything.

Q. We're going to get into those. But what made you think he was not going to complete the project?

2:56P A. The time it had taken him to complete 59 percent of the contract.

Q. Before you contracted with Grot, did you do any investigation into Mr. Grot's -- or Grot's history?

A. Yes.

Q. What did you do?

A. Charles Ballard, the engineer -- well, we had a responsibility check meeting with him on the phone, and engineers were able to ask him questions to make sure that he was confident. And they did some research, and they found out from other Government agencies that he had a history of asking for change orders after he had signed the contract, claiming that there was work outside the contract that he should be compensated for.

Q. Is that unusual in this business?
A. I don't know. I would hope not.
Q. So what did that tell you?
2:57P A. That told us that we might have problems.
Q. Did anyone ever tell you that Mr. Grot had never completed the job?
A. No.
Q. Did anyone tell you that they had had to default Mr. Grot's company?
A. No.
Q. Did you realize that Mr. Grot was a GSA schedule contractor?
A. Yes.
Q. At the time that you contracted with him?
A. Uh-huh.
Q. Didn't that tell you something about his capability of performing work?
A. Not really. It's not that hard to get a GSA contract. However, I never doubted that he was competent to complete the contract, if he was willing to do it.
Q. As a matter of fact, your COTR told you that the on-site people were very competent, didn't

which weren't paid because they weren't certified by the COTR because the work hadn't been done.

Q. When you receive a pay application, how long do you have to review it?

A. If it's -- if there's no problems with it?

Q. Yeah.

A. 14 days.

Q. What are you supposed to do if there's problems with it?

3:00P A. Notify the contractor, and tell them that there's problems, and have them resubmit it.

Q. Actually, you're supposed to do it within ten days?

A. No. I thought it was 14. But I'll take your word for it.

Q. No, I'll take your word for it. If you say it's 14, we'll say 14.

Why -- if there were problems with them, why didn't Mr. Kirk send the pay applications back to Grot?

A. I don't know. You'll have to ask Mr. Kirk. I don't really know.

Q. Well, there were letters written to you, --

A. Uh-huh.

Q. -- weren't there, Mr. Mraz, asking you, "Where's our payment"?

A. Right. And I could only certify what he approved.

Q. And in fact, Mr. Kirk wrote to you and told you that Payment No. 1 was delayed 60 days because in asking for on-site material, Grot had not provided the appropriate backup for invoices for the only-site material, didn't he?

A. Yes.

Q. And he said because of that, all payments from that point forward were going to be delayed at least two months, didn't he?

3:01P A. Yes, he did.

Q. And you agreed with him, didn't you?

A. No.

Q. You didn't?

A. If -- I'm not disputing the fact that we were guilty of probably some delayed payments.

Q. That has an impact on a contractor's ability to perform work on a project, doesn't it?

A. I suppose it might.

Q. You didn't take that into consideration prior to terminating Grot, though, did you?

**Affidavit of Jerry Grot**

STATE OF KENTUCKY

COUNTY OF Fayette

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for the above said county and state the within named Jerry Grot, Affiant, who, being by me first duly sworn on oath, did state as follows to-wit:

1. That Affiant is the president of Grot, Inc. and that he makes this affidavit of his own personal knowledge being fully competent to testify to the matters and facts contained herein; and

2. By letter of October 18, 2002, immediately after being directed to design the Project, I outlined seven (7) critical items needed by Grot to complete the design for the Project and none were provided; and

3. Instead, the contracting officer and the contracting officer's technical representative directed Grot to "walk the project"; and

4. Grot specifically addressed the issues regarding the PIVs for Building 10 being buried and needing to be raised by e-mails in March 2003 and a letter from Grot on April 14, 2003 and protested the determination by the contracting officer that Grot was to replace or modify

the devices and the contracting officer never responded to Grot's letter; and

5. Although Grot had protested the contracting officer's determination it would have proceeded to raise the PIV's under protest subject to its rights to submit a claim under the contract disputes act; and

6. That this was among the type of information being requested by Grot as it designed the fire alarm system and the failure of the contracting officer to meet and address these types of issues prevented Grot from providing the fire alarm system that VA wanted which was a system above the requirements of NFPA 101 and 72; and

7. At the time Grot was terminated from the project, Grot, through Siemens, had provided the VA with a fire alarm system design for the Project was in full compliance with technical requirements of the contract including the plans, specifications, drawings and system design requirements including compliance with NFPA 101 and 72 (1997 edition) which had been approved by the VA and Fratto Engineering, Inc., the design engineer for the Project, and was providing adequate fire alarm protection for buildings 1, 2, 3, 24 and 29; and

8. Grot has obtained copies of current as-built drawings from Siemens and I have personally reviewed the drawings for comparison with

the drawings provided by Grot at the time of termination; and

9. That attached to my affidavit as Exhibit "A" is a spreadsheet comparison of the as-built drawings from Siemens and the drawings approved by the VA and Fratto at the time of termination; and

10. Deletion and relocation of devices are indicated in blue, added devices are indicated in black and rooms where there are no changes are indicated in red; and

11. The drawings indicate that after termination the VA has directed and approved deletion of 58 devices and added 333 devices to drawings provided by Grot either through change order or directive; and

12. In particular, the VA has changed the designation of certain rooms from that provided to Grot and in the case of Sheet FA#19 deleted 19 rooms from the drawings; and

13. At the time of termination, the Project was not complete but, as stated in my e-mails and correspondence to the contracting officer, Grot had every intention of completing the work on the Project provided it could receive answers to questions from the VA but the contracting officer refused to meet and discus the questions related to the Project which directly impacted Grot's ability to complete the work by the contract

completion date; and

14. Grot never received the list of 42 alleged deficiencies referenced in paragraph 46 of defendant's Proposed Findings of Uncontroverted Fact ("DPFUF") either during construction of the Project or in discovery but believe the bulk of those deficiencies to actually be punch list type items and were not items that impacted the operation of the fire alarm system; and

15. Further with respect to DPFUF 46, by letter of July 24, 2003, Siemens, through Scott McCauley, disputed the determinations of the contracting officer stating that "in no way do the deficiencies impair the fire alarm system from reporting a fire alarm to the VA staff and the building occupants"; and

16. At the time of construction of the Project by Grot, Scott McCauley was a NICET Level III Certified Fire Alarm Technician and is now a NICET Level IV Certified Fire Alarm Technician; and

17. The determinations upon which the contracting officer relied were not made by a NICET Level III Certified Fire Alarm Technician or a fire protection engineer; and

18. I confirmed the conclusions of Mr. McCauley by letter of July

29, 2003, to the contracting officer again pointing out the need for answers to questions which were critical for Grot's completion of the Project Defendant's Supplemental Appendix, p.229-230; and

19. Grot never received answers to the questions requested in my letter of July 29,2003; and

20. Grot has not been paid the prompt payment penalties recognized by the contracting officer in his final decision dated June 29, 2005; and

21. Grot has not been paid the sum of $52,373.48 in unpaid invoices recognized by the contracting officer as being due and owing to Grot in his final decision dated June 29, 2005; and

22. Part of the construction for the Project involved the installation of a continuous network loop around the campus which tied in all of the panels for the system; and

23. As confirmed by the contracting officer following the pre-bid conference, Fratto's representative confirmed that the site plan drawings indicated spare 4" conduits available for installation and that it would **not** be necessary for the contractor bury additional conduit and in fact, **the contractor would be required to use existing conduit for the project as**

**opposed to digging trenches to lay new conduit**; and

24. The conduit was available in rare instances but in most cases was being utilized by other services and in some instances it did not exist at all; and

25. When Grot determined that the conduits were not as represented in the minutes, Grot advised the contracting officer but the VA never provided any guidance for installation of the network loop outside the conduits; and

26. The lack of capacity or complete absence of conduit in the manholes directly impacted Grot's ability to complete the Project by June 23, 2003; and

27. Grot bonds 90% of its work and there are projects which could have been a negotiated procurement for Grot but because Grot could not provide the agency with a bond for the projects, Grot could not enter into the negotiations; and

28. Grot has repeatedly asked the contracting officer to release Grot's performance bond on the Project but the contracting officer has refused to do so and has not given any reason for his refusal; and

FURTHER AFFIANT SAYETH NOT.

Jerry Grot

SWORN TO AND SUBSCRIBED BEFORE ME this the 2nd day of April, 2007.

Notary Public

My Commission Expires: 10-25-2009