No. 03-1951C
(Judge Baskir)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

GROT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General
JEANNE E. DAVIDSON
Director
FRANKLIN E. WHITE, JR.
Assistant Director
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-0341
Facsimile: (202) 514-8624
Attorneys for Defendant

April 26, 2007

# TABLE OF CONTENTS

I. The Contracting Officer Properly Terminated Grot's Contract For Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The Court Has Already Held That Grot Unreasonably Misinterpreted The Contract Requirements; Grot's Failure To Render Acceptable Contract Performance Is Therefore Its Own Responsibility . . . . . . . . . . . . . . . . . 3

B. None Of The Issues Identified By Grot Are Material With Respect To The Termination For Default . . . . . . . 5

1. Grot Has Never Provided A System Design For This Project . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2. The Government Did Not Have Superior Knowledge That It Failed To Provide To Grot . . . 6

3. The Government Is Entitled To Timely Performance Regardless of Prior Extensions To The Contract Date . . . . . . . . . . . . . . . . . . . . . . . 8

4. No Cure Notice Was Necessary Under The Terms Of The Contract . . . . . . . . . . . . . . . . . . . . . 10

5. The Court Has Already Rejected Grot's Claim That The Contract Terms Were Ambiguous . . . . 11

II. The Experience Of The Re-procurement Contractor Does Not Excuse Grot's Default . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III. Grot Does Not Challenge Any Material Fact With Respect To The VABCA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A. Grot Cannot Recover Any Costs For "Re-Design" Of The Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. Grot Is Not Entitled To Progress Payments For Work Not Accepted By the VA . . . . . . . . . . . . . . . . . . . . 16

C. Grot Is Not Entitled To An Equitable Adjustment Based Upon Type I Differing Site Conditions Because It Did Not Make A Site Visit . . . . . . . . . . . . . . . 17

D. Grot Is Not Entitled To Collect Damages For Lost Bonding Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

E. The Firewatch Was Part of Grot's Duties Under The Contract And Is Not A Basis for Recovering Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

Aptus Co. v. United States,
61 Fed. Cl. 638 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Astro-Space Labs., Inc. v. United States,
470 F.2d 1003 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Composite Laminates, Inc. v. United States,
27 Fed. Cl. 310 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Darwin Constr. Co. v. United States,
811 Fed.2d 593 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Davies Precision Machining, Inc. v. United States,
35 Fed. Cl. 651 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Doe v. United States,
58 Fed. Cl. 479 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hannon Elec. Co. v. United States,
31 Fed. Cl. 135 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 8

Hercules, Inc. v. United States,
25 Cl. Ct. 616 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hercules, Inc. v. United States,
24 Fed. 3d 188 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Impresa Construzioni Geom. Domenico Garufi v. United States,
61 Fed. Cir. 175 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Kelso v. Kirk Bros. Mechanical Contr. Inc.,
16 F.3d 1173 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lisbon Contractors, Inc. v. United States,
828 F.2d 759 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.,
66 F.3d 89 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McDonnell Douglas Corp. v. United States,
50 Fed. Cl. 311 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mega Constr. Co. v. United States,
29 Fed. Cl. 396 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

Morganti Nat'l, Inc. v. United States,
49 Fed. Cl. 110 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Olin Jones Sand Co.,
225 Ct. Cl. 741 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Prof. Svcs. Supplier, Inc. v. United States,
45 Fed. Cl. 808 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

The Tester Corp. v. United States,
1 Cl. Ct. 370 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Weeks Dredging & Contracting, Inc. v. United States,
13 Cl. Ct. 193 (1987), aff'd,
861 F.2d 728 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

## REGULATIONS

48 C.F.R § 52.249-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GROT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1951C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant submits its reply to plaintiff's response in opposition to defendant's motion for summary judgment. Plaintiff, Grot, Incorporated ("Grot") identifies no evidence of a disputed material fact with respect to the propriety of the Government's termination of Grot's contact for default, or any of the claims transferred and consolidated from the Veterans Affairs Board of Contract Appeals ("VABCA"). The self-interested, unsupported affidavits from Jerry Grot, and Scott McCauley are not sufficient to create a disputed material fact. Grot adds a number of documents relating to the reprocurement contract with Siemens, Inc., but fails to identify any basis for which they are legally relevant to this case. The United States is, therefore, entitled to an order granting it judgment upon all remaining issues in the case.

## I. The Contracting Officer Properly Terminated Grot's Contract For Default

Grot bears a significant burden of proving that its delay in performance was excusable, and that the termination of the contract was an abuse of the contracting officer's discretion. Morganti Nat'l, Inc. v. United States, 49 Fed. Cl. 110, 131 (2001) (citing Mega Constr. Co. v. United States, 29 Fed. Cl. 396, 422 (1993)); Hannon Elec. Co. v. United States, 31 Fed. Cl. 135, 143 (1994) (citing Darwin Constr. Co. v. United States, 811 Fed.2d 593, 598 (Fed. Cir. 1987). In its May 15, 2006 order ("Grot Order") the Court has already found that Grot failed to produce design drawings by either the original contract deadline or the extended deadline. Grot Order at 10, 11, 15. Thus, the Government has established that Grot was in default of the contract.

Where the court finds that default termination was justified by a material breach of the contract, or "any ground that was unaffected by delay," the default termination will be upheld. Aptus Co. v. United States, 61 Fed. Cl. 638, 647 (2004). Here, Grot missed two contract deadlines, failed to comprehend its design responsibilities under the contract, and continually argued with the contracting officer rather than demonstrating any intention to render adequate performance. Grot's failure to provide

design drawings by either the original or the extended contract deadline is a situation created wholly by Grot's misinterpretation of the contract requirements, and was not affected in any way by delay. Grot therefore cannot show that the contracting officer acted arbitrarily or abused his discretion in terminating Grot for default.

## A. The Court Has Already Held That Grot Unreasonably Misinterpreted The Contract Requirements; Grot's Failure To Render Acceptable Contract Performance Is Therefore Its Own Responsibility

The Court has previously held that the contract "contained clear requirements that Grot was to incorporate the bid drawings and all contract specifications, and install the system in compliance with relevant fire alarm codes." Grot Order at 2. Thus, it was Grot's failure to understand its responsibilities under the contract that caused its failure to meet them, not any purported failure of the Veterans Administration ("VA") to provide guidance or answers to Grot's questions.

Grot argues that it never denied its responsibility to "provide a 'system' which met the specifications and drawings of the proposal." Plaintiff's Brief ("Pl. Brief") at 23-24. Grot did, however, continuously deny its responsibility to provide the design necessary to enable it to provide that system. As the Court has already found, Grot continued to deny its

responsibility to provide a design the fire alarm system right up until the contract was terminated for default. Grot Order at 8. Indeed, Grot responded to the contracting officer's notice to show cause why the contract should not be terminated for default by challenging the VA's specific determination that it was responsible for designing the fire alarm system. Id. Thus, over a year after the VA awarded it the contract, Grot was still arguing about its fundamental responsibilities under the terms of the contract, rather than demonstrating a willingness or capability of rendering acceptable performance. At no time prior to termination, did Grot show the slightest willingness to reconsider its position, admit that it was not prepared to provide a design, or to cooperate with the VA in achieving completion of the contract. Where a contracting officer has a reasonable belief that the contractor will not perform the contract within the contract period, termination for default is proper. Hannon Elec. Co. v. United States, 31 Fed. Cl. 135, 143 (1994). Here, Grot's uncooperative and argumentative attitude, combined with its inadequate work and failure even to understand the requirements of the contract, provide ample support for concluding that the VA's decision to terminate the contract for default was not arbitrary or capricious. Id.

B. None Of The Issues Identified By Grot Are Material With Respect To The Termination For Default

1. Grot Has Never Provided A System Design For This Project

Grot claims that its "system design met the plans, specifications, drawings and system design requirements at the time Grot was terminated." Pl. Brief at 23. The undisputed evidence in the record, however, establishes that, at the time of default, Grot had not produced any design, indeed, it had barely conceded that it might be responsible for providing a design for the system. Grot Order, at 10-11, 15. In its response to the show cause letter, on July 31, 2003, Grot continued to maintain that it was not responsible for providing a design. App. at 48. In its response to the default notice, Grot did not state that it was preparing a design, much less that one already existed. App. 62. To the extent that Grot has ever acknowledged its design responsibilities, it has always couched it in terms of "re-design" and blamed the VA for causing substantial delay in its performance by requiring it to "re-draw the plans for the Project." App. 82.

Grot's proffer of an unsupported affidavit from Scott McCauley to establish the purported adequacy of Grot's "system design" is immaterial

here.[1] Pl. Brief 24-26. Grot cannot assert the sufficiency of its design to meet the contract requirements when the Court has already found that it never produced a design at all. Grot Order 10-11, 15.

2. The Government Did Not Have Superior Knowledge That It Failed To Provide To Grot

Grot argues that its performance of the contract was delayed because the VA would not meet with it to tell it what it wanted, and because Grot did not have drawings showing the location of the tampers and flow switches. Pl. Brief 26-29. This is the supposed "superior knowledge" possessed by the VA and not shared with Grot. Pl. Brief 28. This argument is unsupported by the undisputed facts. As the Court has already found, what the VA wanted was clearly spelled out in the contract documents and specifications – it wanted a competent contractor to design and install a fire alarm and sprinkler system. In its order on partial

---

[1] In the affidavit, Mr. McCauley merely parrots Grot's legal position that the work Grot had performed was in compliance with the NFPA, and that fire alarm protection was adequate. Plaintiff's Supplemental Appendix ("Pl. Supp. App.") at 254-255. Mr. McCauley's bald, unsupported statements are not sufficient to create a contested material fact. Impresa Construzioni Geom. Domenico Garufi v. United States, 61 Fed. Cir. 175, 181 (2004) (quoting McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc., 66 F.3d 89, 92)(5th Cir. 1995) (unsupported affidavits "setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment.").

summary judgment, the Court held that the "unambiguous terms of the contract required the Plaintiff to 'incorporate the bid drawings, the contract specifications, and the relevant fire codes to create or design a fire alarm system, and then to install that system.'" Grot Order at 15.

The "superior knowledge" doctrine applies where the Government has "vital knowledge" that the contractor does not have, and the contractor's lack of this knowledge caused a delay in performance. Hercules, Inc. v. United States, 25 Cl. Ct. 616, 623 (1992). It has no application where, as here, it was the contractor's own responsibility to generate and develop the knowledge supposedly being withheld from it. Hercules, Inc. v. United States, 24 Fed. 3d 188, 198 (Fed. Cir. 1994) (superior knowledge doctrine requires that the contractor have no reason to obtain the information at issue).

Here, contrary to Grot's claim, the drawings it complains about were given to it by Rickey Kirk on April 15, 1992, as reported in his Daily Log for that date, which reads: "Gave Mr. Evans plans we had of sprinkler systems." App. at 242-243. Additionally, the Specifications themselves contain a listing of the location of all devices and their locations. App. at 246.

3. The Government Is Entitled To Timely Performance Regardless of Prior Extensions To The Contract Date

Grot argues that the VA should not have terminated it for default because "time was not of the essence" in this contract. Pl. Brief at 29-31. Plaintiff argues that because the VA had extended the contract performance deadline on two occasions, that it had essentially waived its right to insist on timely performance. Id. Grot offers no authority for this argument, and it is contrary to the weight of authority which provides that untimely performance constitutes valid grounds for default termination. See, e.g., Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 765 (Fed. Cir. 1987) (termination for default proper where Government had reasonable belief that contractor would not render timely performance); Morganti Nat'l, Inc. v. United States, 49 Fed. Cl. 110, 129 (2001) (same); Hannon Elec. Co. v. United States, 31 Fed. Cl. 135, 143 (1994) (A contractor's response to a cure notice for untimely performance that does not indicate the contractor's intent to resolve the Government's concerns supports the reasonableness of the contracting officer's decision to terminate); Composite Laminates, Inc. v. United States, 27 Fed. Cl. 310,

323 (1992) ("a contractor must be able to provide adequate assurances to the government that it can complete contract requirements on time"). Grot's attempt to excuse its failure to render timely performance by claiming that the Government did not value timely performance finds no support in the law, and raises no material issues of disputed fact to preclude summary judgment.

McDonnell Douglas Corp. v. United States, 50 Fed. Cl. 311 (Fed. Cir. 2001), does not save Grot's failure to perform this contract by the contract deadline. In McDonnell Douglas, the Navy had contracted for the development and construction of a stealth aircraft, the A-12. McDonell Douglas, 50 Fed. Cl. at 313. The contractor encountered difficulties in meeting the production schedule and the Navy unilaterally modified the schedule. Id. The contractor objected that the new schedule was unreasonable, and failure to meet it should not provide grounds for default termination. Id. at 315. Here, by contrast, the VA did not unilaterally modify the schedule, it asked Grot to provide a revised work schedule and completion date, which Grot did, stating that it would complete the work by June 23, 2003. Grot Order at 7. Thus, there is no McDonnell Douglas issue in this case, that the Government has somehow waived its right to

timely performance by unilaterally setting an unreasonable performance schedule.

Additionally, the VA did not let a contract deadline pass without requesting a revised completion date from Grot. The contract was originally scheduled to be completed on November 10, 2002. Grot Order at 7. On November 4, 2002, prior to the deadline, the contracting officer requested that Grot provide a new work schedule and revised completion date. Nothing about the VA's behavior supports Grot's position that the VA did not consider time to be of the essence of this contract.

### 4. No Cure Notice Was Necessary Under The Terms Of The Contract

Grot's contract with the VA contained default provision 48 C.F.R. § 52.249-10 which provides, in pertinent part:

> (a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor terminate the right to proceed with the work (or the separable part of the work) that has been delayed.

App. 249. This provision does not require that the Government provide a nonperforming contractor with a cure notice. Prof. Svcs. Supplier, Inc. v.

United States, 45 Fed. Cl. 808, 810 (2000). In Prof. Svcs., the Government had contracted for the construction of two large bird pens for the Fish and Wildlife Service. Prof. Svs., 45 Fed. Cl. at 809. The Government terminated the contract for default, without issuing a cure notice, because it was not satisfied with the quality of the workmanship provided by the contractor. Id. The court there granted summary judgment in favor of the Government, holding that the contractor's defective workmanship constituted grounds for default under the contract, and that 52.249-10 did not require a cure notice. Therefore, the Government owed the contractor no obligation to offer a chance to cure, and the default termination was proper. Id., at 810.

Similarly, here, the VA had no obligation to provide Grot with a cure notice, thus, Grot's claimed dissatisfaction with the notice does not provide any ground for invalidating the termination of the contract.

5. The Court Has Already Rejected Grot's Claim That The Contract Terms Were Ambiguous

Grot restates its argument that the plans and specifications provided by the Government were ambiguous, and subject to more than one interpretation. Pl. Brief 33-40. These arguments have already been

considered and rejected by the Court, Grot Order at 15. They are worthy of no further consideration.

II. The Experience Of The Re-procurement Contractor Does Not Excuse Grot's Default

Grot relies upon documents procured from the VA relating to the reprocurement contract signed with Siemens as evidence that there was some problem with the contract or the specifications, because Siemens had not completed performance. It is unclear why Grot included these documents in its opposition, as it makes no argument based upon them, and they are irrelevant to the Grot's earlier failure to understand the unambiguous terms of its contract.

While the Court has occasionally found a re-procurement contractor's ability to complete a terminated contract as some evidence that the contract was, in fact, possible to perform, the reverse does not hold, particularly where the contract was modified after termination. See Davies Precision Machining, Inc. v. United States, 35 Fed. Cl. 651, 670 (1996) (citing Astro-Space Labs., Inc. v. United States, 470 F.2d 1003, 1013 (Ct. Cl. 1972). Grot concedes that the VA modified the contract after awarding it to Siemens as the re-procurement contractor. Pl. Brief at 15. That the VA modified the contract for re-procurement purposes, does not support

Grot's apparent, yet unstated, position that there was something wrong with the original contract. "Subsequent revision of contract language does not constitute an admission that earlier language was defective." The Tester Corp. v. United States, 1 Cl. Ct. 370 (1982).

Moreover, a termination for default is proper based upon any cause that existed at the time of the termination. Kelso v. Kirk Bros. Mechanical Contr. Inc., 16 F.3d 1173, 1175 (Fed. Cir. 1994); Mega Constr. 29 Fed. Cl. at 421. Here, the grounds were Grot's failure to understand its responsibilities under the contract, and its refusal to cooperate with the VA and abide by its directives. Siemens' subsequent experience with the VA provides no excuse for Grot's failure. Additionally, the experience of Siemens as the re-procurement contractor is particularly irrelevant here because the Government is not claiming any excess re-procurement costs from Grot.

In any event, Grot identifies no material fact put at issue by the Siemens re-procurement documents, therefore they present no barrier to the Government's claim for summary judgment.

## III. Grot Does Not Challenge Any Material Fact With Respect To The VABCA Claims

As we established in our opening brief, Grot is not entitled to recover any damages based upon any of its VABCA claims. Although Grot discusses these claims at length, it does not identify any evidence sufficient to create a genuine dispute as to any material fact and the Government is entitled to summary judgment upon each of the VABCA claims.

The only evidence identified by Grot in its discussion of the VABCA claims are two affidavits, one from Jerry Grot, and one from Scott McCauley. Pl. Brief at 43-45. Such self-serving statements, without support, are insufficient to create an issue of material fact. Impresa, 61 Fed. Cl. at 181 (quoting Doe v. United States, 58 Fed. Cl. 479, 483 (2003) ("'[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment.'") (other citations omitted)). Here, Mr. Grot merely recites a series of conclusions, such as "I outlined seven (7) critical items needed by Grot to complete the design for the Project and none were provided;" with no further explanation or referral to corroborating documentary evidence. Plaintiff's Supplemental Appendix ("Pl. Supp. App.") 331.

Mr. Grot also provides a series of spreadsheets that he claims are his "comparison of the as-built drawings from Siemens and the drawings approved by the VA and Fratto at the time of termination." Pl. Supp. App. 333. Although these spreadsheets are presented as an attachment to the affidavit, they are still merely Mr. Grot's own statements. Moreover, plaintiff's brief does not explain why these statements concerning the re-procurement contract with Siemens, even if true, are material as an excuse for Grot's misinterpretation of the contract documents and consequent failure to render adequate performance.

The affidavits submitted by Grot do not constitute evidence sufficient to create a genuine issue of material fact. Grot cannot, in any event, dispute the fact that it unreasonably misinterpreted the contract and failed to provide design drawings by the extended contract deadline. Grot Order at 10-11, 15. It is this failure of understanding, from the minute Grot signed the contract, that caused Grot's inability to perform the installation portion of the contract. Finally, Grot has not provided sufficient evidence to create an issue material fact with respect to its claims of excusable delay, because Grot's inability to perform the contract was caused by its

unreasonable failure to understand its responsibilities. The Government is entitled to summary judgment.

A. Grot Cannot Recover Any Costs For "Re-Design" Of The Project

Grot concedes that it cannot recover any costs for providing the "additional" engineering cost associated with providing the design of the fire alarm system. Pl. Brief 41. As there was no "design" to begin with, there can be no "re-design." Grot cannot claim that its "re-design" costs included work other than that required to provide the overall design of the system, because if Grot had provided the design required by the contract before beginning the installation, the specific number of devices required, and whether a particular device was required by the NFPA or not, would have been known to Grot, eliminating any purported "delay" in the Government's response.

To the extent Grot ever attempted any design work, it was work that was originally required, however belatedly undertaken.

B. Grot Is Not Entitled To Progress Payments For Work Not Accepted By the VA

As established in our opening brief, Grot cannot establish any right to recover additional monies under the contract for work that was not

accepted by the Government, and its claim should be denied. Grot again makes a conclusory statement that there are material issues of fact, but fails to identify any specific evidence beyond a self-serving and unsupported affidavit from one witness. This is insufficient to create an issue of material fact, and the Government is entitled to summary judgment on this issue.

### C. Grot Is Not Entitled To An Equitable Adjustment Based Upon Type I Differing Site Conditions Because It Did Not Make A Site Visit

As stated in our opening brief, there are six elements that Grot must establish to prove its claim for damages based upon purportedly differing site conditions: (1) that the contract documents affirmatively indicated or represented the subsurface conditions which form the basis of Grot's claim; (2) that Grot acted as a reasonably prudent contractor in interpreting the contract documents; (3) that Grot reasonably relied upon the indications of subsurface conditions in the contract; (4) that the subsurface conditions actually encountered within the contract site area differed materially from the subsurface conditions indicated in the same contract area; (5) that the actual subsurface conditions encountered were reasonably unforeseeable; and (6) that Grot's claimed excess costs are solely attributable to the

materially different subsurface conditions within the contract site. Weeks Dredging & Contracting, Inc. v. United States, 13 Cl. Ct. 193, 218 (1987), aff'd, 861 F.2d 728 (Fed. Cir. 1988). Accord Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed. Cir. 1987).

Grot claims that it based its entire estimation of the site conditions upon two remarks made at a pre-bid conference. Pl. Br. 46. More correctly, since Grot did not actually attend the pre-bid conference, its entire review and analysis of the site conditions were based upon second-hand notes that it did not verify. At a minimum, this does not meet Grot's responsibility as a contractor to visit and inspect a potential job site. Stuyvesant Dredging, 834 F.2d at 1581; Weeks v. United States, 13 Cl. Ct. at 224. (Holding that the court must evaluate the reasonableness of the "plaintiff's overall preaward conduct" before awarding damages based upon a claim of differing site conditions.) Weeks, 13 Cl. Ct. at 224.

D. Grot Is Not Entitled To Collect Damages For Lost Bonding Capacity

As Grot acknowledged, the precedent is clear that "a contractor may not recover damages which "involve plaintiff's ability to obtain other work." Olin Jones Sand Co., 225 Ct. Cl. 741, 743 (1980). Grot's claim that it could

show that its purported damages are no longer speculative does not raise any material facts. The Court of Claims in Olin Jones specifically held that even if a contractor could prove such damages, they "would be too remote and speculative to be recoverable." Id., at 744.

E. The Firewatch Was Part of Grot's Duties Under The Contract And Is Not A Basis for Recovering Damages

It is undisputed that the contract required Grot to institute a fire watch "all times any normally protected area is disconnected from a fire alarm system as a result of the project work." App. at 103-104.

It is also undisputed that Grot disconnected the fire alarm system in Building 1, and failed to connect the temporary pull stations. App. at 212, 214, 216. Accordingly, Grot agreed to institute a fire watch in Building 1. App. at 214, 216.

As noted above, Scott McCauley's affidavit in which he gives his unsupported opinion that the fire protection provided by Grot was adequate, is not sufficient to create a disputed issue of material fact upon this issue. As the fire watch was part of Grot's duties under the contract, it is not entitled to damages for the cost of providing it.

## CONCLUSION

For the reasons stated above, and for the reasons stated in our moving brief, defendant respectfully requests the Court to grant defendant's motion for summary judgment and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Fl.
1100 L Street, N.W.
Washington, D.C. 20530
Phone: (202) 616-0341
Fax: (202) 514-8624

April 26, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 26th day of April, 2007, I caused to be served electronically a copy of " DEFENDANT'S REPLY BRIEF" to:

ANDREW KILPATRICK, JR.
Gore, Kilpatrick, Purdie, Metz & Adcock, PLLC
P.O. Drawer 2000
Ridgeland, Mississippi 39158

______Joan M. Stentiford__________