**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GROT, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 03-1951C** |
| | ) | **(Judge Baskir)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CONSOLIDATED STATEMENT OF UNCONTROVERTED FACTS**

Pursuant to paragraphs 11 and 12 of the Court's Special Procedures Order, dated October 29, 2003, and Rule 56.1 of the Rules of the United States Court of Federal Claims, the parties jointly submit this Consolidated Statement of Uncontroverted Facts.

Pursuant to the Special Procedures Order, the originating parties for each statement and objection are identified as follows: "[P]" for Plaintiff and "[D]" for Defendant.

**1. [D] On February 1, 2002, Grot, Incorporated ("Grot") was awarded a contract by the Department of Veterans Affairs ("VA") for the project generally described as Campus-Wide Fire Alarm, Project No. 099-108, at the Sam Rayburn Memorial Veterans Center in**

**Bonham, Texas (the "Project"), for the amount of $943,310. Grot, Inc. v. United States, No. 03-1951C (Fed. Cl. May 15, 2006)(order granting partial summary judgment) ("Grot Order"), page 2; Appendix ("App.") at 1[1].**

[1]The Government previously filed an appendix with its motion for partial summary judgment, pages 1-94, and a supplemental appendix with its motion for summary judgment on all remaining issues, pages 95-241. Current references to "Appendix" or "App." refer to these documents, and to the documents. "Pl. App." refers to the appendix field by Plaintiff with its response to the Government's initial motion. "Pl. Supp. App." refers to the supplemental appendix filed by Plaintiff in response to the motion under consideration by the Court.

**2. [D] Prior to submitting its bid upon the contract, Grot did not inquire into the meaning of any of the now disputed terms and conditions stated in the specifications or drawings. Grot Order at 4; App. at 39-40.**

**3. [P] This Project was initially released for bid as Solicitation IFB 549-64-01. Plaintiff's Appendix ("Pl. App.") at 1. The original contract completion time was ninety (90) days but subsequently increased to two hundred seventy (270) days by Amendment Two. Pl. App. at 6,7.**

**4. [P] The original bid date was July 11, 2001 but was extended until July 31, 2001. Pl. App. at 8,9. Subsequent thereto, the contracting officer noticed a pre-bid conference for July 20, 2001. Pl. App. at 11. By amendment dated July 27, 2001, the amended bid date was again extended, this time until August 28, 2001. Pl. App. at 12.**

**5. [P] After the pre-bid conference but prior to the date scheduled for the opening of bids, personnel from Siemens Cerebus Division, a division of Siemens Building Technologies, Inc. ("Siemens") ~~were aware that Chris Forner and Mel Harrison, representatives of the VA who were not present at the pre-bid conference, had knowledge relative to the work on the Project that was not disclosed in the plans and specifications for the Project or at the pre-bid conference.~~ Pl. App. at 186-188.**

**<u>Objection [D]:</u>** Defendant objects to this contention because it is irrelevant what Mr. Harrison and Mr. Forner "wanted" to be included in the fire alarm system; the requirements of the system were set forth in the contract. Def's App. at 10-16.

Further objects to Grot's interpretation of Mr. McCauley's testimony. Mr. McCauley did not testify that Mr. Harrison and Mr. Forner discussed or disclosed to him that the VA wanted considerably more fire protection devices and other equipment than was reflected on the plans and specifications. Specifically, Mr. McCauley testified that in walking the project and in talking with Mr. Harrison, Mr. Forner "and everybody concerned, that they wanted additional devices to – in areas that needed

coverage that weren't necessarily designed on the drawings." Pl's App. at 177, lns 6-10 (emphasis added). Then, Mr. McCauley answered in the affirmative when asked if he was aware of the fact that the VA was looking for more than the devices that were shown on Fratto's drawings. Pl's App. at 177, lns 17-24. Mr. McCauley further stated that the devices that Mr. Harrison and Mr. Forner referred to were in "certain areas that were really not depicted well on the drawings." Pl's App. at 192. When asked if Mr. Harrison and Mr. Forner wanted items that were "not a requirement of NFPA 101 and 72 to meet code," Mr. McCauley responded, "I don't know about that."

**6. [P] ~~Representatives of Siemens met with Mr. Forner and Mr. Harrison at the Project and discussed in detail the specifics of what they wanted to be installed on the Project. These disclosures indicated to Siemens that the VA wanted considerably more fire protection devices and other equipment than was reflected on the plans and specifications for the Project. Pl. App. at 177, lines 6-10 & 19-22. That information was never disclosed to any other bidder prior to bid opening.~~**

**Objection [D]:** Defendant objects to Grot's characterization of Scott McCauley's deposition testimony which is not supported by the testimony. Mr. McCauley testified that he participated in a walk-through of the VA's Bonham facility with Mr. Harrison and Mr. Forner, prior to submitting Siemens bid for the first solicitation of this project. Pl. App. 188. Mr. McCauley could not recall exactly when that walk-through took place. Mr. McCauley testified that he spoke with Mr. Forner and Mr. Harrison about "sprinkler stuff and aa McCullough thing that needed to be removed in Building 1." Pl. App. 189. Mr. McCauley testified that Siemens personnel knew that "when we walked it and talking with [Mr. Harrison and Mr. Forner] and everybody concerned, that they wanted additional devices

to–in areas that needed coverage that weren't necessarily desibned <u>on the drawings</u>." Def. App. 67, Lines 6-10 (emphasis added). Further, Mr. McCauley testified that prospective bidders could have obtained the same information if they had conducted a walk-through of the VA's Bonham facility or if they were intimate with the site. Pl. App. 191, Lines 16-25. Grot cannot rely upon Mr. McCauley's testimony regarding what was or was not disclosed during the pre-bid conference, as Mr. McCauley was not present at the pre-bid conference. Def. App. 16; Lines 22-24.

**7. [P] At the initial bid opening, ADT Security Services, Inc. ("ADT") was determined to be the lowest bidder for the Project. Pl. App. at 23. Grot protested the award of the Contract to ADT in that the contracting officer had allowed ADT to increase its bid price to the detriment of other bidders. Pl. App. at 24. ~~Following the filing of Grot's protest, the VA cancelled the solicitation due to what the VA determined were "inadequate specifications".~~ Pl. App. at 26-28.**

<u>**Objection [D]:**</u> Agrees with clarification. In a letter from the VA's General Counsel, Phillip L. Anderson, to the Senior Associate General Counsel for the General Accounting Office, Anthony Gamboa, stated that the VA had determined that the "fire alarm system specification needs to be revised because it does not reflect the VA's recent decision to issue a fire alarm system specification that contains more performance characteristics in its design. VA has also determined that the basis for award, which includes the accumulation of four bid items must be clarified." Pl. App. 26. The document does not contain the language purportedly quoted from it. Pl. App. at 26-28.

**8. [P] ~~On January 8, 2002, the VA received bids on IFB 549-23-02 which replaced IFB 549-64-01. The only difference between the original description of the work and that contained in the rebid was the period of contract performance. In addition, there was no changes to the drawings or specifications for the Project.~~**

**Objection [D]:** Defendant objects because Grot provides no supporting citation for this contention. Additionally, to clarify, the error in ADT's initial bid was that it failed to include the three alternate deducts in its base bid, which would have changed the bid from $864,791 to $969,656. Pl. App. 21.

**9. [P/D] At the second bid opening, Grot was determined to be the lowest bidder and as previously noted on February 1, 2002, the VA awarded the Contract to Grot. The Contract provided that the Project was to be completed within two hundred seventy (270) days following receipt of the Notice to Proceed. The Notice to Proceed was received by Grot on February 1, 2002, with work to begin within ten (10) days thereby making November 10, 2002, the original Contract completion date for the Project. Grot Order at 5; App. at 2; Pl. App. at 34.**

**10. [D] Grot did not have the contract work "substantially completed" by the original contract deadline, of November 10, 2002, or by the extended deadline of June 23, 2003. App. at 39, 44, 52.**