**11. [P/D] After award of the Contract, Grot began the process of issuing subcontracts and vendor purchase orders one of which was to Siemens. Siemens was to provide technical assistance, equipment and working drawings based upon the plans and specifications provided by the VA. and to "supply submittals for equipment[,] submit drawing of system (wiring layout)[,] supply all devices as per drawings and specs[,] install panels and get all communicating with each other to be done by Siemens[,] install temporary fire alarm system in buildings needed[,] install devices and trim out (entire job)[,] install UPS system[, and] provide three year warranty." Grot Order at 5; App. at 3-4; Pl. Supp. App. at 254, ¶ 3.**

**12. [P] ~~The plans, specifications and drawings for the Project were prepared by Fratto Engineering, Inc. ("Fratto")~~.**

**<u>Objection [D]:</u>** Objects to the use of the terms "plans" and "drawings" upon the grounds that they are vague. Defendant does not know if Grot is referring to only the bid drawings, or bid drawings and some other document; it is unclear. Also objects because Grot provides no supporting citation for this contention. Fratto Engineering, Inc. prepared the bid drawings and specifications upon which bidders and the awardee were to rely when creating their bids and performing the work required by the contract. Defendant's Supplemental Appendix ("Def's Supp. App.") at 1, lns 16-25, 2, lns 1-2; Pl's App. at 99.

**13. [P] Grot took the ~~plans, specifications and~~ drawings provided by the VA and requested Siemens to provide field installation drawings in accordance with the VA's bid documents. Siemens provided the requested drawings which were submitted to the VA for review and approval. Pl. App. at 242, ¶ 3.**

**Objection [D]:** Defendant objects to this contention because Grot requested that Siemens rely solely upon the bid drawings when creating the submittal drawings it later submitted to the VA for review and approval. Def's App. at 65, lns 18-25; 66, lns 15-25; 68, lns 13-21. Siemens complied with this request. Id.

**14. [P] The VA delivered the drawings to Fratto for review and ~~approval~~. After review by Fratto, the drawings were returned by the VA stamped as "approved" or "approved as corrected". In some instances the VA determined unilaterally that it wanted ~~additional devices~~ that were not shown on the original drawings provided by the VA and prepared by Fratto. Pl. App. at 243, ¶ 7.**

**Objection [D]:** Objects to the redlined portion of the first sentence of this contention because, pursuant to Fratto Engineering's contract with the VA, it did not possess the authority to make any decisions or approve any of Grot's work. Pl.'s App. at 102.

Agrees with remaining portions of this contention with clarification. The contract required Grot to submit the drawings to the VA and Fratto Engineering, Inc. for review. Def's App. at 13. Once the submittal drawings had been reviewed, the VA and Fratto Engineering, Inc. stamped and initialed the drawings. Def's App. at 15. The contract ~~clearly~~ provides that not all necessary devices were detailed in the bid drawings. Contract specification 13850, paragraph1.1.A, provides, "[a]ll devices and accessories necessary for a complete operating system shall be included even though each item is not specifically mentioned or described herein.

Def’s App. at 10.

Contract specification 13850, paragraph 1.2.B, entitled “Scope,” provides: “Device location and wiring runs show on the drawings are for reference only unless specifically dimensioned. Actual locations shall be in accordance with [National Fire Protection Association (“NFPA)” Code] 72 and this specification.” Def’s App. at 11.

Contract specification 01001, paragraph 1.1.D provides, “[i]n some instances it may have been impracticable to detail all items in specifications or on drawings because of variances in manufacturer's methods of achieving specified results.” Def’s App. at 12.

Additionally, the contract incorporated FAR 52.236-21, which provides: "Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between the drawings and specifications, the specifications shall govern." 48 C.F.R. § 52.236-21, Def’s App. at 9.

General note 5 on Drawing EF00 01 provides, “These drawings are GENERIC with respect to any particular manufacturers equipment. Quantities of FATC and spacing dependent on devices may vary with the

system equipment manufacturer." Def's App. at 16.

The contract also expressly required the contractor to incorporate the bid drawings, specifications, and relevant code requirements. Def's App. at 9, 10, 11, 14. Thus, Grot's use of the term "additional devices" is misleading. Pursuant to these contract provision, the VA had the right to require Grot to include devices not shown on the bid drawings.

**15. [P] By the end of March 2002, Grot had drawings ~~approved~~ by the VA and Fratto for all of the buildings involved in the Project and had begun installation of the new fire alarm system. Pl. App. at 243, ¶ 8.**

**<u>Objection [D]:</u>** Objects to the redlined portion of this contention, as pursuant to Fratto Engineering's contract with the VA, it did not possess the authority to make any decisions or approve any of Grot's work. Pl.'s App. at 102. Further objects to this contention because, as of June 24, 2002, the VA had approved <u>with corrections</u> the plans Grot had submitted. Def's App. at 22, 23-24. The VA, however, informed Grot numerous times that the VA was concerned that the submittal drawings were virtually identical to the bid drawings. Def's App. at 20, 22. The VA emphasized that the bid drawings were for general layout purposes only and that they did not relieve Grot of the responsibility of ensuring that all relevant codes and requirements were satisfied. Def's App. at 20, 22. Additionally, the VA informed Grot that "[i]f installation is made and it is found that device locations are not to code then what work that has been done will have to be redone at contractor[']s expense. It has already been found that some of the locations shown for Fire Alarm Control Panel location [have] not been

verified[,] then this leaves me to suspect all device locations." Def's App. at 22. The VA notified Grot that it was "very concerned" about the submittal drawings. Def's App. at 22.

Further, on August 23, 2002, the VA directed Grot to resubmit all of its submittal drawings, revised to include "everything contained on the original drawings as well as any additional devices required by the NFPA codes that did not appear on the original submittals. In addition, the contractor shall provide all information and drawings requested in the specifications, paying particular attention to the requirements of spec. section 13850, paragraph 1.4, submittals." Def's App. at 29.

**16. [P] After Siemens and Grot submitted the drawings and the VA and Fratto made modifications and changes thereto and then approved the drawings for construction, the VA determined that it was Grot's responsibility to "design" the Project. This determination was first made in writing to Grot on or about June 24, 2002; four months and fourteen days after the issuance of the Notice to Proceed and after Grot had performed extensive work on the Project based upon the VA and Fratto approved drawings. Pl. App. at 38-39.**

<u>**Objection [D]:**</u> Objects to this contention because Grot provides no supporting citation. Further, objects to this contention because the contract provisions clearly required Grot to incorporate the bid drawings, specifications, and relevant codes. Def's App. at 10-16. Additionally, the VA made the modifications and changes to Grot's submittals based upon these contract requirements. Def's App. at 20, 22, 23-24. The VA repeatedly notified Grot that its reliance upon the bid drawings as blue prints was not in compliance with the contract provisions. Def's App. at 20, 22. The VA approved <u>with corrections</u> the plans Grot had submitted. Def's App. at 22, 23-24. The VA emphasized that the bid drawings were for

general layout purposes only and that they did not relieve Grot of the responsibility of ensuring that all relevant code requirements were satisfied. Def's App. at 20, 22. Additionally, the VA informed Grot that "[i]f installation is made and it is found that device locations are not to code then what work that has been done will have to be redone at contractor[']s expense. It has already been found that some of the locations shown for Fire Alarm Control Panel location [have] not been verified then this leaves me to suspect all device locations." Def's App. at 22. The VA notified Grot that it "very concerned" about the submittal drawings. Def's App. at 22.

Further, on August 23, 2002, after Grot had refused to comply with the contract provisions, Def's App. at 23-24, 28-29, the VA directed Grot to resubmit all of its submittal drawings, revised to include "everything contained on the original drawings as well as any additional devices required by the NFPA codes that did not appear on the original submittals. In addition, the contractor shall provide all information and drawings requested in the specifications, paying particular attention to the requirements of spec. section 13850, paragraph 1.4, submittals." Def's App. at 29.

**17. [P] Grot protested the directive of the VA advising that the specifications do not state that the Project is a design/build project nor was Grot contracted to "design" the Project. Pl. App. at 38-39.**