**18. [P] ~~Grot repeatedly asked for meetings with the contracting officer to review the directive. With the exception of one time, July 22, 2002, the contracting officer refused to have "any" meetings with Grot to discuss the directive or any other issue on the Project for that matter. The issue was not resolved.~~**

**Objection [D]:** Objects to this contention because Grot has provided no supporting citation. Further objects because the VA met with Grot on July 2, 2002. Def's App. at 25.

**19. [P] ~~Instead~~, by letter of August 23, 2002, ~~over a month later and after research by the contracting officer's technical representative~~, the contracting officer, again without meeting with Grot, ~~directed Grot to design the fire alarm Project~~. Pl. App. at 40-41.**

**<u>Objection [D]:</u>** On August 23, 2002, after Grot had refused to comply with the contract provisions, Def's App. at 23-24, 28-29, the VA directed Grot to resubmit all of its submittal drawings, revised to include "everything contained on the original drawings as well as any additional devices required by the NFPA codes that did not appear on the original submittals. In addition, the contractor shall provide all information and drawings requested in the specifications, paying particular attention to the requirements of spec. section 13850, paragraph 1.4, submittals." Def's App. at 29. Additionally, the VA emphasized the order of precedence clause, FAR 52.236-21, which was incorporated into the contract and which provided that "[a]nything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern." Def's App. at 28. The VA also referred Grot to

General Note 5, specification section 01001, paragraph 1.1.D, specification section 13850, paragraph 1.1.A, and specification section 13850, paragraph 1.2.B. Def's App. at 29-30. All of these contract provisions clearly required Grot to incorporate the bid drawings, specifications, and relevant codes.

**20. [D] The contracting officer letter to Grot, dated August 23, 2002, directed Grot to comply with the COTR's findings, which set forth the VA's position that Grot was to design and install the fire alarm system based upon the drawings, specifications and relevant codes. Grot Order at 7; App. at 28-29. The COTR stated:**

> **After careful review I, Rickey Kirk, the COTR have concluded that this is a design and installation project and that Grot Inc. must design and install a complete fire alarm system in accordance with contract plans and specifications as well as the NFPA Codes. Furthermore, I request that the contractor, Grot, Inc., resubmit all previous drawings. The resubmitted drawings shall include everything contained on the original drawings as well as any additional devices required by NFPA Codes that did not appear on the original submittals. In addition, the contractor shall provide all information and drawings requested in the specifications, paying particular attention to the requirements of spec. section 13850, paragraph 1.4, submittals.**

**Grot Order at 7; App. at 29.**

**21. [P] Grot immediately responded by letter of that same date and by letter of September 5th, Grot protested the directive of the VA and requested a meeting with the contracting officer to try and come to an understanding as to the each party's position. Pl. App. at 42-43. By letter of September 17th, the contracting officer rejected Grot's request for a meeting. Pl. App. at 44-45.**

**22. [D] On September 5, 2002, Grot responded to the contracting officer's August 23, 2002 directive, again protesting the VA's determination that Grot had to redesign and resubmit its original shop drawings, so that they contained all of the items shown on the bid drawings, as well as those items required by the relevant fire safety codes, which were required by the specifications. In its September 5, 2002 letter, Grot set forth its interpretation of the various contract provisions, coming to the conclusion that it was not required to design the fire alarm system. Grot Order at 7; App. at 30-31.**

**23. [D] By letter/cure notice of September 17, 2002, the contracting officer responded to Grot's September 5, 2002 letter, again directing Grot, pursuant to contract specification section 13850, paragraphs 1.1.A and 1.2.B, to design and install a fire alarm system. Grot Order at 7; App. at 32-33.**

**Objection [P]**: Plaintiff objects to this contention to the extent that the contracting officer's letter of September 17, 2002, does not meet the requirements of a "cure notice" in that it fails to specify where the work performed by Grot is deficient thereby preventing Grot from full addressing any alleged deficiency.

**24. [P] Grot responded by letter of September 18th reserving its rights to dispute the decision made by the contracting officer. Pl. App. at 46.**

**25. [P] The contracting officer responded by letter of that same day, again refusing to meet with Grot. Pl. App. at 47-48.**

**Objection [D]:** Defendant objects to Grot's characterization of the letter. The letter is the best evidence of its contents.

**26. [D] In a September 18, 2002 letter, Grot's president, Jerry Grot, stated that Grot would begin the "process of designing a cure to the deficiencies contained in the plans and specifications designed by the government's Consultant." Grot Order at 7; App. at 34.**

**27. [P] Later that same day, again without meeting with Grot despite repeated request to do so, the VA issued a cure notice directing Grot to "cure" "failures . . . . . . endangering performance of the contract". ~~The contracting officer's cure letter fails to meet the requirements of the FARs in that it does not specify at all what the "failures" are that Grot must cure. It is totally devoid of any substantive information with respect to what Grot must "cure".~~ Pl. App. at 49.**

**<u>Objection [D]:</u>** Objects to Grot's characterization of the letter; the letter is the best evidence of its contents. Further objects because the issue of whether the cure notice satisfied FAR requirements is not a factual contention, but an issue of law. Defendant also objects because this contention is irrelevant to the determination of defendant's motion for partial summary judgment. Our motion for partial summary judgment does not address the propriety of the termination for default, but only a narrow issue of contract interpretation. Thus, the fact that the VA issued a cure notice and the issue of whether the cure notice satisfied the requirements of the FAR are unrelated to the Court's interpretation of the contract requirements.