**38. [D] The COTR did not recommend termination as he believed it would further delay the project and add expense to the contract. App. at 41. He noted, however, that his main concern was Grot's continued failure to comply with the specifications and to submit redesign drawings. Grot Order at 8; App. at 42-43.**

**Objection [P]:** Plaintiff objects to this contention to the extent that it relies on conclusions of the COTR that Grot failed to comply with the specifications in that the COTR is neither a NICET Level III fire alarm technician nor a fire alarm engineer and is thus not qualified to testify that Grot's installation did not meet the plans, specifications, drawings and code requirements for the project. Plaintiff further objects to the extent that the language is offered to suggest that Grot had failed to submit redesign drawings in that drawings for all buildings had been submitted and approved as of the date of the COTR's letter.

**39. [D] The contracting officer, ~~based upon the COTR's opinion~~, allowed Grot to continue beyond the June 23, 2003 contract completion date, but issued a show cause notice one month later. Grot Order at 8; App. at 44-45.**

**<u>Objection [P]:</u>** Plaintiff objects to this contention in that the Court's order does not state that the contracting officer made any decision "based upon the COTR's opinion".

**40. [P] ~~As construction progressed~~, the VA agreed for Grot to install temporary fire alarm equipment when working on the existing fire alarm system in a building that ~~could not be changed over.~~ Included in the equipment were temporary pull stations. Temporary pull stations provide additional fire alarm capability when portions of the system are deactivated. The temporary systems are removed when construction is complete for that portion of the building. However, the fact that the temporary pull stations may not have been installed does not mean that there is no fire protection for that building. Pl. App. at 244, ¶¶ 13-15 & 245, ¶16.**

**Objection [D]:** Defendant objects to the redlined portions of this contention because they are vague. Defendant does not understand what Grot means when it says a building "that could not be changed over."

Defendant further objects to Grot's characterization that construction was "progressing."

**41. [P] On July 17, 2003, Grot inadvertently failed to install temporary pull stations while working in Building 1. As a result, the contracting officer issued a cure notice to Grot to cure the deficiency and to establish a fire watch for the building until the temporary pull stations were installed. Pl. App. at 52.**

42. [P] While Grot disputed the contracting officer's conclusion that the building was "without fire protection", Grot immediately acknowledged the inadvertent mistake with respect to the temporary pull stations and conducted the fire watch as directed. The temporary pull stations were installed before completion of work on that same day. Pl. App. at 53.

**43. [P] By letter of July 17th, the COTR issued a directive to maintain a fire watch in Building 29 due to what the COTR determined was "inadequate fire safety coverage". However, as admitted by the contracting officer, the COTR never defined what he considered to be "inadequate fire safety coverage" or the basis for compelling the fire watch. Pl. App. at 55 & 108, lines 5-19 & 109, lines 1-2.**

**Objection [D]:** Objects to Grot's characterization of the contracting officer's deposition testimony. The contracting officer, John Mraz, was testifying with regard to whether the COTR or Mr. Harrison stated in a particular e-mail and a particular letter what they considered to be insufficient coverage. Pl's App. at 108, lns 5-19; 109, lns 1-22. The contracting officer did not testify that the COTR "never defined what he considered to be 'inadequate fire safety coverage' or the basis for compelling the fire watch.

**44. [P] Further, an issue had arisen between Grot and the VA regarding the installation of additional corridor smoke detectors in Building 29. By letter of April 29, 2003, Grot pointed out that ~~the smoke detectors were not a requirement under NFPA 101, 1997 Edition,~~ and requested a meeting to clarify the issues between Grot and the VA. Pl. App. at 56. As was the case throughout the Project; the VA did not respond.**

**Objection [D]:** Objects to Grot's characterization of its April 29, 2003 letter. It is not a factual contention that the smoke detectors at issue "were not a requirement under NFPA 101, 1997 Edition; it is a legal conclusion. Grot further stated in its letter that it would not provide the smoke detectors "unless a modification is provided to Grot, Inc." Pl's App. at 56.

**45. [P] By letter of May 27, 2003, Grot again raised the issue of the additional smoke detectors and pointed out to the contracting officer that various specifications upon which the contracting officer's representatives were relying were not a part of the 1997 Edition of the NFPA 101. Pl. App. at 57. Again Grot asked for direction and ~~none was forthcoming.~~**

**Objection [D]:** Defendant objects to this contention. In a memorandum from the COTR to the contracting officer, dated June 10, 2003, the COTR reported to the contracting officer that the VA and Grot were "continuing to argue whether or not [Grot] need[s] to put more smoke detectors in Building 29." Def's App. at 42. The COTR further stated that the bid drawings showed at least four smoke detectors in each corridor of the nursing home, but that Grot's drawings showed no smoke detectors in the corridor. Pursuant to the August 23, 2002 directive from the VA to Grot, instructing them to resubmit drawings that contained all devices on the bid drawings and all devices required by the relevant codes, the COTR believed that Grot's submittal drawings should have contained the smoke detectors. Id. Thus, the memorandum evidences that there was discussion between the VA and Grot regarding the VA's belief that the

smoke detectors were required pursuant to the contract; Grot simply disagreed. Def's App. at 42. Thus, there was no further direction for the VA to offer.

**46. [P] Instead the COTR issued the July 17th fire watch notice. By letter of July 18th, Grot reminded the contracting officer of Grot's repeated request for direction and a meeting. Again no response was forthcoming. ~~It was ultimately determined that the contracting officer was relying on the 2000 Edition of NFPA 101 and not the 1997 Edition as required by the specifications. Also, the VA was not even using the correct VA fire protection manual. Pl. App. at 145, lines 20-24 & 146, lines5-22.~~**

**<u>Objection [D]:</u>** Grot was aware as early as May 27, 2003, to which edition of the NFPA the VA was referring. Pl's App. at 57. Further, the specifications did not require the VA to rely upon the 1997 edition; the specifications stated that if the NFPA was referenced in the specifications, then the reference was to the 1997 edition. Defendant further objects to the second sentence of this contention because the deposition testimony to which Grot cites as supporting this contention is vague. The contracting officer never testified that the COTR relied upon the incorrect VA fire protection manual. Pl's App. at 145, lns 20-24; 146, lns 5-22.