**47. [P] Then, three days later, on July 20th, the contracting officer issued a directive to initiate a fire watch for buildings 1, 2, 3, 24 and 29; ~~the entire Project.~~ The ~~sole~~ basis for the directive was that the contracting officer had determined that there was "inadequate fire safety coverage". Pl. App. at 58. There were no specifics given. With the exception of the inadvertent failure to install the temporary pull stations in Building 1, which was cured before the close of the day, the VA had not raised an issue as to the adequacy of fire protection in the other buildings.**

**Objection [D]:** Defendant objects to Grot's statement that the fire watch was issued for the entire project; the July 20, 2003 letter clearly states that the fire watch was to be instituted for buildings 1, 2, 3, 24 and 29. Pl.'s App. at 58. Agrees that the basis of the fire watch was the COTR's determination that there was inadequate fire safety coverage, with the clarification that his determination was based upon Grot's noncompliance with the requirements of NFPA 72 and 101 and the contract specifications. Id.

**48. [P] The institution of a campus wide fire watch was going to be a significant cost to Grot and Grot immediately asked for a meeting with the contracting officer to review the concerns and misunderstandings which seemed to be prevalent on the Project. When the VA did not respond, Grot issued another request for a meeting. Pl. App. at 59.**

**49. [P] Instead of addressing Grot's concerns the contracting officer stated that he, "not the contractor" would determine the need for a meeting. Pl. App. at 60-61. ~~This position was taken even when the contracting officer knew there were substantial disagreements over the interpretation of the plans and specifications for the Project.~~**

**<u>Objection [D]</u>**: Defendant objects to plaintiff's characterization of the contracting officer's knowledge of "substantial disagreements" which is Grot's opinion, not contention of fact. Additionally, defendant objects because Grot does not provide a supporting citation for the the second sentence of this contention.

**50. [P] On July 23rd, Grot reaffirmed that it was conducting the mandated fire watch. Pl. App. at 62,63,64.**

**51. [P] ~~Grot had continually requested a list of the alleged deficiencies but the contracting officer had already determined that if a list of deficiencies was given, it would not be complete.~~ Pl. App. at 61.**

**<u>Objection [D]</u>:** Defendant objects to this contention because it is not supported by the document referenced. Additionally, it is not a contention of fact, but an opinion. Further objects to the contention that the contracting officer had determined that if a list of deficiencies was given, it would not be complete. The document to which Grot cites as support for this contention is an email string between VA personnel. Pl's App. at 61. Mel Harrison, not the contracting officer, suggested that the VA inform Grot of some of the deficiencies and then conduct a pre-test, per specification 13850, paragraph 2.5.C, in an attempt to convince Grot that it was not in compliance with the code. <u>Id.</u> Charles Ballard, the Chief Engineer, agreed. <u>Id.</u> The contracting officer, however, never stated his opinion and did not indicate that the VA would follow this course of action. <u>Id.</u>

**52. [P] By e-mail of July 23, 2002 (sic), the VA issued its "Show Cause Notice" to Grot stating that Grot had 10 days after receipt to provide a schedule to complete the Contract. Pl. App. at 65-66.**

**Objection [D]:** Agrees with clarification. The show cause letter additionally stated that on 23, 2003, an inspection of buildings 1, 2, 3, 24, and 29 was conducted by the VA Safety Manager and Engineering. Pl. App. 65-66. The show cause letter further stated that this inspection determined that the work under this contract was approximately 59 percent complete and did not meet specification 13850, paragraph 1.1B. Additionally, the contracting officer noted that the contract was awarded on F ebruary 1, 2002, with an original contract completion date of 10, 2002. Id. The completion date was extended to 23, 2003, but as of the date of the show cause letter, 23, 2003, the project was still not complete. Id.

**53. [P] ~~By e-mail of July 31, 2003, Grot responded and fully addressed all of the issues raised in the Show Cause Notice and further provided a completion date of October 3, 2003 assuming that the VA provided answers to outstanding questions by August 11th.~~ Pl. App. at 67-74.**

**Objection [D]:** Objects to Grot's contention that the July 31, 2003 letter fully addressed all of the issues raised in the show cause letter; that is not a factual contention, but Grot's opinion.

**54. [D] In its July 31, 2003, letter Grot again disputed the VA's determination that Grot was responsible for the design of the fire alarm system, and that Grot would seek the cost and expense allegedly incurred as a result of that decision. Grot Order at 8; App. at 46-52.**

**55. [D] The COTR provided his comments to the contracting officer on August 3, 2003. Grot Order at 8; App. at 53-58. On August 7, 2003, ~~almost nine months past the original completion date~~, the contracting officer terminated the contract for default. Grot Order at 8; App. at 59-60. On August 9, 2003, the contracting officer set forth his rationale for the termination in an internal memorandum. Among the reasons listed was "failure to perform in compliance with the technical requirements of the contract." App. at 61.**

**Objection [P]:** Plaintiff objects to this contention in that the Court's order does not state "almost nine months past the original completion date".

**56. [P] ~~Without further comment or challenge to Grot 's July 31, 2003, letter and without addressing the issues raised in the letter or providing answers to questions contained in Grot's letter or letters previously provided by Grot, by letter of August 7, 2003, the VA wrongfully terminated the Contract for default.~~ The basis for the alleged default was that Grot:**

**a) had failed to provide adequate fire alarm protection for Buildings 1, 2, 3, 24 and 29 as directed in Mr. Mraz's letter of July, 17, 2003; and**

**b) had failed to perform in compliance with the technical requirements of the contract; and**

**c) had failed to complete the Contract by the extended completion date of June 23, 2003; and**

**d) had failed in Grot's letter of July 31, 2003 to "Show Cause" to the Mr. Mraz's "Show Cause Notification Letter of July 23, 2003. Pl. App. at 75-76.**

**Objection [D]:** Objects to the redlined portion of this contention because Grot does not provide a supporting citation. Further objects to the redlined portion of this contention because the contracting officer's termination for default letter states that the decision to terminate the contract was made after the contracting officer "evaluated the history of Contract V549P-60-2 in its entirety." Additionally objects to plaintiff's

characterization of the termination as “improper” which is Grot’s legal conclusion and not a factual contention. Pl.’s App. at 75.