**57. [P] At all times from July 22nd until August 8th, Grot maintained the fire watch mandated by the contracting officer and kept working to complete the Project. ~~In his deposition, the contracting officer admitted that it was not fair not to tell Grot where Grot's system failed to meet the requirements of NFPA 101. The alleged deficiencies were never reduced to writing by the contracting officer.~~ Pl. App. at 110, lines 2-14.**

**On August 12, 2003, Grot responded to the termination for default and requested that the contracting officer rescind the termination by noon on Friday, August 15, 2003. App. at 62-63.**

**<u>Objection [D]:</u>** Defendant objects to the contention that the "alleged deficiencies were never reduced to writing by the contracting officer," because Grot does not provide a supporting citation for this contention.

Further objects to Grot's characterization of the contracting officer's deposition testimony, as it is not an accurate summation of that testimony. The contracting officer testified that it would have been fair to put in writing where Grot's system failed to meet NFPA 101. Pl's App. at 110, lns 7-14. The contracting officer did not testify that the VA never informed Grot, in

writing or otherwise, of how the fire alarm system failed to meet NFPA 101. In fact, the contracting officer makes reference to another letter that was sent to Grot listing six deficiencies. Pl's App. at 103, lns 3-8.

**58. [D] Grot was obligated under the contract to design the fire alarm system incorporating the bid drawings, the contract specifications, and the relevant fire codes to create or design a fire alarm system and then to install that system. Grot Order at 3-4, 15.**

~~**59. [D] Grot never produced design drawings that incorporated the contract specifications and the fire code requirements. Grot Order, at 10-11, 15**~~.

**<u>Objection [P]:</u>** Plaintiff objects to this contention in that the Court's order does not state that "Grot never produced design drawings that incorporated the contract specifications and the fire code requirements". Plaintiff further objects to this contention in that the undisputed testimony is that at the time of termination, Grot had provided a fire alarm system design for the Project that was in full compliance with the technical requirements of the Contract including the plans, specifications, drawings and system design requirements including compliance with Chapter 13, NFPA 101(1997Edition) and 72 (1996 Edition). Pl. Supp. App. at 254, ¶ 5.

**60. [D] Grot attempted to install the system exactly as shown on the bid drawings, ignoring the requirements of the specifications, and without the benefit of a NICET level III fire protection engineer to assist in ensuring compliance with the applicable fire code as Grot was also obligated to do. Grot Order at 10-11.**

**Objection [P]:** Plaintiff objects to this contention in that the Court's order does not state that "Grot attempted to install the system exactly as shown on the bid drawings, ignoring the requirements of the specifications, and without the benefit of a NICET level III fire protection engineer to assist in ensuring compliance with the applicable fire code as Grot was also obligated to do." Plaintiff further objects to this contention in that Defendant provides no further citation for this contention and that the undisputed testimony is that at the time of termination, Grot had provided a fire alarm system design for the Project that was in full compliance with the technical requirements of the Contract including the plans, specifications, drawings and system design requirements including compliance with Chapter 13, NFPA 101(1997Edition) and 72 (1996 Edition). Pl. Supp. App. at 254, ¶ 5.

**61. [D] Grot's contract included the clause below on page 3-65 through 3-67.**

> **VAAR 852.236-82 Payments Under Fixed -Price Construction Contracts**
> **(1) The contracting officer may retain funds:**
> **(i) Where performance under the contract has been determined to be deficient or the contractor has performed in an unsatisfactory manner in the past; or**
> **(ii) As the contract nears completion, to ensure that deficiencies will be corrected and that completion is timely.**
> **(2) Examples of deficient performance justifying a retention of funds include, but are not restricted to, the following:**
> **(i) Unsatisfactory progress as determined by the contracting officer;**
> **(ii) Failure to meet schedule in Schedule of Work Progress;**
> **(iii) Failure to present submittals in a timely manner; or**
> **(iv) Failure to comply in good faith with approved subcontracting plans, certifications or contract requirements.**

**App. at 98-100.**

**62. [D] Grot's contract included the clause below on page 3-37**

**.**

**52.232-27 Prompt Payment For Construction Contracts**

*** * ***

**(A) The due date for making such payments shall be 30 days after receipt of payment request by the designated billing office. If the designated billing office fails to annotate the payment request with the actual date of the Contractor's payment request with the actual date of receipt at the time of receipt, the payment due date shall be the 30th day after the date of the Contractor's payment request, provided a proper payment request is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.**

**App. at 97.**

**63. [D] Grot's contract included the clauses below on page 3-48 through 3-49.**

**52.236-2 Differing Site Conditions**

**(a) The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in the work of the character provided for in this contract.**

**52.236-3 Site Investigation & Conditions Affecting the Work**

**(a) The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work, or its cost, including but not limited to . . . (4) the conformation and conditions of the ground; and (5) the character of equipment and facilities needed preliminary to and during work performance. The Contractor also acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from in inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications made a part of this contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully**

**perform the work without additional expense to the Government.**

**(b) The Government assumes no responsibility for any conclusions or interpretations made by the Contractor . . . unless that understanding or representation is expressly stated in this contract.**

**App. at 101-102.**

**64. [D] Grot's contract included the clause beloow on page 3-33.**

> **52.228.15 Performance and Payment Bonds - Construction**
>
> **(b) Amount of required bonds. Unless the resulting contract price is $100,000 or less, the successful offeror shall furnish performance and payment bonds to the Contracting Officer as follows:**
>
> **(1) Performance bonds (Standard Form 25). The penal amount of performance bonds at the time of contract award shall be 100 percent of the total dollar amount of task orders in process.**
>
> **(2) Payment bonds (Standard Form 25-A). The penal amount of payment bonds at the time of contract award shall be 100 percent of the total dollar amount of task orders in process.**

**App. at 95-96.**