**78. [D] On July 17, 2003, the VA discovered that Grot had disarmed the fire alarm system in Building No. 1 but had not notified the VA as required by the contract. App. at 212.**

**79. [D] The contract required Grot to provide a dedicated fire watch person all times "all times any normally protected area is disconnected from a fire alarm system as a result of the project work." App. at 103.**

**<u>Objection [P]:</u>** Plaintiff objects to this contention in that the contention is not a complete statement of the contract provision. The contract provision goes on to state ". . . . except during normal day shift non-holiday VA work hours".

**80. [D] Grot acknowledged that it had not installed temporary pull stations in Building 1 as should have been done, and agreed to institute a fire watch. App. at 214, 216.**

81. [D] On July 17, 2003, the contracting officer directed Grot to correct the problem and to post a fire watch until the fire alarm system was activated. App. at 212.

**82. [D] Also on July 17, 2003, the COTR determined that there was inadequate fire safety coverage in Building 29. App. at 215.**

**Objection [P]:** Plaintiff objects to this contention to the extent that it relies on conclusions of the COTR that "there was inadequate fire safety coverage" in any building in that the COTR is neither a NICET Level III fire alarm technician nor a fire alarm engineer and is thus not qualified to testify to the adequacy of the fire safety coverage. Further, the undisputed testimony is that at the time Grot was terminated by the VA, Grot, through Siemens, was providing adequate fire alarm protection for buildings 1, 2, 3, 24 and 29. Pl. Supp. App. at 254, ¶ 6.

**83. [D] On July 20, 2003, the VA Safety Manager, the COTR, and others from the VAMC Facilities Management Service conducted an inspection of Building Nos. 1,2,3,24, and 29. App. at 217-219.**

**84. [D] The July 20, 2003 inspection revealed 42 deficiencies in 3 buildings, including that the elevator recall functions were not operating, the smoke doors did not function in all areas, and no tamper and flow switches were connected to the system. App. at 218-219.**

**Objection [P]:** Plaintiff objects to this contention to the extent that it relies on conclusions of the COTR and the other personnel attending the "inspection" in that the individuals involved are neither NICET Level III fire alarm technicians nor fire alarm engineers and are thus not qualified to testify as to the claimed deficiencies. Plaintiff further objects in that the referenced document does not list the alleged deficiencies nor was the alleged list ever provided to Plaintiff.

**85. [D] As a result of that inspection, the contracting officer directed Grot, on July 22, 2003, to establish a fire watch for Building Nos. 1,2,3, 24, and 19. App. at 220-222.**

**86. [D] On July 23, 2003, the VA faxed a list of six deficiencies to Siemens that needed to be corrected before the fire watch could be lifted. App. at 224-225.**

**87. [D] On July 24, 2003, Grot notified the contracting officer that the fire alarm system was fully activated with the exception of Building No. 1. App. at 223.**

**<u>Objection [P]:</u>** Plaintiff objects to this contention in that the appendix reference is incomplete and does not contain the letter of Scott McCauley from Siemens verifying that the system was fully activated. That document is found at App. 226.

**88. [D] Siemens acknowledged receiving the deficiency notice and, on July 24, 2003, informed Grot that the deficiencies were "being worked on." App. at 226.**

**Objection [P]:** Plaintiff objects to this contention in that it is an incomplete statement. Siemens goes on to say that ". . . . in no way do the deficiencies impair the fire alarm system from reporting a fire alarm to the VA staff and the building occupants."